force), it will not prevent Astor 3 from transferring their shares to different accounts that it controls at different custodians (and thereby making the shares more difficult to trace).

112.    On July 26, 2024, I emailed Weiser and Tavira to request a meeting.

113.    On July 26, 2024, Weiser responded as follows (from an email address described as "collateralservices", without identifying any individual who could be contacted):

> *"Weiser cannot participate in discussions which are contractual matters that Weiser is not party to. Per the control management agreement (CMA) which Weiser is a party to, Weiser will take direction with regard to collateral on notice of release by the Lender."*

114.    On July 29, 2024, Tavira  responded as follows (from an email address described as "INTL Operations", also without identifying any individual who could be contacted):

> *"Thank you for your email. Please be advised, Tavira are bound by the terms of the CMA agreement and follow the terms within it. We kindly advise you to communicate with the lender directly to discuss any questions you have."*

115.    The style and content of the emails (and the fact that they are sent from anonymous email addresses) are strongly reminiscent of emails sent by Astor 3.

116.    On July 27, 2024, I received an email from Mr. Yuen (of Astor 3) as follows:

> *"We are aware of reports that came out yesterday regarding the company which are alarming. Can you please elaborate on this? Please see the article below as reference ...*
> *Furthermore, it was confirmed and reiterated prior that under the agreed SLA, there is no provision for prepayment before the conclusion of the agreed to term. If there is a different interpretation of that, please clarify."*

117.    On July 30, 2024, I received an email from "Global Operations" at Astor 3 (see **Exhibit 45**). The email enclosed a letter (erroneously dated July 27, 2024) asserting, for the first time, that the Applicants had committed numerous alleged Events of Default under the SLA (**Exhibit 46**). The covering email stated as follows:

> *"According to the Loan Agreement, the Loan is now Accelerated and all sums thereunder are now due, which includes loan amount, custody fees, maintenance*

*fees, collateral transfer fees and any other fees and costs imposed by the Custodian Brokers or Astor Asset Management 3 Ltd.*

*We bring to your attention that the default interest rate according to the Loan Agreement is 1.5% per month and will accrue for all outstanding debts effective immediately. This represents an annual fee of 18%.*

*Should you wish to discuss an informal settlement without prejudice and avoid the publicity surrounding your default, you may do so by contacting us. If your preference is to litigate, we will in the courts of England and Wales seek full remedy afforded to us under the Loan Agreement, including the return of all monies and fees computed at a monthly 1.5% default interest rate until such time as you make full settlement of all debts owed.*

*We would also be willing to enter into a a "Confidential Forbearance Agreement", whereby this Event of Default will be stayed indefinitely confidentially.*

*This Notice of Default and proposed confidential settlement discussion is being served upon you without prejudice and we reserve all rights afforded to us under the Loan Agreement and subsequent Addendums executed by the Lender, Borrower and Guarantor."*

118.    On August 1, 2024, I was copied into an email chain originated by Tavira (see **Exhibit 47**). In that chain, Tavira attached an updated statement of account (**Exhibit 48)** which appears to show that the **entirety** of the Collateral Shares held by Mr. Salinas with Tavira were transferred away on July 29, 2024. The terms of that transfer are stated to be "FOP" which I understand to mean "free of payment" (i.e. that they were transferred without a reciprocal payment of cash consideration) and the identity of the transferee is not stated in the statement. However, in the email chain, Tavira stated as follows: "*Under the terms of the CMA the lender (Astor) instructed us to move the shares to Astor's account*".

119.    Applicants are deeply concerned that the Collateral Shares are disappearing in real time. I do not know whether Tavira's email is accurate – and it is possible that the Collateral Shares were transferred away some time ago – but further discovery of information regarding these transfers is urgently required to prevent any further unlawful disposals of the Collateral Shares or the proceeds thereof.

120.    While the Applicants are ready and able to repay all outstanding sums under the SLA to Astor 3 immediately, which is their preferred course of action, our concern is that Astor

3 misappropriated Mr. Salinas's shares and would take any additional funds repaid by the Applicants without returning the shares.

**The English Action**

121.    Applicants promptly filed *ex parte* applications for injunctions and other orders against Astor 3, Sklarov, Weiser, and Tavira in the Business and Property Courts of England and Wales, Commercial Court (the "**English Action**").

The August 2, 2024, Hearing.

122.    On August 2, 2024, Applicants attended an *ex parte* hearing before Mr. Justice Jacobs, following which two orders were granted in relation to Astor 3 and Sklarov:

a)    A Freezing and Proprietary Injunction Order ("the Original Freezing Order").

b)    An order permitting service of documents out of the jurisdiction ("the Original Service Order").

123.    Copies of the Original Freezing Order and the Original Service Order are enclosed at **Exhibits 49 & 50**. On August 2, 2024, these documents were served on all four Respondents – Astor 3, Weiser, Tavira, and Sklarov (the "**Original Respondents**"). These copies included a Penal Notice for non-compliance.

124.    Pursuant to paragraph 11 of the Original Freezing Order, all Original Respondents were obliged to provide certain information to the Applicants' attorneys in England by 5:00 pm on August 6, 2024 (in the case of the Astor 3 and Mr. Sklarov) and by 5:00 PM on August 5, 2024, (in the case of Weiser and Tavira).

125.    Specifically, the Second and Third Respondents (Weiser and Tavira) were, pursuant to paragraph 11(b) of the Original Freezing Order, obliged to confirm, to the best of their ability:

> "…whether they hold any Collateral Shares and/or their traceable proceedings and if so the value of the said shares or proceeds."

126.    By virtue of paragraph 12 of the Original Freezing Order, an affidavit was also required on behalf of each of the Original Respondents to provide the information at (*inter alia*) paragraph 11 of the Original Freezing Order as quoted above. These affidavits need to be served by August 9, 2024 (i.e. within 7 days of being served with the Original Freezing Order).

## I.    Information Provided by the Respondents.

Tavira

127.    At 4:12 PM BST on August 5, 2024, Applicants' counsel received an email from Tavira. A copy of that email and its related attachments are enclosed at **Exhibits 51–57**. In response to the Original Freezing Order, the email confirmed the following:

> *"Tavira currently holds in custody 336,475 shares of Grupo Elektra SAB De CV valued at USD 15,709,093.*
>
> *Astor Asset Management 3 Limited rehypothecated the shares to Cornelius Vanderbilt Capital Management Ltd.*
>
> *The attached Excel file (Elektra.xlsx) shows the dates and amounts of share sales undertaken by Cornelius Vanderbilt Capital Management Ltd.*
>
> *Astor Asset Management 3 Limited currently has in custody with Tavira USD 963k in cash in its account.*
>
> *Cornelius Vanderbilt Capital Management Ltd holds in custody with Tavira USD 10.46m in cash plus USD 6.7m worth of other shareholdings.*
>
> *Attached are the cash redemptions for both Astor Asset Management 3 Limited (AA Redemptions) and Cornelius Vanderbilt Capital Management Ltd (CV Redemptions).*
>
> *These redemption proceeds were sent to their lawyers' trust account held at JP Morgan Chase (see attached JIQ Wiring Instructions)*
>
> *Also attached are the trade reports for both Ricardo Salinas and Corporacion RBS SA de CV which show the share and cash movements in the accounts."*

128.    With regards to the attachments to this email:

a)  **Exhibit 52** – this is an Excel spreadsheet purportedly setting out the dates and amounts of the share transactions undertaken by the Tavira as part of the rehypothecation. For reference, rehypothecation is generally defined as where a lending party holding securities as collateral uses that collateral for their own

purposes. As I describe above, the SLA, pursuant to the Second Addendum entered on December 6, 2021, ensure that the terms of the SLA, which prohibit rehypothecation, govern any requests made between Astor 3 and the Depository Brokers. There are 635 transactions recorded between December 16, 2021, and July 26, 2024. The precise nature of the transactions is currently unclear to me, but the aggregate number of Collateral Shares traded appears to have been 5,960,424 (of the 6,268,383 Collateral Shares which the Third Respondent should be holding).

b) **Exhibit 53** – this is an Excel spreadsheet purportedly setting out cash redemptions for the Astor 3 between January 31, 2022, and July 10, 2023, for a total of $43,025,048 USD.

c) **Exhibit 54** – this is an Excel spreadsheet purportedly setting out cash redemptions for Cornelius Vanderbilt Capital between January 31, 2022, and July 5, 2024. The total figure is not entirely clear but appears to be $228,660,424 USD.

d) **Exhibit 55** – this is a document purportedly setting out the details of the bank account for which the cash redemptions were paid on behalf of the First and Fifth Respondents. The account is with *"Jurist Iq Corp Attorney Trust Account IOLA"* held by JP Morgan Chase Bank NA in New York. This is a law firm associated with Jaitegh "JT" Singh, who is listed as the Chief Executive Officer of Jurist IQ Corpo on the New York State Division of Corporations (**Exhibit 45**). I understand from counsel that an IOLA account is an 'Interest on Lawyer Account' established to hold client funds for a short period of time and/or where the amounts are too small to generate sufficient interest to justify the expense of administering a separate account.

e) **Exhibits 56–57** – these are purportedly trade reports for the Applicants' accounts with the Third Respondent.

129.    Prior to this email, I had no knowledge of the involvement of Cornelius Vanderbilt Capital ("**Vanderbilt**") in the relevant transactions, and the email caused me considerable concern that the Vanderbilt appears to have held and then sold a significant number of Collateral Shares. On August 6, 2024, Applicants amended their claim form in the English Action to include Vanderbilt, and served the amended claim form on the original four

respondents on August 7, 2024. The English Court has since entered a similar Freezing Order against Vanderbilt.

134.    On August 9, 2024, Weiser finally responded to the original Freezing Order and provided a witness statement on behalf of a Mr Luke Harris. However, the precise status of Tavira remains uncertain.

Weiser

130.    On August 5, 2024, Applicants' counsel in England received communications from Weiser's solicitors (Holman Fenwick Willan LLP) ("**HFW**") stating:

> *"As you will appreciate, the period between our client being served with the WFO and the time for responding to you in accordance with the terms of the WFO is oppressively short. We confirm that our client is currently taking steps to investigate fully the status of any Collateral Shares. However, it may potentially take four to eight weeks for our client to undertake this investigation properly. In the meantime, our client confirms that it has frozen the relevant accounts whilst it undertakes the investigation."*

131.    Given the urgency involved in this matter, this response only increased Applicants' concerns and supports the Applicants' expectation and contention in the English Action that Weiser forms a central part of the scheme being investigated. I know, based on experience, that genuine depository broker should be able to provide the information about the Collateral Shares expeditiously. Applicants' counsel in English responded (**Exhibit 58A**) seeking compliance with the terms of the Original Freezing Order. HFW responded on August 7, 2024 (**Exhibit 58B**) but that letter did not comply with the terms of the Original Freezing Order, and Applicants' Counsel in England responded later that day (**Exhibit 58C**).

132.    On August 9, 2024, Weiser finally responded to the original Freezing Order and provided a witness statement on behalf of a Mr Christos Livadas ("**Livadas 1**"), which revealed

that it sold nearly all of Mr. Salinas' shares in its control to Astor Capital at an substantial undervalue (approximately $12.6 million for shares valued at around $52 million on that date), which another judge in the English Court concluded was a strong indication that Astor Capital was not a bona fide purchaser in that transaction. Applicants are seeking the Court's permission to add Astor Capital as the Sixth Respondent to the English Action. On August 13, 2024, the English Court granted a freezing order, a proprietary injunction and directions for disclosure against Astor Capital.

133.    Livadas 1 also repeated the suggestion in HFW's correspondence that it would take four to eight weeks to establish if there were any Traceable Proceeds. As above in the case of Tavira, the precise status of Weiser remains unclear.

Other Respondents

134.    For completeness, I set out the responses received from the other Respondents to the Freezing Orders.

First Respondent (Astor 3), Fourth Respondent (Sklarov), Fifth Respondent (Vanderbilt), Sixth Respondent (Astor Capital)

135.    No steps have been taken to discharge the obligations of the First, Fourth, Fifth and Sixth Respondents to provide information pursuant to the terms of the Freezing Orders. Applicants' counsel in England have written to these Respondents to explain that they are in breach of the respective Freezing Orders and reserving their rights to enforce them. As I explain further below, the First, Fourth, Fifth and Sixth Respondents have instructed legal counsel in England to apply to discharge the Freezing Orders. In addition, Astor 3 has sent two documents relating to the SLA since the Original Freezing Order was granted:

a)    An amended notice of default dated August 3, 2024 (**Exhibit 59**). This supplements the email sent by the Astor 3 on July 30, 2024, asserting, for the first time, Events of Default by the Applicants under the SLA (described at paragraph

33

124 above). I do not consider that the arguments asserted in the amended notice have any basis based on my own knowledge of the parties' agreements and the Applicants and their affiliates' own operations and performance, including, but not limited to, Grupo Salinas and Elektra.

b) An email demanding payment dated August 5, 2024 (**Exhibit 60**)

**D.    Concerns of Fraud by Vanderbilt**

Information provided by Tavira

136.    Given the clear concerns regarding the conduct by Astor 3, Sklarov, Weiser, and Tavira – the Original Respondents in the English Action – the information provided by Tavira in its email dated August 5, 2024 (as described in paragraph 134 above) only served to heighten those concerns and confirm Vanderbilt's apparently significant involvement here.

Preliminary Forward Risk Report

137.    In the limited time available since Tavira confirmed Vanderbilt's involvement in its August 5, 2024, email, Forward Risk, Applicants' outside forensic consulting vendor, separately investigated Vanderbilt.

138.    A copy of Forward Risk's preliminary report dated August 7, 2024, is attached (**Exhibit 50**) (the "**Preliminary Vanderbilt Report**"). I should note that the Preliminary Report was prepared with extreme urgency given the situation. Investigations are ongoing.

139.    The Preliminary Report includes the following points:

a) Vanderbilt was incorporated Belize in March 2019, and the phone number listed in the Belize entity's corporate records appears to be a Slovenian phone number.

b) Notwithstanding its establishment in Belize, the Vanderbilt's website (which uses stock photos and contains typographical errors) gives a mailing addresses in Canada (in Toronto and Saskatchewan) and London. Aside from having

obtained a Legal Entity Identifier in Canada, no further connections to the UK or Canada have been established.

c) Vanderbilt's purported employees also add to Applicants' suspicions. For example, various LinkedIn profiles appear either fake, AI generated, or include years or other figures that are inconsistent with Vanderbilt's ostensible workforce or time in operation.

d) Another "employee," Oksana Hryn, signed a statement of on behalf of Vanderbilt in proceedings described above at Paragraph 101(a). As described above, Applicants discovered links between Oksana Hyrn (who other records list as the beneficial owner of the Astor 3) and Mr Sklarov.

e) Another purported employee, Christopher Warner, appears to be a fictitious employee for the reasons explained in paragraph 138(a) below.

140.    In summary, it appears that even from preliminary investigations there are a number of suspicious factors relating to Vanderbilt as well as links between it and the other Respondents.

_Chenming_ Claim

141.    Since the English Court granted the Original Freezing Order on August 2, 2024, I learned about other proceedings in the United States brought by _Chenming Holdings (Hong Kong) Limited in the Southern District of New York_ (Civil Case No. 24-cv-935) (**Exhibit 61**) (the "**_Chenming_ Claim**"). That complaint makes fraud allegations against similar parties, including Sklarov, Mr. Singh, and Vanderbilt. Weiser also appears. I attach the complaint and note the following is alleged by the Plaintiff:

a) That a loan agreement was signed by a fictitious name (Christopher Warner) on behalf of Vanderbilt (paragraph 11).

b) The *Chenming* plaintiff had substantially repaid a loan made by the Vanderbilt (paragraph 15) but withheld final repayments pending proof from Vanderbilt that the shares it had deposited under the relevant loan agreement remained safe in custody and sought reassurance that those shares would be returned upon full repayment of its loan (paragraph 16). Vanderbilt never responded to this request (paragraph 17).

c) Further details of the loan of $12,572,187.35 USD made by Vanderbilt are provided at paragraphs 39 to 45 and show a similar stock-based lending *modus operandi* to the scheme that the Applicants are currently trying to investigate. The *Chenming* Claim alleges that the lenders have not returned the collateralized shares at issue in that transaction, nor have those lenders returned the $5.8 million USD in cash that was also provided to Vanderbilt in response to margin calls. The *Chenming* Claim alleges that by August 4, 2021, Vanderbilt transferred or sold all of the 58,414,000 shares at issue (paragraph 57).

142.    As I explained above, on August 6, 2024, Applicants amended their claim form in the English Action to include Vanderbilt, and served the amended claim form on the Original Respondents on August 7, 2024. The English Court has since entered a similar Freezing Order against Vanderbilt.

**F.    Mr. Sklarov Responds and Confirms His Affiliation with Astor and Vanderbilt.**

143.    On August 20, 2024, after over two weeks of silence and refusal to comply with the English Court's earlier Orders, Mr. Sklarov, Astor 3, Astor Capital, and Vanderbilt filed a Discharge Application through their attorneys. My understanding is that this is a petition to ask a court to reverse or remove their prior order. Mr. Sklarov filed a statement on behalf of himself and these other Respondents, which confirmed his ownership and affiliation with each shell company. His statement attacks Mr. Salinas personally, criticizes the English Court, and signals his stated intention to not comply with the English Court's orders.

36

144. Because Mr. Sklarov and these other entities are determined to further obstruct the information gathering process in the English Courts, I believe this underscores why Applicants must prioritize finding information on the funds since converted in accounts that likely house or did house those funds or the related Collateral Shares at one point.

145. Additionally, because Mr. Sklarov is choosing to now directly attack the English Courts' well-reasoned decisions, rather than simply comply with their Orders, my concern is that he will use the extra time to further obscure the trail of he and his collaborators' nefarious scheme. This underscores the urgency of the matter for me, as a financial executive in the Applicants' broader organization, considering the sizable amount of funds and securities these parties converted and continue to convert.

146. Finally, while the number of Defendants to the English Action is significant and may expand as further aspects of the fraud are uncovered, I do not expect Mr. Singh, Jurist IQ, or JP Morgan Chase Bank, however, to become parties in the English Action. There is no suggestion of wrongdoing by JP Morgan Chase Bank. The position with regard to the Singh Parties is less clear-cut and they may have been implicated in fraudulent conduct. However, there is no intention to join the Singh Parties to the London Action on the basis of the information revealed to date.

Executed this 23rd day of August, 2024.

Eduardo Gonzalez Salceda Sanchez
Title: Vice President (Financial Investment &
Analysis) of Grupo Salinas

# EXHIBIT 1

RE: VLADIMIR SKLAROV, *ET AL*. – MEMORANDUM



## Memorandum

**To:**    Paul, Weiss, Rifkind, Wharton & Garrison LLP

**From:**  Forward Risk

**Re**     Vladimir Sklarov, *et al*. – Memorandum

**Date:**  August 1, 2024

---

Forward Risk was engaged by Paul, Weiss, Rifkind, Wharton & Garrison LLP, on behalf of Corporación RBS, S.A. de C.V. ("the Client"), to conduct research on the following:

- **Vladimir "Val" Sklarov ("Sklarov")**
- **Thomas Mellon ("Mellon")**
- **Gregory Mitchell ("Mitchell")**
- **Astor Asset Management Ltd. ("Astor")**

## Scope and Methodology

The information provided in this memorandum is based on a public records review conducted by Forward Risk utilizing both online and on-site sources as appropriate, to include the following searches:

- Personal identifiers and address history
- Professional and educational history
- Corporate, partnership, and other business records
- Media and social media review
- Civil and criminal litigation
- Judgments, liens, bankruptcies, and other debt and insolvency-related matters
- Property and other asset-related records
- Regulatory history, sanctions, and violations
- Political relations, including campaign contributions and lobbyist registrations
- Watchlists of debarred or sanctioned parties and politically exposed persons (PEPs)

Research is focused on matters that appear to directly relate to the requested Subjects, rather than affiliated parties, unless otherwise noted. In cases where the Subject has a common name, searches may be narrowed using known identifiers, such as date of birth, address history, middle name, and affiliations. Additionally, database research is focused on the jurisdictions specified in the report.

This memorandum is an interim report, and findings may be subject to change upon delivery of the final reports. Research remains ongoing for all subjects, and this report reflects only noteworthy findings to date.

Forward Risk abides by all applicable laws, regulations, and professional standards for honest conduct. We do not attempt to gain access to private or confidential information, and we do not obtain non-public information by misrepresenting our identity ("pretexting").

RE: VLADIMIR SKLAROV MEMORANDUM

## Disclaimer

This report was prepared at the request of the Client to whom it is delivered. The Client agrees that reports and information received from us are strictly confidential and intended solely for the use of the Client. The Client agrees to indemnify and hold us harmless against any damages or claims resulting from unauthorized use.

The Client acknowledges an understanding that some public records sources may be inaccurate or incomplete, agrees to indemnify and hold us harmless against any damages resulting from such issues. We accept no liability for any loss or damage caused by the information contained within this report.

RE: VLADIMIR SKLAROV MEMORANDUM

## Memorandum

## General Overview

- Sklarov is the principal and operator of numerous low-profile shell companies that former clients and banks have accused of being fraudulent and masquerading as well-known financial institutions.

- Among other companies, Sklarov operates Astor Asset Management Ltd. and Astor Asset Management 3 Ltd., based in St. Kitts and Nevis and Canada, respectively.

## Investigative Findings

### Sklarov's Replacement at Astor Capital Fund Ltd. Appears to be Non-Existent

**Sklarov's Replacement at Astor Capital**

In June 2019, Sklarov registered Astor Capital Fund Ltd., a Bahamas-domiciled company, in Indiana. He was listed in corporate records as the company's CEO and registered agent, while Elizaveta Lata, who has been affiliated with several other Sklarov-owned entities, was listed as a director (see screenshot below).[1,2,3]

---

[1] https://casetext.com/case/satterfield-v-vstock-transfer-llc
[2] https://www.zoominfo.com/pic/america-2030/354221404
[3] https://www.datanyze.com/companies/america-2030/354221404

RE: VLADIMIR SKLAROV MEMORANDUM

> APPROVED AND FILED
> CONNIE LAWSON
> INDIANA SECRETARY OF STATE
> 06/29/2019 08:20 AM

## REGISTRATION STATEMENT

Formed pursuant to the provisions of the Indiana Code.

## ARTICLE I - NAME AND PRINCIPAL OFFICE ADDRESS

| | |
|---|---|
| BUSINESS ID | 201906281331535 |
| BUSINESS TYPE | Foreign For-Profit Corporation |
| BUSINESS NAME | ASTOR CAPITAL FUND LTD |
| PRINCIPAL OFFICE ADDRESS | Old Fort #4, Western Road, SP-63771, Nassau, New Providence, BHS |

## ARTICLE II - REGISTERED OFFICE AND ADDRESS

| | |
|---|---|
| REGISTERED AGENT TYPE | Individual |
| NAME | Val Sklarov |
| ADDRESS | 8437 Bell Oaks Drive, 840, Newburgh, IN, 47630, USA |
| SERVICE OF PROCESS EMAIL | |

## ARTICLE III - PERIOD OF DURATION AND EFFECTIVE DATE

| | |
|---|---|
| PERIOD OF DURATION | Perpetual |
| EFFECTIVE DATE | 06/28/2019 |
| EFFECTIVE TIME | 05/11PM |

## ARTICLE IV - PRINCIPAL(S)

| | |
|---|---|
| TITLE | Director |
| NAME | Elizaveta Lata |
| ADDRESS | Sliczna 32 B/24, Krakow, 31444, POL |
| | |
| TITLE | CEO |
| NAME | Val Sklarov |
| ADDRESS | 142 Gold Springs Court, Canton, GA, 30114, USA |

RE: VLADIMIR SKLAROV MEMORANDUM

An individual named Thomas Mellon was named as Astor Capital's registered agent in April 2020. This change of registered agent was approved by Sklarov's lawyer, Jaitegh "JT" Singh.

**APPROVED AND FILED**
CONNIE LAWSON
INDIANA SECRETARY OF STATE
04/30/2020 11:05 AM

## NOTICE OF CHANGE OF REGISTERED OFFICE OR REGISTERED AGENT

### NAME AND PRINCIPAL OFFICE ADDRESS

| | |
|---|---|
| **BUSINESS ID** | 201906281331535 |
| **BUSINESS TYPE** | Foreign For-Profit Corporation |
| **BUSINESS NAME** | ASTOR CAPITAL FUND LTD. |
| **PRINCIPAL OFFICE ADDRESS** | Old Fort #4, Western Road, SP-63771, Nassau, New Providence, BHS |

### EFFECTIVE DATE

| | |
|---|---|
| **EFFECTIVE DATE** | 04/30/2020 |
| **EFFECTIVE TIME** | 11:05 AM |

### REGISTERED AGENT

| | |
|---|---|
| **REGISTERED AGENT TYPE** | Individual |
| **NAME** | Thomas Mellon |
| **ADDRESS** | 550 Congressional Blvd. #115, Carmel, IN, 46032, USA |
| **SERVICE OF PROCESS EMAIL** | jt@jtsinghlaw.com |

I acknowledge that the Service of Process email provided above is the email address at which electronic service of process may be accepted.

### SIGNATURE

THE SIGNATOR(S) REPRESENTS THAT THE REGISTERED AGENT NAMED IN THE APPLICATION HAS CONSENTED TO THE APPOINTMENT OF REGISTERED AGENT

IN WITNESS WHEREOF, THE UNDERSIGNED HEREBY VERIFIES, SUBJECT TO THE PENALTIES OF PERJURY, THAT THE STATEMENTS CONTAINED HEREIN ARE TRUE, THIS DAY **April 30, 2020.**

| | |
|---|---|
| **SIGNATURE** | Jaitegh Singh |
| **TITLE** | Legal Representative |

RE: VLADIMIR SKLAROV MEMORANDUM

By June 2021, Mellon was the company's sole principal:

APPROVED AND FILED
HOLLI SULLIVAN
INDIANA SECRETARY OF STATE
06/25/2021 09:46 AM

**BUSINESS ENTITY REPORT**

**NAME AND PRINCIPAL OFFICE ADDRESS**

| | |
|---|---|
| BUSINESS ID | 2019062813331535 |
| BUSINESS TYPE | Foreign For-Profit Corporation |
| BUSINESS NAME | ASTOR CAPITAL FUND LTD |
| ENTITY CREATION DATE | 06/28/2019 |
| JURISDICTION OF FORMATION | BHS |
| PRINCIPAL OFFICE ADDRESS | Old Fort #4, Western Road, SP-63771, Nassau, New Providence, BHS |

**YEARS FILED**

| | |
|---|---|
| YEARS | 2021/2022 |

**EFFECTIVE DATE**

| | |
|---|---|
| EFFECTIVE DATE | 06/25/2021 |
| EFFECTIVE TIME | 9:46 AM |

**REGISTERED OFFICE AND ADDRESS**

| | |
|---|---|
| REGISTERED AGENT TYPE | Individual |
| NAME | Thomas Mellon |
| ADDRESS | 550 Congressional Blvd, 115, Carmel, IN, 46032, USA |

**PRINCIPAL(S)**

| | |
|---|---|
| TITLE | CEO |
| NAME | Thomas Mellon |
| ADDRESS | Old Fort #4, Western Road, SP-63771, Nassau, New Providence, BHS |
| | |
| TITLE | Director |
| NAME | Thomas Mellon |
| ADDRESS | Old Fort #4, Western Road, SP-63771, Nassau, New Providence, BHS |

Astor Capital later had its Indiana registration revoked in December 2023.

RE: VLADIMIR SKLAROV MEMORANDUM

**Research in U.S. Public Records Databases Did Not Identify Thomas Mellon**

Social media profiles and blog posts suggest that Mellon is the scion of the wealthy Astor family and the CEO of the Astor Wealth Group, a series of supposed asset management companies that include Astor and Astor Capital Fund.[4,5,6] However, Mellon does not appear to exist. A Twitter profile for the subject suggests that Mellon is based in the United States. The handle @Thomas_Mellon82 implies a 1982 birthday and an approximate age of 42.[7]

A review of U.S. public record databases confirmed that there are no individuals who have resided in the United States with the name Thomas Mellon who were also born in 1982.

Even if one assumes that the "82" part of the Twitter handle @Thomas_Mellon82 was a coincidence and not related to age (or graduation date), research still did not find a viable public records profile for the Mellon alias.

A review of individuals named Thomas Mellon who resided in jurisdictions in which Astor purports to operate, such as Illinois, California, or Indiana, found no viable public records profile that matches the purported profile of the CEO of Astor (*i.e.*, an esteemed financial professional in their 40s or 50s related to the Astor family).

Nevertheless, several dozen individuals in the United States were identified who bear the name Thomas Mellon. Additional claimed data points, such as a middle initial or full date of birth, would provide further confidence in proving or disproving Mellon's existence. However, such data points were not available publicly for Mellon.

**Images of Thomas Mellon Appear to be Fake, Altered, and/or AI-Generated**

A human-eye review of Mellon's purported pictures in his biographies and press releases casts doubt on how authentic images of him are.

- The image for Mellon on the Astor Wealth Group website has an unusual black line where his neck meets the collar of his shirt, possibly indicative of a copy/paste image alteration.[8]

_____

[4] https://www.quora.com/Who-is-Thomas-Mellon-from-Astor-Wealth-Group
[5] https://medium.com/@nadouhkidoaksvuaoload/thomas-mellon-the-driving-force-behind-astor-wealth-group-ee543a9aa336
[6] https://patch.com/texas/houstonheights/calendar/event/20240405/a980bd46-f206-4f53-98e0-85765f37878e/thomas-mellon-the-driving-force-behind-astor-wealth-group
[7] https://twitter.com/Thomas_Mellon82
[8] https://astorwealthgroup.com/

RE: VLADIMIR SKLAROV MEMORANDUM



- The tie and lapel of his suit also curve in unnatural angles.



RE: VLADIMIR SKLAROV MEMORANDUM

- ▪ The other common photo of Mellon, which appears in an undated press release,[9] seems overly glossy and smooth. While more subjective, the smoothness and unusual background/camera angle combination cast doubt on the image's authenticity. Mellon often uses a black-and-white version of the photo below that helps reduce the glossiness and makes the picture more realistic.[10]



_____

[9] https://kingnewswire.com/astor-wealth-group-demonstrates-capability-in-a-share-financing-with-bountiful-duo-of-deals-worth-400m-usd-2309126304/
[10] https://www.quora.com/Who-is-Thomas-Mellon-today

RE: VLADIMIR SKLAROV MEMORANDUM

- The facial hair in this image also changes across different uses, despite it being the same photo. For example, an image of Mellon on the website about.me appears to be the same photo with the same background but with different filters, and Mellon exchanges a goatee for stubble.[11]



- Our use of AI image and Photoshop detection tools corroborates the hypothesis that images of Mellon are fake or at least heavily altered. These tools can be helpful but can generate false positives and should not be considered fully authoritative.

- Photo analysis was conducted with InVid, a video and image verification platform often used by journalists and investigative groups like Bellingcat.[12] InVid reports that the above image of Mellon

---

[11] https://about.me/thomasmellon
[12] https://www.bellingcat.com/app/uploads/2022/08/Bellingcat-Hackathon-Digital-Investigation-Tool-Aug22-1.pdf

RE: VLADIMIR SKLAROV MEMORANDUM

was subject to high levels of "double quantization inconsistencies." These inconsistencies occur when a foreign object is inserted into a JPEG image. When the new image is saved, the untampered part of the image will have been compressed twice, while the inserted region only once.



- Running the picture of Mellon on the Astor website through InVid likewise gets high rates of double quantization inconsistencies but also generates hits within the database's "Block" algorithm. JPEG compression operates in an 8-by-8 grid that is detectable. Adding or moving an object on an image may locally disrupt this grid. The Block algorithm detects the image grid and looks for local discrepancies. The high rate of both Block and double quantization detection suggests a high degree of computer alteration of Mellon's picture.

RE: VLADIMIR SKLAROV MEMORANDUM



- A second opinion from additional databases like Fake Image Detector[13] and IsitAI.com[14] also suggested that the images of Mellon have been subject to digital alteration.

---

[13] https://www.fakeimagedetector.com/
[14] https://isitai.com/ai-image-detector/

RE: VLADIMIR SKLAROV MEMORANDUM



- Astor also appears to have been sloppy in reusing apparent fake images, accidentally mixing up photos of Mellon with another bald Astor employee. One blog post extolling the virtues of Astor shows a purported picture of Mellon that looks dissimilar to other discussed photos, apart from being bald.[15]

---

[15] https://mod273.share.library.harvard.edu/general/astor-wealth-group-taking-the-lead-in-securities-dvp-funding/

RE: VLADIMIR SKLAROV MEMORANDUM

In the evolving landscape of private lending, Astor Wealth Group lead by Thomas Mellon  is taking the lead by becoming the first and only private lender to offer true Delivery Versus Payment (DVP) funding for all qualifying stocks.



- A reverse image search of this photo indicated that it originated from the LinkedIn profile of Aleksey S., another purported employee of Astor.[16] InVid suggested that this photo may have also been subject to a high degree of computer alteration.

_____

[16] https://www.linkedin.com/in/aleksey-s-95b7b52a5/

RE: VLADIMIR SKLAROV MEMORANDUM



**Most Media about Thomas Mellon is Self-Reported; Third-Party References to Him Appear to be Fake or Dubious**

Most media references to Mellon are in press releases or other self-reported data sources and cannot be used to prove his existence.[17] There are several press releases framed as news articles, ostensibly created to boost Mellon's and Astor's profiles.

Research also identified several purported authors of blogs and forums that praise Mellon/Astor but are of dubious quality and may have been generated by bogus users. Much of the online content about Mellon shared similar grammar and style errors, unusual and improper word choices, and stilted, repetitive phrasing. This suggests an identical author across all Mellon-related content, possibly a non-native English speaker. None of the profiles on Mellon discussed his career or education before Astor or otherwise provided data points that could be used to verify his existence.

- Mellon and Astor received praise on the question forum Quora from a profile called "Anna Lens." This account was created in August 2023, and posted answers to the questions "Who is Thomas Mellon?" and "Is Astor Wealth Group Safe?" with replies lauding Mellon and Astor.[18]

  This Anna Lens profile wrote, "These guys have colossal history, so yes, they are credible," without really talking about said history beyond referring the reader to the Astor websites.

---

[17] https://kingnewswire.com/astor-wealth-group-demonstrates-capability-in-a-share-financing-with-bountiful-duo-of-deals-worth-400m-usd-2309126304/
[18] https://www.quora.com/profile/Anna-Lens-3/answers

RE: VLADIMIR SKLAROV MEMORANDUM

"Anna Lens" also provided two more answers advertising a cryptocurrency security tool, and posted an inquiry for finding the best escorts in Tenerife.[19] The Anna Lens profile claimed to be a CFO at "Currency Exchanges," but no corroborating information was found for any person matching this description. Many of Anna Lens' 22 followers are Russian.

- Another blog profile, "Thomas R," was also created on Medium in August 2023. This profile is even less credibile, with no identifying information or biographical details provided.

  The profile posted a single article on Medium, "Thomas Mellon: The Driving Force Behind Astor Wealth Group," that used the same photo and content as several of Astor's other releases.[20] A third profile, "Mark Bougreen," using a clearly computer-generated profile picture, posted an Astor press release featuring Thomas Mellon at a purported April 2024 community event in Houston Heights, TX.[21] Despite this individual claiming to be from Los Angeles and living in Texas, U.S. public record databases show that no individual with the name Mark Bougreen has ever lived in the United States.

- On September 3, 2021, purported Seeking Alpha blogger Evana Tailor published a blog to the site titled "Astor Asset Management Set to Expand Wealth Management Recruiting Throughout Shenzhen Region."[22]

  Similar to the above sources, the Seeking Alpha piece reads like a press release. While the blog was published by the user Evana Tailor, it appeared to have been written by an individual affiliated with Astor as it claimed to know about Astor's financial health, information that Astor had not publicly disclosed. The author of the blog uses the Commonwealth form of spelling for words such as "centres," even though Tailor claimed in her profile to have been born in Houston, TX.

  The final few lines of the article also listed purported Astor Managing Director Honghui Tsai's name and title where an author's name is traditionally placed. InVid also has detected high rates of image alteration associated with Evana Tailor's Seeking Alpha profile picture and further research on this individual was unable to confirm that Evana Tailor exists.

- Astor has also used press release distribution services such as Issuewire and Accesswire to post press releases lauding Thomas Mellon on ostensibly reputable websites, including Yahoo! Finance, Yahoo! Style, and StreetInsider.com.[23,24,25] Astor's press releases also appeared on a WordPress blog masquerading as an official publication of Harvard University via its URL.[26] Several

---

[19] https://www.quora.com/profile/Anna-Lens-3/posts

[20] https://medium.com/@nadouhkidoaksvuaoload/thomas-mellon-the-driving-force-behind-astor-wealth-group-ee543a9aa336

[21] https://patch.com/texas/houstonheights/calendar/event/20240405/a980bd46-f206-4f53-98e0-85765f37878e/thomas-mellon-the-driving-force-behind-astor-wealth-group

[22] https://seekingalpha.com/instablog/52843350-evana-tailor/5635235-astor-asset-management-set-to-expand-wealth-management-recruiting-throughout-shenzhen-region

[23] https://finance.yahoo.com/news/astor-wealth-group-redefining-share-114500524.html

[24] https://sg.style.yahoo.com/astor-asset-management-history-astor-101427620.html

[25] https://www.streetinsider.com/Globe+PR+Wire/Short+Selling+Restrictions%3A+A+Flawed+Approach+to+Stabilizing+the+Faltering+Chinese+Property+Vested+Economy/22921472.html

[26] https://mod273.share.library.harvard.edu/general/astor-wealth-group-taking-the-lead-in-securities-dvp-funding/

PREPARED AT THE REQUEST OF COUNSEL

digital publications, such as CEO Weekly and New York Weekly, contained articles praising Astor and Thomas Mellon.[27,28,29] However, these articles are paid content not authored by the staff of the websites, which are largely content aggregators. The disclaimer to the CEO Weekly article that praised Mellon noted, "This article features branded content from a third party. Opinions in this article do not reflect the opinions and beliefs of CEO Weekly."[30]

- Astor also paid for two press releases on Mellon that appeared on Midwest CBS affiliate Keloland Media Group's website,[31] as well as the website for Kansas-based agricultural group Scott Coop.[32]

- A review of Mellon's media profile has found no authoritative and independent media sources that can definitively confirm Mellon's existence.

**Research was Unable to Verify that Mellon is a Descendant of the Astor Family**

On September 3, 2021, the website latestly.com published an article titled "Astor Asset Management: The History of Astor."[33] The article was sponsored content and was not written by latestly.com staff. This article was also picked up by Yahoo Life Singapore, which largely reported the content verbatim.[34] The article noted the importance and history of the Astor family of entrepreneurs and financiers. It also describes purported Astor CEO Mellon as a "descendent of the famed Astor family," though it does not detail his purported connection. The latestly.com piece read more like a press release than a traditional news article, and the website itself focused on viral and gossip news in India, and was not particularly credible.

A review of family tree and genealogical websites found no indication that Mellon was a descendant of the prominent Astor family.[35,36,37] Research likewise was unable to find an instance of an Astor family member marrying someone with the surname Mellon.

As research was unable to identify a U.S. public records profile for the Mellon of our report, known family members were likewise unavailable for this name.

---

[27] https://ceoweekly.com/ascendant-against-challenges-the-financial-robustness-of-thomas-mellon-and-the-emergence-of-astor-wealth-group/

[28] https://nyweekly.com/business/astor-wealth-group-acquires-hong-kong-green-bonds-worth-50m/

[29] https://www.smbceo.com/2023/08/14/prospects-in-asia-beliefs-in-digital-assets-an-account-of-astor-wealth-groups-steady-path/

[30] https://ceoweekly.com/ascendant-against-challenges-the-financial-robustness-of-thomas-mellon-and-the-emergence-of-astor-wealth-group/

[31] https://www.keloland.com/business/press-releases/globenewswire/9012656/astor-wealth-groups-alleged-75m-usd-loan-collateralized-by-bitcoin-sparks-curiosity/

[32] https://www.scottcoop.com/markets/stocks.php?article=issuewire-2023-8-12-thomas-mellon-the-driving-force-behind-astor-wealth-group

[33] https://www.latestly.com/lifestyle/astor-asset-management-the-history-of-astor-2811954.html

[34] https://www.latestly.com/quickly/lifestyle/astor-asset-management-the-history-of-astor-2811954.html

[35] https://familypedia.fandom.com/wiki/Astor_family

[36]https://nt.global.ssl.fastly.net/binaries/content/assets/website/national/regions/oxfordshire-buckinghamshire-berkshire/places/cliveden/pdf/cliveden_astor_family_tree.pdf

[37] https://en.wikipedia.org/wiki/Astor_family

RE: VLADIMIR SKLAROV MEMORANDUM

**Unorthodox Twitter Content**

Like Astor press releases, Mellon's Twitter profile contains stilted and awkward language that appears to have been written by someone who writes English as a second language.[38] Below are a few sample tweets:

> In the symposium of finance, our coinage of wisdom: Time. The dividends of patience pay bountiful returns. Time is the wisest as it uncovers everything

> Sub-oceanic travel is the new ESG trend. Better buy your ticket now as they are selling like hot cakes, imagine all the bizarre and mysterious creatures you will find lurking 13,000 feet beneath the calm abyss.

> In light of prevailing global economic uncertainties and as part of our diversified asset allocation strategy, we  announce the acquisition of more than $900 million USD in gold. Additionally,  $300 million USD of Bitcoin.

> In line with our latest posting, unlike the story the media weaves of a soft landing, we'd rather take the road less traveled and ill-advised:

The majority of Mellon's Twitter content comprises of grandiose statements and weirdly worded idioms about his firm's strategies. However, on February 6, 2024, he retweeted a video from right-wing media personality Tucker Carlson.[39] In the video, Carlson defended his decision to interview Vladimir Putin and called Western media reporting on Russia biased and full of lies. Mellon also follows Konstantin Vadimovich Kisin, a Russian-British conservative pundit who argues that "Woke Culture Has Gone Too Far" in his speeches.[40] Most of the other profiles Mellon follows are of other purported Astor employees. He does not follow any profiles that pertain to his purported heritage as an Astor.[41] The Russian-leaning focus of Mellon's Twitter followings, combined with its awkward style of writing, further suggests that Sklarov might be running the account.

Preliminary research was unable to confirm the existence of any of the other employees on the Astor Wealth Group website, including: Tim Grayson (executive director of finance), Nathanial Strickland (director of legal and ethics), Christopher Hunt (regulatory compliance), and Niklaus Zürcher (chief risk officer).

Like Mellon, these individuals do not have biographies that talk about previous jobs or education, and their U.S. public profiles were not identified. Also like Mellon, their photographs appear AI-generated or altered, and there were no authoritative sources that confirmed their existence. These individuals have

---

[38] https://twitter.com/Thomas_Mellon82
[39] https://twitter.com/TuckerCarlson/status/1754939251257475555
[40] https://www.youtube.com/watch?v=zJdqJu-6ZPo
[41] https://twitter.com/Thomas_Mellon82/following

Twitter profiles that post similar tweets to Mellon, in terms of content and style, and appeared to be written by the same person.[42,43]


## Sklarov has Repeatedly Been Accused of Securities-Backed Loan Fraud

Sklarov and his various companies have been accused on multiple occasions of committing securities-backed loan ("SBL") fraud by selling shares used as collateral to secure loans. Barclays summarized Sklarov's *modus operandi* in an October 2020 federal lawsuit, writing the following:

125    Although Sklarov has used various shell companies to perpetuate each alleged fraud, the fact patterns underlying each of the schemes are nearly identical: a Sklarov-related entity promises to provide a loan to a borrower backed by securities owned by the borrower; the borrower pledges the shares as collateral to the Sklarov-controlled entity; the Sklarov-controlled entity provides little if any of the promised loan funds to the borrower and then sells or attempts to sell the shares proffered only as collateral, and retains the proceeds.

Further instances in which Sklarov and his companies have been involved in similar schemes follow:

- In 2018, two executives of Singapore-based Sunpower Group who had placed 14 million shares with Sklarov-owned America 2030 Capital sued the company in Singapore after discovering that the shares were no longer in the specified depository brokerage account.[44] A blog committed to unearthing Sklarov's alleged fraud wrote in February 2019 that "America 2030 Capital looks to have illegally sold shares used to secure a stock loan, without dispersing funding for the loans."[45]

- In February 2024, Hong Kong-based Chenming Holdings sued Sklarov, his relative Tetyana Sklarov, Singh, and several of their affiliated companies in United States federal court, accusing them of committing SBL fraud.[46] The plaintiff claimed that it had granted 210.72 million Class B shares and 153.41 million Class H shares to the defendants as collateral for a $67.5 million loan. However, as the company repaid its loan, it claimed that the defendants fraudulently transferred or sold off the collateral. This case remains ongoing.

---

[42] https://twitter.com/Tim_Grayson76

[43] https://twitter.com/NatStrickland75

[44] https://sg.finance.yahoo.com/news/five-singapore-small-cap-stocks-spotlight-2018-064522087.html

[45] https://america2030stockloan.wordpress.com/2019/02/11/america-2030-capital-stock-loan-take-advantage-of-sunpower-share-holders/

[46] *Chenming Holdings (Hong Kong) Limited v. Val Sklarov, et al.,* case no. 1:24-cv-00935 (U.S. District Court for the Southern District of New York; filed on February 8, 2024)

RE: VLADIMIR SKLAROV MEMORANDUM

- In 2019, Two Rivers Water & Farming Co. sued several Sklarov companies in U.S. federal court.[47] The plaintiff claimed that the Sklarov entities agreed to lend it $1.1 million as secured by 6.8 million shares. However, it alleged that it never received the loan and that the companies had attempted to remove transfer restrictions on the shares.

- Around 2019, Brent Satterfield sued Sklarov and several of his companies, accusing them of SBL fraud.[48] Satterfield claimed to have pledged two million shares of Co-Diagnostics Inc. as collateral for a $3.5 million loan. The Sklarov entities allegedly began selling the stock before Satterfield received the loan, and demanded additional shares as collateral after the sudden sale of shares caused the price of Co-Diagnostics stock to sink, lowering the value of the collateral.

  The court issued temporary restraining orders against the defendants and later granted a preliminary injunction, barring them from disposing of any additional shares, after announcing that it believed that Sklarov's entities would ignore its restraining order. The court wrote, "**informing this Court's decision is the possibility that someone is not just threatening to do, but actually violating this Court's order and actually doing the thing that the plaintiff is asking them to not do.**"

- Around 2018, Jonathan Tidswell-Pretorius, chairman of U.K. oil and gas company Angus Energy (LSE: ANGS), transferred 39.5 million shares of Angus – representing 12.87 percent of the company's issued share capital – to Sklarov's America 2030 "in contemplation of a possible equity-linked loan."[49] Media commenting on the incident noted that **Yelyzaveta "Elizabeta" Lata**, who previously worked alongside Sklarov, was listed as the company's only director and described her as a "20-year-old Hungarian who lives in Poland."[50] The news sent Angus' shares spiraling 15 percent, and Tidswell-Pretorius stepped down shortly after the news broke.

- In May 2020, Astor Asset Management 3 Ltd. agreed to loan ZS Capital $31.8 million through a stock-based loan involving shares of a Chinese company named Zhejiang Cangnan Instrument Group Limited.[51] However, before the full loan was disbursed, the defendants reviewed the Central Clearing and Settlement System of Hong Kong and discovered that nearly one million Cangnan shares had been transferred out of the custodian's account to Phillip Securities (Hong Kong) Ltd., DBS Vickers (Hong Kong) Ltd., and Citibank N.A. ZS subsequently sued Astor 3, seeking an *ex parte* injunction to restrain the company from disposing of any additional Cangnan shares.

  The matter was referred to arbitration and, in 2021 and 2022, the arbitrator handed down unspecified final awards. Astor 3 sued ZS in Jamaica in December 2021 as a result, seeking to set the awards aside. The Jamaican court ruled in favor of the defendants in May 2024.

---

[47] *Two Rivers Water & Farming Co. v. America 2030 Capital Limited, et al.,* case no. 1:19-cv-1640 (U.S. District Court for the District of Colorado, filed on June 6, 2019)

[48] *Brent Satterfield v. VStock Transfer, et al.,* case no. 650311/2019 (Superior Court of New York County, NY; filed on January 16, 2019)

[49] https://drillordrop.com/2018/07/04/angus-confirms-chairman-transferred-shares-to-company-headed-by-20-year-old-hungarian/

[50] https://www.share-talk.com/angus-energy-plc-aimangs-what-exactly-is-going-on-within-angus-energy/

[51] *Astor Asset Management 3 Limited v. ZS Capital Fund SPC, et al.,* case no. SU2021CD00543 (Supreme Court of Judicature of Jamaica, filed on December 13, 2021)

RE: VLADIMIR SKLAROV MEMORANDUM

ZS also sued Astor 3 in Hong Kong on an unidentified date, seeking a stay of proceedings that was granted in favor of arbitration lifted.[52] The court lifted the stay around April 2023, after finding that the arbitration agreement was spent after the Jamaican court issued its awards.

## Sklarov was Imprisoned for Medicare Fraud and Money Laundering

In October 1997, Sklarov was charged with leading an $18 million Medicare fraud scheme.[53] The U.S. government alleged that he and two associates had used medical supply company Omega Reimbursement Concepts Inc. to bill Medicare for supplies that were not covered. Sklarov pled guilty to Medicare fraud and money laundering in October 1997, and he and the company agreed to pay about $14 million in settlements, with Sklarov being fined $500,000. In January 1998, Sklarov was sentenced to a year and a day in prison (register no. 06153-068), as well as three years of supervised release. He was released early, on December 31, 1998.

## Astor is Masquerading as an Affiliate of Astor Investment Management LLC

Our research indicates that, like several of Sklarov's previous endeavors, Astor seeks to give the false impression that it is Astor Investment Management LLC ("Astor IM"), an unrelated registered investment advisor led by CEO Robert Stein.[54]

Our review of corporate records, media outlets, social media platforms, legal databases, and other open-source records did not identify any information linking Astor to Astor IM.

### Astor Falsely Claims to Have an Astor IM Central Index Key

Astor claims on its website that it files reports with the SEC under a specific Central Index Key ("CIK").[55] However, there is no way that Astor would be able to file reports under this CIK, as this CIK belongs to the predecessor of Astor IM, an unrelated company.

Astor IM operated as Astor Asset Management LLC ("AAM") until 2014, during which time it filed with the SEC under CIK 1488446. In 2014, AAM CEO Robert Stein reorganized AAM's assets as Astor IM, and redomiciled the company in Delaware under a new corporate entity.[56] As Astor IM is a distinct legal entity from AAM, it was issued a new CIK. AAM was subsequently voluntarily dissolved, and CIK 1488446 has not filed any documents with the SEC since 2013.

---

[52] *ZS Capital Fund and others v. Astor Asset Management 3 Limited and another,* case no. HKFI 1047 (Hong Kong Court of First Instance; filed on unidentified date)
[53] https://www.chicagotribune.com/1998/06/03/grayslake-man-faces-medicare-fraud-rap/
[54] https://astorim.com/
[55] https://astorassetgroup.com/about-us
[56] https://astorim.com/wp-content/uploads/2018/04/Astor_What_MeWorry_Article_final.pdf

RE: VLADIMIR SKLAROV MEMORANDUM



*Available Company Information for CIK 1488446*

As noted above, CIK 1488446 pertains specifically to an "Astor Asset Management LLC" – not Astor Asset Management Ltd. AAM, located in Illinois, began filing in May 2010. As shown below, AAM has since been voluntarily dissolved.

## Corporation/LLC Search/Certificate of Good Standing

### LLC File Detail Report

| | |
|---|---|
| File Number | 00606677 |
| Entity Name | ASTOR ASSET MANAGEMENT LLC |
| Status | VOLUNTARY DISSOLUTION on Tuesday, 31 December 2013 |

### Entity Information

| | |
|---|---|
| Principal Office | 111 S WACKER DR STE 3910 CHICAGO, IL 60606 |
| Entity Type | LLC |
| Type of LLC | Domestic |
| Organization/Admission Date | Tuesday, 25 September 2001 |
| Jurisdiction | IL |
| Duration | PERPETUAL |

RE: VLADIMIR SKLAROV MEMORANDUM

The SEC describes a CIK as a "unique number" assigned to "each entity or individual that submits filings to the SEC," meaning that AAM is the only legal entity that can file with the SEC under CIK 1488446.[57] As such, Astor cannot use this CIK.

We identified several other indications that Astor and Astor IM are not related:

- Astor claims in its privacy policy to "not hold or maintain its own licenses," while Astor IM is registered with FINRA (CRD 116408).

- The legal disclaimer on Astor's website reports, "The financial products and services that the Firm offers are not available in the United States of America and Canada or to citizens of the United States of America or Canada." Astor IM, on the other hand, is registered with U.S. regulatory bodies and operates in the United States.

**Sklarov Has a History of Operating Funds Pretending to be Well-Known Firms**

Sklarov has repeatedly been accused in lawsuits, media outlets, and blogs of masquerading as other well-known financial firms.

- In October 2020, Barclays sued Sklarov and several affiliated entities in U.S. federal court, accusing them of operating a sham Lehman Brothers website.[58] Barclays further claimed that a Belize-based Sklarov shell company filed trademarks "containing or comprising famous names and marks associated with financial services, with which those defendants clearly had no affiliation or association," including a word mark for "Astor Capital" in August 2019.

  The defendants agreed to shut down the website and not use Barclays marks in March 2021 after reaching an amicable agreement with Barclays.

- In August 2019, a Rothschild subsidiary sued Sklarov and several of his companies, alleging that they had used a trademark similar to authentic Rothschild marks to offer financial services.[59] The parties settled in 2020, and the defendants agreed to not use Rothschild marks. Of note, during the trial, Singh was questioned regarding his filing of an application for a Mayer Amschel Rothschild trademark, which contained the exact name of Rothschild Companies' founder. Singh responded:

---

[57] https://www.sec.gov/submit-filings/filer-support-resources/how-do-i-guides/look-central-index-key-cik-number
[58] *Barclays PLC and Barclays Capital Inc. v. Vladimir Sklarov, et al.,* case no. 1:20-cv-08437 (U.S. District Court for the Southern District of New York; filed on October 9, 2020)
[59] *Rothschild & Co. Continuation Holdings A.G., et al. v. Val Sklarov, et al.,* case no. 1:19-cv-03561 (U.S. District Court for the Northern District of Georgia; filed on August 6, 2019)

RE: VLADIMIR SKLAROV MEMORANDUM

> With regards to what is in the application, it was asked by the company for me to put it that way. I did advise them against it. They wanted to continue forward with the language that was in there. So therefore it was submitted. However, after the fact, I do believe the company is looking to actually withdraw those applications. And it just hasn't been proceeded by my office yet. But they are looking to withdraw those applications.

The application was never withdrawn. According to court documents, it was instead rejected by the U.S. Patent and Trademark Office, which allegedly found that the mark would cause confusion with the Rothschild Companies' actual trademarks.

- Multiple blogs and social media profiles have also accused Sklarov of being a scammer and thief, with one writing, "Val Sklarov is only concerned with stealing the money of his clients […] He takes shelter under the name of his so-called 'professional' organization to attract clients he can later exploit."[60],[61],[62]

## Gregory Mitchell, Astor Asset Management's Purported Managing Director of North America, also Appears to be Fabricated

According to Astor's website, the company's managing director of North America is Gregory Mitchell.[63] There is extremely limited public information about Mitchell. The Astor website lists his email, Gregory.Mitchell@astorassetgroup.com, but little else about him. Outside of the Astor website, Mitchell was mentioned in a handful of sales and lead generation tools, like RocketReach[64] and SignalHire.[65] Such websites merely aggregate information from the Astor website and are not a reliable barometer of credibility.

Additionally, Per Astor's website, its U.S. office is located at 345 California Street, Suite 600, San Francisco, CA 94104.[66] However, this address is occupied by Industrious, a co-working and virtual office provider. It is therefore unclear if Mitchell is tied to the jurisdiction of California in particular.[67]

### Mitchell has an Extremely Limited Public Profile

Mitchell is little more than a name on the Astor website. No articles, social media profiles, or press releases reference him. Given his common name and lack of identifiers, including age, address, or past places of

---

[60] https://valsklarov.wordpress.com/
[61] https://www.instagram.com/val_sklarov/?hl=en
[62] https://america2030stockloan.wordpress.com/
[63] https://astorassetgroup.com/contact
[64] https://rocketreach.co/gregory-mitchell-email_241073956
[65] https://www.signalhire.com/companies/astor-capital-fund-ltd
[66] https://astorassetgroup.com/contact
[67] https://www.industriousoffice.com/locations/345-california-street-suite-600-700

RE: VLADIMIR SKLAROV MEMORANDUM

work, it is difficult to conduct effective U.S. public records research. There are over 1,000 individuals in the United States with the name Gregory Mitchell, more than 150 of whom live in California.

As there are almost no data points available to analyze for Mitchell, it is difficult to prove or disprove his existence. However, the fact that many other purported employees of Astor and its family of companies also appear to be fake lends itself to the possibility that Mitchell is also fake.

**Mitchell's Archived LinkedIn Profile Contains Inaccurate Education Claims**

Mitchell appears to have previously had a LinkedIn profile that has since been deleted. However, a proprietary database that archives and preserves social media profiles has retained information regarding this profile prior to its deletion.



The database shows that Mitchell claimed to work in San Francisco, and to have received degrees from Yale and Syracuse Universities.

We contacted Yale University in an attempt to verify if Mitchell attended the school. The Yale University registrar reported that Mitchell did not receive an MBA from the school, saying, "we have no record of this student attending SOM nor Yale University in general." Degree verification attempts are ongoing for Syracuse university.

<u>**Other Noteworthy Data Points**</u>

Thus far we have identified the following additional information of note:

RE: VLADIMIR SKLAROV MEMORANDUM

- In 2021, Sklarov, Astor, and a variety of other individuals and entities filed a civil fraud lawsuit in U.S. federal court against Weiser Global Capital Markets Ltd. They claimed that Weiser had misappropriated $450 million worth of their shares and cash, a claim that has been lobbed at Sklarov and his entities on multiple occasions.

Offshore Alert described the matter as "bizarre and seemingly frivolous," reporting that it had been filed by "four Ukraine citizens and 35 suspiciously-named firms that purport to be domiciled in some of the seediest offshore jurisdictions, including one called 'Bear Stearns.'" The case was voluntarily dismissed just four days after it was filed.

Several years after the case was filed, in August 2023, an unidentified individual using the email address consultingspecialists1111@gmail.com sent the following email to Offshore Alert, offering $25,000 to have the article describing the above lawsuit taken down.[68] We note that the email was sent to members of the Offshore Alert team as well as a member of Singh's law firm. However, Singh's connection to the email is unclear.

## End Report

---

[68] https://www.offshorealert.com/well-pay-you-25k-to-remove-content-writes-rep-for-ukraines-oksana-hryn-bear-sterns-sic-et-al/