# EXHIBIT 2



# SECURITIES-BACKED FINANCING

**A Fixed Instrument, Collateralized Non-Recourse Facility**

**STOCK LOAN AGREEMENT**

Astor Asset Management



Astor Asset Management 3 Ltd

### STOCK LOAN AGREEMENT ("SLA")

July 28, 2021   Guarantor  Borrower  Lender

This Stock Loan Agreement is established as of ~~July 14th, 2021~~ (the "Effective Date") between Astor Asset Management 3 Limited, a Canadian corporation, duly organized under the laws of Canada, with its office located at 777 Dunsmuir Street, Suite 1400, Vancouver, British Columbia, Canada V7Y 1K4 ("Lender") and:

Corporacion RBS SA de CV, a corporation with a principal place of business located at Ave. Ferrocarril de Rio Frio 419 A99, Cuchilla del Moral 1, Iztapalapa 09319 Ciudad de Mexico, Mexico (hereinafter "Borrower") and Ricardo Benjamin Salinas Pliego, an individual with a principal place of business located at Cristobal Colon 79 INT C, Mexico 09360 (hereinafter "Guarantor"), mutually hereinafter and together with the Lender shall be referred to as the ("Parties").

This Agreement shall remain in effect until (a) fully satisfied and mutually terminated in writing upon mutual satisfaction; (b) all Indebtedness is paid in full and Borrower and Guarantor are released by Lender in writing; or (c) the Agreement is terminated in writing by Lender in accordance with the covenants and terms provided herein.

### WITNESSETH

**STOCK LOAN AGREEMENT** On this date, and from time-to-time hereafter, Lender may make Loans to Borrower, who's performance is guaranteed by Guarantor. Borrower and Lender (collectively, the "Parties") enter into this Stock Loan Agreement ("SLA") which, together with the applicable supplement(s) and other Loan Documents, shall govern each separate Loan and all indebtedness between the Parties and the subject Loan and Borrowers performance is unconditionally guaranteed by the Guarantor. Unless stated to the contrary elsewhere, the provisions of all Loan Documents are incorporated by reference herein as if stated in full. This SLA supersedes all previous term sheets, emails, representations, warranties and discussions and is the final documentation of the Parties' undertakings. For the value received, Borrower promises to pay Lender, all indebtedness governed by this Agreement. Nothing herein shall be construed to obligate Lender to restructure or renew any unpaid balance, forgive any part thereof, fund in full, or to make any additional or future loans or financial accommodations to Borrower.

**GUARANTEE AND SECURITY** In consideration of the Lender making available Loan facilities under this Agreement, the Guarantor hereby irrevocably and unconditionally guarantees to the Lender the due and prompt payment and discharge of Borrowers Obligations and undertakes that the Guarantor will on demand make good any Event of Default by the Borrower in payment or discharge of the Borrowers Obligations or any part thereof as if the Guarantor instead of the Borrower were expressed to be the primary obligor in respect thereof, together with interest and all other indebtedness expressed herein to be payable by the Borrower on the Borrowers Obligations under the Loan Documents until payment thereof in full and all other warranties, representations and covenants are satisfied to Lenders satisfaction and the herein Terms and Conditions.

**GRANT OF GUARANTOR COLLATERAL** Subject to the grant of Security Interest in the subject Collateral by the Guarantor, the Guarantor hereby unconditionally and irrevocably Pledges and grants to the Lender for the duration of the Loan Term and until all Indebtedness of Borrower is fully satisfied and discharged, a Lien and Security Interest in and to Lenders right of set-off against the rights, title and interest in the three million five hundred thousand (3,500,000) publicly traded shares of **Grupo Elektra SAB DE CV** and known as ELEKTRA MX (hereinafter the "Collateral") on deposit in favor of Lender with Weiser Global Capital Markets and the Guarantor

**Astor Asset Management 3 Ltd**

Pledges the Collateral as security for the prompt and complete payment and performance of Borrower when due, whether at the stated maturity, by Acceleration or otherwise.

## I.   DEFINED TERMS WITHIN AGREEMENT:

1) **"Acceleration Notice"** shall mean a written notice given to Borrower and Guarantor after the occurrence and continuation of an Event of Default declaring all amounts and sums accrued and unpaid to be immediately due and payable, at which point the Loan is in state of Default.

2) **"Advance"** shall for purposes of this Agreement refer to any sum of money and in any currency, paid out to any account of Borrower, or any third-party account, whether controlled by Borrower or not, if directed to do so by Borrower, for and on behalf of Borrower. All payments made to any third-party for or on behalf of Borrower shall constitute as payment having been made to Borrower.

3) **"Agreement"** shall mean this Stock Loan Agreement, including any supplements or attachments hereto, and other subsequent written agreements, which shall be incorporated by reference along with all amendments, modifications, and restatements thereof in written form. Emails are expressly excluded, are not binding, and are not to be construed as part of any agreement or modification.

4) **"Approved Loan Amount"** shall mean the maximum total amount the Lender is willing to fund to Borrower based on Pledged Collateral of Guarantor to be deposited with Depository Broker represented throughout as Loan Principal Amount or Principal. For purposes of this Agreement, the Approved Loan Amount may be paid out in draws or in lump sum.

5) **"Balance Payment"** shall mean the Loan Principal Amount less any Origination Fee, costs, or expenses, if applicable, not satisfied in cash by Borrower.

6) **"Borrower"** shall mean the corporate entity and the individual described herein and no other for purposes of this Agreement.

7) **"Breach"** shall mean any of the Events of Default by Borrower or Guarantor specified in this Agreement and unless specified otherwise, other Loan Documents that constitute a default.

8) **"Business Day"** shall mean any day other than Saturday, Sunday or a holiday observed by applicable laws.

9) **"Cash Collateral"** shall mean the Loan Principal Amount to be funded to Borrower, which at all times shall be computed by Lender and reflected in the Closing Statement. The Cash Collateral shall be the net amount to be funded, less fees and costs as stipulated in this Agreement and the Closing Statement and disbursed on the Closing Date.

10) **"Closing"** shall have the same meaning as Closing Date and used interchangeably throughout.

11) **"Closing Date"** shall occur after the Confirmation Day and shall mean the date(s) on which the Closing Statement is issued and thereafter the Loan Principal Amount is disbursed to Borrower. When Loan Principal Amount is disbursed in several tranches, in each case a Closing Statement will be issued. Erratic or unforeseen market conditions may warrant an untimely issuance and delay in funding.

Initials: _____  _____  _____
Guarantor  Borrower  Lender

Astor Asset Management 3 Ltd

12) **"Closing Statement"** shall mean a Lender issued and determined document which references the final financial provisions, currency conversions and terms of the Loan prior to disbursement.

13) **"Collateral"** shall mean publicly traded securities of Issuer, together with any split-up or dividend payable to shareholder of record.

14) **"Confirmation"** shall have the same meaning as Confirmation Day and used interchangeably.

15) **"Confirmation Day"** shall mean the Business Day after the Pledged Collateral has been received, settled and posted in favor of Lender at the Depository Broker and is adequately ready and valid in all respects to be registered as Pledged Collateral. The Depository Broker shall notify the Borrower and Lender in writing of this event.

16) **"Cure Period"** shall mean a period of time when a Party that breaches a contract can remedy the breach without penalty, provided a Cure Period is afforded and stated as such. The Cure Period when provided as per this Agreement is five (5) Business Days.

17) **"Currency"** shall mean Mexican Pesos ("MXN"). Currency shall include the Loan, including all interest and fees thereof, and any funds transferred in this Agreement. If Pledged Collateral is a security that is priced and traded in a market and currency other than MXN, the Parties agree to convert to MXN for all purposes. Conversions for such currency shall be selected by Lender's choice of bank or those published by Yahoo Finance or comparable news source. Any conversions selected by the Lender's choice of bank the Borrower shall assume a 1.50% - 2.50% conversion rate computed according to the purchase of USD exchange rate published by Banamex, if the Borrower elects to receive funding in Mexican Pesos.

18) **"Default"** shall mean a breach of this Agreement and have the same meaning as Event of Default.

19) **"Depository Broker"** shall mean a regulated financial institution selected by Lender for the receipt of the securities, specifically the Pledged Collateral and any top-up. A Depository Broker is a firm that facilitates the custody of the Pledged Collateral acting as an intermediary between the Borrower, Guarantor and Lender and which will adhere to an executed Custodian Management Agreement, in accordance with all terms and conditions set herein this Agreement.

20) **"Effective Date"** shall mean the date the Agreement is effective.

21) **"Encumbrance"** shall mean Lender's legal claim on Pledged Collateral that affects the Borrower's ability to transfer ownership to anyone or to dispose of the Pledged Collateral without Lenders prior written authorization. For purposes of this definition, Encumbrance shall mean lien, mortgage, charge, hypothecation, rehypothecation, rights, barter, pawn, trade, dispose, deal-in, pledge, re-pledge, repo, borrow or transfer of security interest in Collateral. The Pledged Collateral will be restricted to Guarantor and Encumbrance rights exclusively granted to Lender.

22) **"Event of Default"** with respect to this Loan or any, shall mean any of the events specified in Clause VI hereof in addition to any omission or failure to perform a legal or contractual duty as obligated, stated or outlined herein. An Event of Default will cause Acceleration of the Loan.

Initials: _____  _____  _____
          Guarantor  Borrower  Lender

Astor Asset Management 3 Ltd

23) **"Fair Market Price" ("FMP")** shall mean the lower of, the average of the last sale price of the Pledged Collateral on three (3) consecutive Business Days prior to closing or recording of the pledge at the Transfer Agent or Depository Broker or the lowest trading price at Closing. The average price shall be the per-share price of the Pledged Collateral establishing its Fair Market Value ("**FMV**").

24) **"FMV"** shall mean the amount, expressed in Mexican Pesos (MXN), equating to the FMP for each share of the Pledged Collateral multiplied by the number of such shares pledged or transferred for lending purpose.

25) **"Guarantor"** shall mean the individual described herein and no other for purposes of this Agreement, who agreed to personally undertake and guarantee in all respects the full and faithful performance of Borrower and hereby agrees to Pledge herein described Collateral to Lender in a form of a Lien.

26) **"Hybrid Loan"** shall have the same meaning as a Loan with respect to purpose but shall mean that this Agreement is structured as an Investment and a Loan, resulting in a Hybrid Loan.

27) **"Interest"** shall mean the sum of money paid regularly at a particular rate for the use of money lent. It represents a charge imposed by Lender for all funds advanced to Borrower in a form of a Loan.

28) **"Investment"** shall mean that this Loan may be construed as a speculative Investment. Borrower and Guarantor being considered a sophisticated professional investors, and both being aware of all the risks associated with making a major Investment where the outcome is unpredictable.

29) **"Investment Risk"** means that margin borrowing entails risk which is commensurate with any type of a speculative investment where the results and the outcome are both unpredictable and whereby the consequences could be materially negative. Borrower and guarantor are fully informed of all risks, is a seasoned professional investor and is prepared to accept an unpredictable outcome having realized that this is a speculative undertaking.

30) **"Issuer"** shall mean the corporate entity that has issued and distributed the shares of: **Grupo Elektra SAB DE CV (ELEKTRA:MX)**.

31) **"Lender"** shall mean specifically the Lender described herein and not any other for purposes of this Agreement.

32) **"Lender's Discretion"** means Lender shall have the right to not proceed with the funding at any time up until the Closing Date.

33) **"Lender's Remedy"** shall mean Acceleration of the Loan and Principal and the termination of this Agreement, specifically termination of the Loan and forfeiture of the Pledged Collateral per Clause VI.4 as provided herein, which may result because of a default by Borrower, in any case, excess funds received by Lender from the sale of Collateral in Event of Default will be returned to Guarantor.

34) **"Lien"** shall mean any Encumbrance of any kind referenced herein concerning the Pledged Collateral of Guarantor. A lien is the Lender's right to retain possession of property belonging to Guarantor until a debt owed by that Borrower is fully discharged per this Agreement.

Initials: _____    _____    _____
          Guarantor   Borrower    Lender

**Astor Asset Management 3 Ltd**

35) **"Loan"** shall mean the total contractual gross amount computed together when proportionally Advanced or lent by Lender to Borrower on a nonrecourse basis for the specified duration and subject to the stated conditions. The Loan is funded based on FMP of the Pledged Collateral. For purposes of this agreement, all fees and costs due to Lender shall fall within this definition. For purposes of this Agreement, the Loan can be sent by bank wire transfer to Borrower or deposited by Lender into Borrower's own account held at the Depository Broker.

36) **"Loan Documents"** shall mean collectively, this Agreement, Custodian Management Agreement, the Closing Statement and any other agreements, documents, instruments, exhibits, or statements delivered in connection with the Loan. Each to be read and construed together in a manner to give meaning and effect to all their provisions.

37) **"Loan Principal Amount"** shall mean full or allotment of monies borrowed by Borrower or advanced by Lender under Clause II.1.a hereof, in accordance with Loan to Value and is due and owed to the Lender. The Loan Principal Amount represents the Approved Loan Amount.

38) **"Loan Term"** see meaning of Term of Loan. For purposes of this Agreement, the phrases may be used interchangeably throughout, but shall have the same meaning.

39) **"Loan-to-Value (LTV)"** shall mean the ratio describing the total amount of the loan in relation to the value of the secured collateral pledged or transferred.

40) **"Material Event"** shall mean any event or possible outcome which may undermine or alter value of Collateral or prejudice Lender's standing Lien.

41) **"Maturity"** shall have the same meaning as Maturity Date and used interchangeably.

42) **"Maturity Date"** shall have the meaning provided in Clause II.6.a herein.

43) **"Obligations"** shall mean any and all promises, commitments and requirements, monetary and otherwise, made by Borrower to Lender. Borrower is morally and legally bound and has a duty to perform as obligated itself herein.

44) **"Party"** shall mean Lender, Guarantor or Borrower, as the case may be, and their agents, representatives, successors, affiliates, and assigns.

45) **"Parties"** when capitalized, the word means both Borrower, Guarantor and Lender and no other. When not capitalized, shall refer to any other third party.

46) **"Pay-Off Amount"** shall mean the amount expressed in Mexican Pesos that Borrower will need to pay to satisfy the Terms of the Loan. Borrower shall request the Pay-Off Amount of Lender in writing ten (10) Business Days in advance of the actual Pay-Off Date. The Pay-Off Amount shall be sent by Borrower to Lender by wire transfer in Mexican Pesos to Lenders designated Depository Broker or Lenders commercial bank account at least three (3) Business Days prior to the Pay-Off Date. The Pay-Off Amount shall be in Mexican Pesos equal to the Loan Principal Amount as referred to in the Closing Statement.

47) **"Pay-Off Date"** shall mean the date determined by Lender on which Borrower will tender the Pay-Off Amount to Lender in exchange for Lender discharging the Lien over the Guarantors Pledged Collateral being held at the Depository Broker.

Initials: _____    _____    _____
          Guarantor   Borrower    Lender

Astor Asset Management 3 Ltd

48) **"Pledged Collateral"** shall mean the total actual shares pledged by Guarantor to Lender as consideration for the Loan to Borrower and any shares or proceeds resulting from any transaction, split-up, revision, reclassification, or other like change that may take place of the Pledged Collateral during the Term of the Loan. The contemplated pledged securities of Guarantor are not a gift or a purchase, instead being pledged to Lender for Loan purposes.

49) **"Principal"** shall have the same meaning as Approved Loan Amount and used interchangeably.

50) **"Proof of Funds"** shall mean written proof of cash or liquid securities held in the Borrower's name.

51) **"Security Interest"** shall mean a Lien or Encumbrance granted by Guarantor to Lender in real property such as securities as Collateral for a Loan to Borrower. The Security Interest granted to Lender prevents the Guarantor from disposing or transferring the property or securities until such time as the Loan is repaid by Borrower to Lender and all Obligations of Borrower to Lender are discharged.

52) **"Statement of Knowledge"** shall mean any statements, representations or warranties which are based upon the knowledge of the Borrower and Guarantor, constructive or otherwise, whether Borrower or Guarantor knew or should have known or was expected to know.

53) **"Term of the Loan"** shall mean the period beginning on the first day when the Approved Loan amount is fully funded to the Borrower and ending on Maturity Date, calculated in months or years.

54) **"Tranche"** shall mean that parts into which the payment of this financial arrangement are divided into.

55) **"Transfer Agent"** shall mean the organization selected by Issuer to maintain and record the ownership of shares by Issuer of securities.

56) **"Underwriting"** shall mean a discretionary and subjective credit qualification process using factors such as stock market dynamics, liquidity, earnings, public data by which Lender approves a Loan based on its risk management policy, Collateral in question and Borrower's ability to repay the Loan.

57) **"Valuation Event"** shall mean that the FMP of the Pledged Collateral has fallen to less than seventy percent (70%) of the FMP used to calculate the Loan Principal Amount as reflected by the average of the last sale price on three (3) consecutive Business Days on a national or international securities exchange. A Valuation Event may also be triggered by erratic market conditions or news reasonably expected to impact the securities of Issuer.

58) **"Voting Rights"** shall mean the right given to shareholder of Issuer to allow shareholder to vote on various matters of corporate policy or issues before the Issuer.

**IN CONSIDERATION THEREOF:** Each Party agrees that the fair value of consideration it is receiving, has been received, and will continue to receive under this Agreement equals to or exceeds the fair value of the consideration it is delivering to the other Party. In consideration of mutual promises provided or to be provided, and other good, valuable, sufficient, equitable consideration, and mutual covenants, the receipt of, adequacy and sufficiency of which is hereby acknowledged, exchanged, and satisfied by all and between all parties, and intending to be bound

Initials: _____  _____  _____
         Guarantor    Borrower      Lender

Astor Asset Management 3 Ltd

hereby the performance thereof, and such represents reasonably just, equitable, adequate and reasonable in value, the parties hereto covenant and agree to and stipulate. Consideration will include monetary and non-monetary exchanges, services, in-kind, of every nature and type and otherwise as well as other covenants which the Parties may choose to agree to exchange in the performance thereof. The parties hereto agree as follows:

## II.    SUBSTANTIVE TERMS OF THE LOAN

### 1. Principal Amount.

a) Subject to and upon the terms and conditions set forth herein, Borrower, Guarantor and Lender hereby further set forth their rights and obligations to one another and Guarantor hereby grants to Lender Lien rights over the Pledged Collateral and in exchange, the Lender agrees to advance to Borrower a Loan consisting of funds up to **THREE BILLION EIGHT MILLION FIVE HUNDRED EIGHTY THOUSAND (3,008,580,000.00)** Mexican Peso (MXN) (constituting the **"Approved Loan Amount"**) of the current FMV of the Pledged Collateral of: **Grupo Elektra SAB DE CV (ELEKTRA:MX)** subject to all the terms, covenants and conditions of this Agreement. The said sum represents the Loan Principal Amount and is advanced to Borrower not permanently, but temporarily for the duration of the subject Loan Term. Funding of Loan Principal Amount will be initiated within one (1) Business Day of the Closing Day (the "Closing Day") and shall be memorialized by Lender's issuance of an executed Closing Statement. The Loan Principal Amount to be secured by Cash Collateral to be deposited by Lender into Borrowers account at the Depository Broker within twenty-four (24) hours of delivery of Pledged Collateral.

b) The Borrower shall be entitled to the appreciation, if any, of the FMV of the Collateral if the Loan is repaid in full by Maturity.

c) The amount that Lender may make available under Loan shall be calculated by multiplying fifty-five percent (55%) of the value of Pledged Collateral by the FMV.

### 2. Interest Rate.

a) All outstanding amounts of the Loan shall bear an interest rate in an amount equal to one **and fifteen one hundredths of a percent (1.15%)** per year to be paid to Lender in quarterly installments, as directed by Lender, by the issuance of payment statement in advance of due date. Interest payment shall be collected in advance of Loan and shall accrue daily both before and after any default of the loan, demand, court judgment, or arbitral award, and shall be calculated based on the actual number of days elapsed and on the basis of a year of three hundred and sixty-five (365) days (three hundred and sixty-six (366) days in a leap year).

b) All interest and principal must be paid by way of bank certified check, wire transfer or other immediately available funds without undue delay or further demand to address or bank account indicated herein, or as further may be directed by Lender. In Event of Default, to the extent permitted by applicable law, the interest rate on Loan shall be computed at a rate equal to one and one-half percent (1.5%) per month and shall continue until satisfied and cured by Borrower or released by Lender.

c) The first interest payment shall be subtracted from Loan proceeds at the time of the funding. Further interest payments for the Loan shall be due timely on the first Business Day of each month following the Closing Date, and such payment schedule shall be based on twelve

Astor Asset Management 3 Ltd

months per calendar year, regardless of the actual number of days between the applicable Closing Date and the date such first interest payment is due.

d) Any funds received as payment from or on behalf of the Borrower shall be applied by Lender in accordance with the following: (i) first, if applicable, to all outstanding interest and fees; (ii) second, to fees and costs due to third-parties engaged by Lender to enforce covenants and provisions of this agreement; (iii) third, to any outstanding Principal balance; and (iv) fourth, any excess funds received by Lender from the sale of Collateral in Event of Default to be returned to Borrower.

### 3. Loan Fees and Costs.

a) **Origination Fee.** Borrower shall pay to Lender an agreed-upon Loan Origination Fee of one percent (1%) of Loan Principal Amount contemporaneous with the funding of the Loan by Lender, **("Lender's Origination Fee")** to be paid to Lender. The Lender is authorized to deduct the 50% of the subject Origination Fee from Loan Principal Amount, with the balance to be paid by the Borrower on the 1st Anniversary of the Loan. The fee is non-refundable and fully earned.

b) **Maintenance Fee.** Borrower shall pay Lender every three (3) months the maintenance fee of six and twenty-five hundredths basis points (0.0625%) of the Loan Principal Amount **("Lender's Maintenance Fee")**. The Lender is authorized to deduct the Maintenance Fee in advance from the Loan Principal Amount for the first period, it shall be memorialized in the Closing Statement and the same exact amount shall be paid by Borrower, automatically and without further demand, every four months thereafter for all the years constituting the Term of the Loan. Lender's Maintenance Fee is non-refundable and will be paid in advance.

c) **Liquidated Damages.** If Borrower or Guarantor shall fail to deliver in full, within forty-five (45) days, the required Pledged Collateral to the Depository Broker into the account of Borrower after both the duly signed Agreement and the Custodian Management Agreement to catalyze and bring about the Approved Loan Amount, then there shall be Liquidated Damages equal to two percent (2%) of the stated Approved Loan Amount. The Liquidated Damages are effective upon the execution of this Agreement by both Parties and shall be Lender's only claim against Borrower for damages as a result of Borrower's failure to deliver the Pledged Collateral to custodian Depository Broke into the account of Borrower. The two percent (2%) Liquidated Damages applies only to Borrower's or Guarantors failure to deliver the Pledged Collateral and does not apply to other Event(s) of Default, which is covered under Clause VI of this Agreement. This two percent (2%) Liquidated Damages if applied due to failure by Borrower to proceed or in failing to deliver Pledged Collateral to the Depository Broker in full, is therefore Lender's rightful claim.

d) **Expenses.** Borrower agrees to pay all of Lender's reasonable costs and fees, including legal fees and out of pocket expenses that might arise in the course of Lender enforcing, collecting, defending, executing, and maintaining this Agreement. For the services provided, the Depository Brokers engaged in the performance of this Agreement are entitled to an annual custodian management charge to be paid by Borrower based on the cumulative net asset value of all Dedicated Depository Account(s) at time of delivery of the Pledged Collateral and limited to fifteen hundredths of one (0.15%) percent. The annual custodian management charge is exclusive of any transaction fee, transfer fee, exit fee, or other administrative costs and fees which Depository Broker may possibly impose. Such fee shall be nonrefundable and shall be paid one (1) year in advance. First year's fee may be deducted from the Loan

Astor Asset Management 3 Ltd

proceeds or charged to Borrower's account directly by the Depository Broker. In subsequent years, the Borrower will remit to Lender the exact same fee every year at least fourteen (14) days prior to the Effective Date, to be remitted by Lender to Depository Broker.

4. **Additional Loan Amount.** In the event of an increase in the FMV of the Pledged Collateral, the Borrower has the right to request that Lender increase the Loan Principal Amount at the same LTV as provided herein, at which time an amendment to this Agreement regarding additional funds to be provided will be incorporated. Lender will have sole discretion in determining whether to fund any additional funds in addition to the Loan Principal Amount, up to the full FMV of the Pledged Collateral at the time of the written request by Borrower. Borrower may exercise this provision not more than once every three (3) months.

5. **Early Prepayment.** There shall be no early prepayment ("Prepayment") of the Loan Principal Amount or of any interest due under the Loan permitted during the first sixty (60) months of the Loan Term ("**Lock-Up Period**") unless any payments are to be received according to a Change in Collateral event or with written permission from Lender. The Borrower may prepay the Loan Principal Amount after a "Lock-Up Period" but shall be subject to a half of one percent (0.5%) administrative and closure fee. Until resolved, the "Lock-Up Period" shall be extended in the event of Lender's inability due to regulatory constraints placed on the securities, Borrower's willful lack of cooperation, circumstances outside of Lender's control or restrictions placed on securities.

6. **Term and Maturity Date of Loan.**

a) **Maturity Date:** The Loan Principal Amount together with all accrued interest and fees and shall be due and payable, five (5) years after the Loan Term begins and subsequently ends (the "Maturity Date"). The Borrower may extend the Maturity Date if the Lender agrees to do so in writing. A fee in the amount of one percent (1%) of the Loan Principal Amount (the "Extension Fee") shall be due and payable on the original Maturity Date if the Lender agrees to extend the Maturity Date at the annual interest rate at the time of an extension. If Lender does not receive the overdue Loan Principal Amount and other Obligations within ten (10) Business Days of the original Maturity Date, Lender will send a notice to Borrower and Guarantor advising Borrower that the Loan will terminate under the default provisions of this Agreement. The Loan Principal Amount is due in entirety at Maturity Date and is irrespective of any action taken by Lender over the Pledged Collateral.

b) **Loan Completion:** No later than thirty (30) calendar days before the Maturity Date, the Borrower shall communicate to Lender in writing whether Borrower intends to repay the Loan Principal Amount on the Maturity Date by requesting the Pay-Off Amount in writing and specifying the Pay-Off Date and Lender shall provide the Pay-Off Amount in written form within three (3) Business Days. No later than fourteen (14) calendar days before the Maturity Date, Borrower shall provide Proof of Funds to repay the Loan Principal Amount plus any other Obligations due to Lender on the Maturity Date.

7. **Loan Termination and Redelivery of Collateral.** This Agreement shall terminate when all of Borrower's Obligations have been paid in full, or in the Event of Default. Upon Event of Default, Lender will diligently and in good conscience dispose of Collateral in order to satisfy Obligations of Borrower and return to Guarantor any excess stock. Lender confirms and will maintain its full ability to release and discharge the Lien and return the Pledged Collateral, to Guarantor, free of any Encumbrance within three (3) Business Days of Borrower's satisfaction of its Obligations. Provided, however, that this Agreement shall be reinstated if any payment

Initials: _____   _____   _____
         Guarantor   Borrower    Lender

**Astor Asset Management 3 Ltd**

in respect of the Loan's Obligations is rescinded, invalidated, declared to be fraudulent or preferential or otherwise required to be restored or returned by Lender for any reason. A return of identical securities means a return of the Pledged Collateral as modified as a result of any split-up, revision, conversion, reclassification, degradation, or other like change of the Pledged Collateral. Any cash or shares tendered to buy down the Loan as a result of a Valuation Event are subject to redelivery and shall become part of the Pledged Collateral to be returned to Guarantor.

8. **Closing.** The Closing Date in most cases will be no later than one (1) Business Day after the Confirmation Day, provided the conditions to Lender's Obligations as outlined in Clause V herein are satisfied and the written receipt by Lender of a Confirmation that the Pledged Collateral has been deposited and verified with the Depository Broker in a form and manner satisfactory to Lender and its counsel. The balance payment ("Balance Payment") shall be paid within one (1) Business Days of Closing Date. The Balance Payment shall be paid to the Borrower's account at the Depository Broker or to an account of Borrower at a commercial bank account per the following instructions outlined in Schedule A annexed to the back of this Agreement.

### III.   LOAN AND COLLATERAL FEATURES AND ATTRIBUTES

1. **Non-Recourse Loan.** Lender agrees that it will at all times look only to the Pledged Collateral of Guarantor identified in this Agreement for payment of Borrower's Obligations and will not make any claim or institute any action or proceeding against Borrower or Guarantor or any representatives, agents, successors, assigns, or affiliates of Borrower or Guarantor for any deficiency remaining after applying the Pledged Collateral to any sums due Lender. This is a Non-Recourse loan except for the provisions provided under Clause II.3.c of this Agreement.

2. **Due Diligence.** Lender has the right but not the obligation to perform enhanced due diligence on the Pledged Collateral and the Borrower and Guarantor shall fully cooperate.

3. **Material Information.** Borrower and Guarantor have tendered any and all relevant and material information regarding the Pledged Collateral and of the Issuer and all such relevant and material information has been disclosed and provided by Borrower and Guarantor to Lender. During the Loan Term, Borrower and Guarantor will continue to voluntarily provide all such relevant and material information to Lender and not withhold information deemed to be Material.

4. **Depository Broker.** Lender shall have the exclusive right to appoint a Depository Broker which will provide custody for the Pledged Collateral through a known global bank.

### IV.   BORROWER'S WARRANTIES AND OBLIGATIONS

Borrower represents and warrants to Lender that:

1. **Accredited Investor.** Borrower is a "professional accredited investor" as may be defined by ordinance of Borrower domicile, the jurisdiction of securities Issuer or jurisdiction of Governing Law of this Agreement.

2. **Announcement.** Neither Lender nor Depository Broker assume any responsibility or liability for filing on behalf of Borrower or Guarantor regulatory announcement(s) that are or may be

Initials: _____  _____  _____
          Guarantor  Borrower  Lender

**Astor Asset Management 3 Ltd**

required by the laws, rules, and regulations of any securities regulatory authorities or agencies that may have jurisdiction over any transactions with respect to the securities, including without limitation, loan transactions in which the securities are pledged as collateral. Borrower and Guarantor acknowledges and agrees that as a condition for the closing of the loan transaction described in this Agreement, Borrower and Guarantor shall comply with such laws, rules, and regulations, and assumes all such responsibilities and liabilities, including liability for all legal, administrative, and any and all other costs and expenses associated with making and filing all regulatory announcement(s). In the event Borrower or Guarantor fail, refuse or does not timely fulfill its regulatory announcement Obligations described in this Section, then in addition to any and all other remedies available to Lender and/or Depository Broker on account of Borrower's or Guarantor's non-compliance, Lender or Depository Broker may, in their sole and absolute discretion, prepare, file and publish any and all regulatory announcements that either of them may deem to be necessary and/or appropriate in such jurisdictions that Lender or Depository Broker determine to be necessary or appropriate, including without limitation in Borrower's or Guarantor's country of residence or domicile. In such event, and notwithstanding any confidentiality or other provisions in this Agreement or any other documents or agreement among the parties, Borrower or Guarantor may publish and/or file regulatory announcements that include, without limitation: a disclosure of Guarantor's Pledge and the number of shares that Guarantor Pledged to secure the loan; the current disposition of the securities; any party's purchases, sales, conversions, holdings, and exits from such holdings; changes of beneficial or legal ownership of the securities; changes involving successors-in-interest to the securities; repayment of loan principal in whole or in part and termination of the loan; and proxy and other filings involving voting or other control and management of the securities of Issuer, per the laws, rules, and regulations of the governing securities authority or agency.

3. **Depository Broker.** Both Borrower and Guarantor hereby affirm to fully abide by the Terms and Conditions of the Depository Broker and if there is any inconsistency between this Agreement and the Terms and Conditions of the Depository Broker, then the Terms and Conditions of the Depository Broker will prevail over this Agreement.

4. **Full Disclosure.** Borrower and Guarantor further represents and warrants that all statements and documentation it has provided to Lender directly or through its agents in connection with this Agreement are true, complete, and do not omit any material facts or information, which if provided, would have impacted Underwriting prudence. Borrower and Guarantor consent to provide to Lender any and all relevant material information which is necessary for any Lender to conduct a prudent risk assessment evaluation of Issuer, Guarantor and Borrower.

5. **Knowledge.** None of the rights of Guarantor arising as the legal and beneficial owner of the Pledged Collateral have been surrendered, cancelled or terminated. Guarantor has no knowledge of any material non-public information, inside information or similar terms as defined by applicable law with respect to governing the Issuer, which has not been generally disclosed to Lender or the public.

6. **Intentionally left in blank.**

7. **Liens; Reliance; and Cooperation.** As of the date of this Agreement, the securities constituting the Pledged Collateral are owned by Guarantor free and clear of any Liens, Encumbrance or contractual, statutory, or regulatory limitation or restriction of whatever nature; are in good standing in accordance with their country of issue; and are freely tradable and transferable securities and Guarantor hereby grants absolute first position Security

Initials: _____  _____  _____
          Guarantor    Borrower     Lender

Astor Asset Management 3 Ltd

Interest as a Lien and Encumbrance rights to Lender in exchange for Borrower receiving a Loan. Both Borrower and Guarantor further represent and warrant that they have not relied on, and that Lender has not made, any representation, advice, or recommendation with respect to securities, either directly or through publication.

Neither Borrower nor Guarantor have relied on any marketing materials or any other written or oral statements of fact or otherwise made by anyone prior to entering into this agreement, and any such materials and/or statements or representations, if any, written or oral, shall be purged from existence as if never having existed. All previous agreements, representations, statements both written or oral, express or implied with respect to subject matter hereof, are superseded by this Agreement and hereby merged into this Agreement. It is encumbered upon Guarantor to initiate and facilitate the transfer of the Pledged Collateral. Borrower and Guarantor will cooperate in executing documents provided by Lender, Lender's Depository Broker, and clearinghouse/registry as requested by Lender, Depository Broker, applicable laws and regulations. Borrower and Guarantor further represents that they shall in good faith cooperate to facilitate this Loan transaction in a timely manner.

Borrower and Guarantor represent, warrant, and covenant that they understand that securities borrowing is highly speculative and requires sophistication and that Guarantor may lose and forfeit the Pledged Collateral when Pledging Collateral in margin borrow. Guarantor should only attempt margin borrowing if Guarantor completely understands its potential losses; is a seasoned speculative securities investor; is an accredited professional investor; and has solid risk management strategies in place in the event of margin-call or any other warranty, representation or action of Lender or market performance of Collateral.

8. **Necessary Filings.** Borrower and Guarantor warrant and concede that any regulatory announcement associated with this Agreement is the sole responsibility of the Borrower and Guarantor, and that both Borrower and Guarantor will comply with all requirements placed by local securities regulatory authorities and any costs associated with such announcements are the sole responsibility of the Borrower and Guarantor. Lender is not responsible for filing any necessary reports for or on behalf of the Borrower or Guarantor, but at its option may elect to do so in order to comply with regulations imposed.

9. **Notification to Lender.** Upon occurrence of any of the foregone events or whenever they shall occur, the Borrower or Guarantor shall promptly inform Lender in writing if a) Borrower or Guarantor has filed for bankruptcy or filed any petition seeking creditor protection, b) any creditor of Borrower or Guarantor has taken legal action against Borrower or Guarantor to recover debts owed to it; c) any creditor has sought or is threatening to seek confiscation or garnishment of property of Borrower or Guarantor. Absent of the preceding events, Borrower and Guarantor will once per year, on each anniversary of the Effective Date, submit a written attestation to Lender representing that to the best of Borrower's knowledge, none of the preceding events had taken place.

10. **Waiver.** Borrower and Guarantor will not take any suit or action against third parties or affiliates who may be acting on behalf of or for the Lender within the scope of this Agreement. Any dispute or controversy with third parties arising from this Agreement will solely be limited to this Agreement which must be resolved in accordance with the dispute resolution provision of Clause VII herein. It is hereby agreed that third parties such as the Depository Broker, Transfer Agent, referral sources or other affiliates, agents, or assignees of Lender facilitating the scope of this Agreement are hereby indemnified, released, forever discharged and absolved from any claim, controversy or action whatsoever. Should there be an incurable

Astor Asset Management 3 Ltd

Event of Default, unjust enrichment, extreme remedy and right of redemption are hereby waived by the Borrower and Guarantor, and neither the Borrower nor Guarantor will assert any right or claim against the forfeited collateral transferred to Lender as a result of an incurable Event of Default. During the pendency of this Loan, neither the Borrower nor Guarantor will seek injunctive relief or interference from any court of law, regulatory body, Transfer Agent, custodian, sub-custodian, Depository Broker, central depository or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement or freeze the shares. Injunctive relief by Borrower or Guarantor or any interference by Borrower or Guarantor, central depository or regulatory agency shall be an immediate and an incurable Event of Default. Neither Borrower nor Guarantor will interfere in any way or challenge the validity or enforceability of this Agreement, and the same shall be a Breach thereof.

11. **Suitability.** Both Borrower and Guarantor have carefully considered, and have discussed with their own respective professional legal, tax and financial advisers the suitability of this Agreement and Investment Risk associated with it and have fully considered for purposes of this Loan the risks of this Investment, and understand that (i) this Loan is an Investment and is suitable only for an investor who is able to bear the economic consequences of losing its entire Investment, (ii) the margin loan backed by the Securities is a speculative Investment which involves a high degree of risk, (iii) that there is lack of predictability in final loan amount, (iv) potential forfeiture of the Collateral, (v) that there are various unforeseen financial implications, independent and dependent on actions of Borrower or Guarantor, including the fluctuating and final value of the Collateral, (vi) Guarantors inability to receive back the Collateral and its adverse value.

## V.    LENDER WARRANTIES AND REPRESENTATIONS

Lender represents and warrants to Borrower that:

1. **Best Efforts Approach.** Despite stock market volatility, erratic trading volume, and pricing fluctuations, best efforts will be employed by Lender to facilitate the funding of the Loan in its entirety for the full Approved Loan Amount, in accordance with this Agreement and as contemplated herein by both Parties. Lender will not act in bad faith at any time during the Term of the Loan.

2. **Cash Collateral.** The lender will deposit Cash Collateral into Borrowers designated account at the Depository Broker which shall coincide with Loan Principal Amount to be funded and released to Borrower at Closing upon execution of the Closing Statement.

3. **Dividend Distributions.** Lender will credit the Guarantor for any, and all dividends received or credited to the Lender. If dividends are not received or credited to the Guarantor's account at the Depository Broker, then Guarantor is not entitled to any to be credited. Lender shall credit Borrower for all dividends received on behalf of Guarantor if any, at Maturity of the loan to be subtracted from outstanding principal balance. No dividends will be credited to Borrower or Guarantor if the Issuer does not pay them to the Depository Broker for any reason whatsoever. Dividends may not be used to offset any sums due to Lender prior to Loan Maturity unless requested so in advance by Borrower and approved by Lender in writing.

4. **Dealing with Securities.**

Initials: _____  _____  _____
          Guarantor  Borrower  Lender

**Astor Asset Management 3 Ltd**

a) The Borrower and Guarantor acknowledge and agree that upon the transfer of the Pledged Collateral to the Depository Broker by the Guarantor, the subject Pledged Collateral will: (i) have been given value by the Lender for the use of the Pledged Collateral, for purpose of determining Fair Market Value ("FMV"), in establishing that the Lender has Lien and Encumbrance rights in the Pledged Collateral; (ii) including the power to transfer rights in such Pledged Collateral as may be contemplated by Lender, in accordance with the herein Agreement.

b) During the Loan Term, provided that there has not been an Event of Default, the Lender will not sell or short-sell the shares of the Pledged Collateral on any publicly traded securities exchange. However, upon the occurrence of an incurable Event of Default, the Lender reserves the right to dispose of the Collateral on any publicly traded securities exchange, but is not obligated in doing so.

c) The Borrower acknowledges and agrees that the Pledged Collateral will be utilized by Lender to assert its preferential Lien over it.

d) The Lender will not engage in short-selling the Pledge Collateral by borrowing the shares of same Issuer from any entity or person and later buying the shares in the same security, then returning the borrowed shares in an effort to make a profit.

e) The Lender will not engage in Front Running, by buying or selling ahead of arrival of the Pledged Collateral.

5. **Order of Payment.** Payments received from sale of Collateral upon Event of Default shall be applied in the following order: (i) firstly, to all outstanding Principal balance, interest and fees; (ii) second, to any costs and fees charged by Custodian to Lender; and (iii) lastly, to any excess proceeds of sale of Collateral to be returned to Guarantor. Notwithstanding the forgoing, in case of an incurable Event of Default, nothing contained herein shall obligate the Lender to maximize sales proceeds, sell at market, on any specific platform or exchange, or at any specific price, provide accountability on the forfeited Collateral or to qualify the return to Borrower or Guarantor remaining balance of any proceeds.

6. **Transfer of Securities.** The Lender will not transfer the securities to its own account unless an incurable Event of Default has taken place. Only upon an incurable Event of Default will Lender request the Depository Broker to transfer the securities in the Guarantor's account to Lender's sole control and custody in order to satisfy Obligations of Borrower and Guarantor.

7. **Funding Guarantee and Borrowers Remedy.** The Lender guarantees to begin funding the stated Loan and the Approved Loan Amount within one (1) Business Days from the Closing Date. If the Lender or the Depository Broker fails to release the stated funding partially or in full within the one (1) Business Days of Closing Date, then Borrower shall have the right to terminate this Agreement, provided that the shares were in fact delivered in full to effectuate the Approved Loan Amount, all of the conditions stipulated herein have been met, shares are not restricted, are free-trading and neither Borrower nor Guarantor interfered with the Depository Broker or central depository, trading of the Issuer shares were not halted and force majeure conditions did not interfere or prevent Lender from funding.

Should Lender fail to return to Guarantor the Pledged Collateral within five (5) Business Days of receipt of Pay-Off Amount, the Lender shall be liable to Guarantor for two (2) times the amount of the Pledged Collateral on deposit at the Depository Broker.

Initials: _____  _____  _____
          Guarantor  Borrower  Lender

Astor Asset Management 3 Ltd

8. **Voting Rights.** Lender represents that it will fully cooperate with the registered owner of the securities of Issuer in exercising its Voting Rights on issues brought by the Issuer before its shareholders and the Lender will either instruct the Depository Broker to vote on behalf of registered owner of the securities of Issuer, or the Lender will vote on registered owner's behalf in accordance with instructions issued by the registered owner. Should the registered owner request that Lender vote on behalf of the registered owner, the registered owner may assign in writing the Voting Rights to Lender and Lender will agree to accept such Voting Rights from the registered owner. However, in no event will the Lender be liable in any way to Borrower or Guarantor or any registered owner as a result of any voting action or inaction.

## VI.    CONDITIONS TO FUNDING; EVENTS OF DEFAULT; AND REMEDIES

1. **Conditions Precedent.** The obligation of the Lender to fund the Loan is subject to the fulfillment of the following conditions precedent to the satisfaction of Lender: (a) The delivery of duly executed Stock Loan Agreement, Closing Statement, Custodian Management Agreement (CMA); (b) that all matters, facts, representations, documentation, announcements, filings, due diligence, regulatory compliance, and instruments in connection with Pledged Collateral, Issuer, and the Loan have been met and are in form and substance satisfactory to Lender's compliance, underwriting team, Global Custodian and Intermediary Custodian, as well its counsel; (c) the delivery of the stock in electronic form to Lender's Depository Broker representing the Pledged Collateral; and (d) Guarantors transfer of Security Interest in the Collateral as a Pledge.

2. **Valid Transactions and Events of Default.** In order for the transaction to be completed to Maturity by the Borrower, the Borrower and Guarantor must fulfill in the performance of and observance of any covenant, representation, provision or agreement contained herein and not default in any other loan document or provision.

3. Borrower is obliged to remedy the following matters, if occurred, in order to avoid being in breach of this or any other loan Agreement:

a) Failure by Borrower or Guarantor to pay the interest and all applicable fees or charges when due as stipulated, or the Approved Loan Amount when due, or any other default in the performance of an obligation that is not cured within the applicable Cure Period;

b) If the Collateral has fallen to less than seventy percent (70%) of the Fair Market Price ("FMP") utilized to compute the Loan Amount published by the average of the closing price on three (3) Business Days by the securities exchange (the "Margin-Call"). If this occurs, then the Borrower will, within five (5) Business Days and without further demand, automatically transfer to the Depository Broker a top-up of shares or cash equal to twenty percent (20%) more than the FMV and cure the deficiency. Hereinafter a new FMP is established at seventy-five percent (75%) of the original FMP. There will not be opportunity to cure if the Pledged Collateral falls by more than fifty percent (50%) of FMP as the Lender will sell the securities to satisfy the Loan Obligations and terminate this Agreement with no further recourse to Borrower;

c) If the class of securities provided as Pledged Collateral is delisted or trading is halted for five (5) or more Business Days by a regulatory agency or otherwise;

d) If any representation or warranty made by Borrower or Guarantor in this Agreement or in any statement furnished in contemplation of obtaining a Loan shall prove to have been knowingly untrue, omitted or misleading in any material respect;

Astor Asset Management 3 Ltd

e) If any of the Loan Documents shall at any time after their execution and delivery for any reason, cease to be in full force and effect or shall be declared invalid, null or void or the validity, obligations hereunder or enforceability thereof shall be contested, repudiated, disaffirmed or challenged by Borrower or Guarantor, it's agents or counsel or by any other person or entity acting on behalf of or for the Borrower or Guarantor;

f) A governmental agency which controls the actions of Issuer has commenced an investigation of the Issuer;

g) A Material Event upon the financial condition of Borrower, Guarantor or Issuer;

h) The Issuer is seeking or applied for an extension in which to file the required regulatory reports;

i) An incurable Event of Default occurring in any other Loan between Lender and Borrower.

4. **Lender's Remedy.** If the Obligations aforementioned are not met, the Lender's remedy shall include and not be limited to any course of action against Borrower and Guarantor for Breach of this Agreement, including the occurrence of any of the foregoing Event(s) of Default. If not cured within the designated Cure Period, and if applicable, shall terminate the Stock Loan Agreement, result in Acceleration of all Loan amounts, interest, costs, expenses, and fees due thereunder, and cause forfeiture of the Guarantor's Pledged Collateral; any and all excess proceeds of the sale of Collateral in Event(s) of Default will be returned to Guarantor

Notwithstanding the above, in case of an incurable Event of Default, nothing contained herein shall obligate or create any duty upon the Lender in any way to apply the proceeds of any sale of the Pledged Collateral to the Loan Principal or against any other Obligation of Borrower or Guarantor or to return remaining balance of proceeds realized as a result of any sale of Pledged Collateral, to maximize sales proceeds, sell the Pledged Collateral in the market, or at any specific price, or in any specific order, or on any specific day or to provide accounting or accountability with respect to the disposition of the Pledged Collateral as a result of an incurable Event of Default. There is no duty owed or implied to Borrower or Guarantor by Lender to maximize the sale of Pledged Collateral upon incurable Event of Default.

5. **Market Conditions.** If the Pledged Collateral experiences a Material Event or Valuation Event, Borrower's or Guarantor's lack of cooperation, restriction or material change in price prior to or post-funding, the Lender will have the right to cease the funding of the Loan or amend the Underwriting criterion, until such circumstances are dissipated and cured, or adjust funding based on new Underwriting criterion.

### VII.    GOVERNING LAW. JURISDICTION.

a) This Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of England and Wales.

b) Each party hereto irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against any other party hereto in any way relating to this Agreement or the transactions contemplated hereby, in any forum other than the courts of England and Wales, and any appellate court from any thereof, Each of the parties hereto irrevocably and

Initials:

Guarantor    Borrower    Lender

 Astor Asset Management 3 Ltd

unconditionally submits to the exclusive jurisdiction of such courts and agrees that any such action, litigation or proceeding may be brought in any England and Wales court to the fullest extent permitted by applicable law. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding, subject to any permitted appeal, shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

c) Each party hereto irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court referred to in Section, Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

d) Irrespective of any outcome of any such legal proceeding, the Lender will be awarded all of its reasonable legal fees and costs in enforcing, collecting, defending, executing, and maintaining this Agreement.

## VIII.    INDEMNIFICATION AND LIMITED LIABILITY RELEASE

1. Lender will not be liable for any indirect, incidental, special, punitive, opportunity loss, or consequential damages, forgone or speculative profit, including loss of revenue or profits or losses arising from Lender's performance under this Agreement. However, the Borrower and Guarantor will be liable for Lender's recovery, speculative profit and opportunity loss when Borrower or Guarantor willfully obstructs or delay's Lender's recovery and enforcement efforts. Borrower and Guarantor agree to indemnify the Lender, each legal entity, if any, who controls, is controlled by or is under common control with the Lender, and each of their respective directors, assignees, officers and employees (the "Indemnified Parties"), and to hold each Indemnified Party of Lender harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Borrower or Guarantor), in connection with or arising out of or relating to the matters referred to in this Agreement whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Lender, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority. The indemnity agreement contained in this Section shall survive the termination of this Agreement, payment of any amounts hereunder and the assignment of any rights hereunder.

2. Neither Borrower nor Guarantor will not hold Lender, its agents, directors, shareholders, assignees, Depository Broker or other known and unknown persons responsible for any fluctuations or depreciation in the value of the Pledged Collateral that Guarantor may experience during the pendency of Loan. Borrower and Guarantor agree to indemnify Lender for and to hold Lender harmless from, any loss or expense that such Borrower or Guarantor may sustain or incur as a consequence of default by Borrower or Guarantor in making a borrowing. This covenant shall survive the termination of this Agreement.

Initials: _____    _____    _____
          Guarantor    Borrower    Lender

Astor Asset Management 3 Ltd

### IX.    GENERAL PROVISIONS

1. **Amendments.** Amendments to this Agreement (including the adding or updating of any annexes, appendices, or schedules) will not be enforced unless such amendment is in writing and signed by authorized signatories on behalf of both Parties and added as an Addendum, with the exception of either Party informing the other of change of banks and only notice of such change is sufficient. Electronic email exchanges will not modify this Agreement. No amendment, modification or waiver in respect to this Agreement will be effective unless in writing (including writing evidenced by a facsimile transmission) and executed by each of the Parties.

2. **Assignment.** This Agreement, its equities, and Obligations shall be freely transferrable, pledge-able or assignable in whole or in part as the Parties may see fit or as may be in their best interest. Any transfer or assignment action by either Party shall be followed up by written notice to the other Party.

3. **Balance of Equities.** In the event that this Agreement is reviewed, interpreted or evaluated by any judiciary body or arbitration tribunal in assessing the balance of equities based on this Agreement and law, notwithstanding any of the other terms within this Agreement, the outcome of any decision shall be interpreted to weight in favor of and benefit the Lender at all times irrespective of unjust enrichment and extreme remedy.

4. **Clog on Redemption.** This Agreement is not a mortgage and will not be construed as a mortgage by the Parties or any tribunal or court of law. This is a Hybrid Loan requiring an Investment through Pledge of Collateral by Guarantor. In case there is an Event of Default, neither Borrower nor Guarantor shall have equity of redemption or right to redeem the Pledged Collateral and no incurable Event of Default shall be construed as a clog on equity of redemption and Lenders right to forfeiture of the Pledged Collateral will trump and supersede any right of redemption. No provision of this Agreement or any action of Lender upon an incurable Event of Default will be construed as a clog on equity of redemption and Lenders right to forfeiture of Pledged Collateral is absolute and final. Guarantor shall be able to redeem its Pledged Collateral after the Lock-Up period, provided that all Obligations of Borrower are satisfied, and the Loan has not experienced an incurable Event of Default.

5. **Confidentiality.** This Agreement is to be kept confidential and is not to be reproduced in any manner whatsoever for persons other than the Parties hereto. Specifically, each Party agrees to maintain the confidentiality of the business, trade, finances, and methods ("Confidential Information") of the other Party and not disclose the Confidential Information to any person other than those whose knowledge is essential for the performance of this Loan. Lender will not reveal the existence of this Agreement to the media or any regulatory body or government agency unless ordered to do so by a court of law. Lender may reveal the contents of this Agreement to defend Lender's dignity and reputation and dispel incorrect public information about the subject transaction. A default under this Agreement by the Borrower or Guarantor will deem this clause invalidated. The Parties acknowledge that the existence and the terms of this Agreement and any oral or written information exchanged between the Parties in connection with the preparation and performance of this Agreement are regarded as confidential information. Each Party shall maintain confidentiality of all such confidential information, and without obtaining the written consent of the other Party, it shall not disclose any relevant confidential information to any third parties, except for the information that: (a) is or will be in the public domain (other than through the receiving Party's unauthorized disclosure); (b) is under the obligation to be disclosed pursuant to the applicable laws or

Initials: _____    _____    _____
              Guarantor    Borrower    Lender

**Astor Asset Management 3 Ltd**

regulations, rules of any stock exchange, or orders of the court or other government authorities; or (c) is required to be disclosed by any Party to its shareholders, investors, legal counsels or financial advisors regarding the transaction contemplated hereunder, provided that such shareholders, investors, legal counsels or financial advisors shall be bound by the confidentiality Obligations similar to those set forth in this Section. Disclosure of any confidential information by the staff members or agencies hired by any Party shall be deemed disclosure of such confidential information by such Party, which Party shall be held liable for breach of this Agreement. This Section shall survive the termination of this Agreement for any reason.

6. **Consideration.** This Agreement and the transaction herein constitute adequate, just and sufficient consideration. There shall be no argument or defense raised at any time that Consideration is in any way insufficient or was not made. For purposes of this provision, Consideration will include Lender coordinating, arranging, advising as well as agreeing to extend financing as stipulated in this Agreement, sufficiency of which is accepted and acknowledged.

7. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement regardless of number in existence or distribution.

8. **Cross-Default.** A default in any other loan will cause an incurable Event of Default in this Loan and a default in this Agreement will cause an incurable Event of Default in other Loan agreements with Lender.

9. **Depository Broker.** The Depository Broker reserves the right to custody and sub-custody the Pledged Collateral to any licensed financial institution in accordance with its Terms & Conditions.

10. **Enforcement of Clauses.** If any arbitrator, court or other party determines that any term, phrase, clause, or provision in this Agreement is in conflict with or contradicts any of its other terms, phrases, clauses, or provisions, then this Agreement shall be allowed to be amended by Lender by modifying or striking the contradictory term, word, phrase, clause, covenant or provision such that the Agreement and remaining provision and covenant is deemed to be fully enforceable and in all cases as to Lender's exclusive and sole benefit, to the full purpose and intent hereof as intended by Lender.

11. **Entire Agreement and Merger Clause.** This Agreement contains the entire Agreement between the Parties hereto and is legally binding upon them as of the date of the execution hereof. There were not and will be any oral, written or electronic modifications other than written Addendums duly executed by both Parties, which will supersede this Agreement. Oral or written or electronic notations or modifications other than written Addendums executed by both Parties are not enforceable, and all previous known and unknown statements and promises, written or oral are hereby merged in to this Agreement. This Agreement shall be final, controlling, and fully merged with respect to any previous discussions, promises, understandings, representations or warranties made by Lender.

12. **Errors and Omissions.** Borrower and Guarantor expressly agree and acknowledges that they had reasonable opportunity to obtain the assistance of its own counsel to fully review and participate in the negotiation and revision of any of the terms, provisions, covenants, representations, warranties and conditions of this Agreement prior to its execution; and the decision of whether or not to seek advice of counsel with respect to this Agreement is the

Initials: _____  _____  _____
          Guarantor  Borrower  Lender

# Astor Asset Management 3 Ltd

responsibility of Borrower and Guarantor. Therefore, under no circumstances shall Lender be liable to Borrower or to Guarantor for any errors or omissions in this Agreement that may be disadvantageous to Borrower or Guarantor, or which may result in claims of actual or alleged or perceived harm to Borrower or Guarantor. Borrower and Guarantor further agree and acknowledges that any errors or omissions in the Agreement shall be strictly construed to favor the Lender. Once this Agreement is fully executed by both parties, Borrower and Guarantor fully and completely waive all rights to correct any such errors or omissions, or to seek redress against Lender for any such errors or omissions, whether by arbitration, lawsuit or any other equitable remedy. In addition, if Borrower, Guarantor or anyone on its behalf, makes a demand or claim for liability against Lender that arises out of, results from, or relates in any way to any such error or omission in this Agreement, Borrower and Guarantor shall indemnify, defend and hold harmless Lender from any such liability which may be incurred as the result of such demand or claim, including court costs and attorney's fees.

13. **Fiduciary Duty.** This Agreement is not intended to create or impose or give the appearance to the Parties that there is a fiduciary or trustee duty or other similar common law rights that are not expressly stated herein. Notwithstanding anything to the contrary contained in this Agreement, perception drawn or otherwise applicable provision of law or equity, neither Party shall be liable to the other for any act or omission that constitutes a bad faith violation of implied covenant of good faith and fair dealing and the same is expressly excluded. Any fiduciary or trustee duty whatsoever to the other is hereby irrevocably disclaimed and not provided. No duty of any type is owed to Borrower or to Guarantor other than which is explicitly stated.

14. **Force Majeure.** Lender will not be liable to the Borrower or to Guarantor for failure to perform any of its Obligations under this Agreement to the extent such performance is hindered, delayed or prevented by Force Majeure (except for failure to make payments hereunder). If Lender is unable, in whole or in part, to carry out its Obligations under this Agreement due to Force Majeure, it must provide notice to the Borrower and Guarantor. Initial notice may be given orally; however, written notification with reasonably full particulars of the event or occurrence is required as soon as reasonably possible. If Lender will claim Force Majeure, it will promptly give written notice to the Borrower and Guarantor of the termination of such Force Majeure and will resume performance of any suspended obligation as soon as reasonably possible after termination of such Force Majeure. For purposes of this Agreement, "Force Majeure" will mean causes, conditions, events or circumstances which are beyond the reasonable control of the Lender claiming Force Majeure. Notwithstanding any provision of this Agreement, Lender shall not be liable for its inability in performing any of its Obligations hereunder if such inability is caused by or arises as a result of circumstances beyond its reasonable control ("Force Majeure Event"). For the purposes of this Clause, a Force Majeure Event shall include, without limitation, inability or delay in performance caused through acts of God, fire, flood, riot, epidemics or population quarantine, degradation in stock value, stock market crash, illiquidity of the stock, Borrower's or Guarantor's lack of cooperation and other adverse financial market conditions, lightning, explosion, civil commotion, war, malicious damage, storm, tempest, electronic malfunctions, acts or omissions of telecommunications carriers, acts of government or other regulatory authority, acts or omissions of persons or bodies for which Lender affected thereby is not responsible, and any other circumstances beyond the reasonable control of the Lender which may possibly undermine the Pledged Collateral or securities of Issuer. Force Majeure applies only to Lender and does not apply to Borrower, nor shall excuse Borrower from complying with terms of this Agreement.

15. **Intentionally left in blank.**

Initials: _____    _____    _____
          Guarantor   Borrower    Lender

Astor Asset Management 3 Ltd

16. **Headings.** The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

17. **Joint and Several Liability of Borrower.** Borrower and Guarantor shall be jointly and severally liable hereunder and under each of the Loan Documents to which it is a party with respect to all Obligations. Notwithstanding the foregoing, the Borrower's obligations and liabilities with respect to the Loan proceeds which it receives, and related fees, costs and expenses, and it's obligations and liabilities arising as a result of the joint and several liability of the Borrower and Guarantor hereunder with respect to proceeds received by Borrower, together with the related fees, costs and expenses, shall be separate and distinct obligations, both of which are primary obligations of the Borrower, and the Guarantor hereby irrevocably and unconditionally guarantees the payment of all Obligations and performance of the Borrower. Neither the joint and several liability of the Borrower and the Guarantor shall be impaired or released which would or might, in the absence of this provision, operate to release, discharge or otherwise prejudicially affect the obligations of the Borrower. Without limiting the generality of the foregoing in any manner, all representations and warranties of Borrower and Guarantor contained herein are made jointly and severally. For purposes of this Agreement and any other Loan Documents, representations, warranties and covenants contained in this Agreement shall be imputed to the Borrower and the Guarantor and any consent by one Borrower shall constitute the consent of and shall bind the Borrower and Guarantor.

18. **Lender's Obligations.** All of Lender's obligations, representations and warranties in the performance of this Agreement are contingent upon Borrower and Guarantor performing in accordance with this Agreement and as the Lender may at its sole discretion from time to time decide.

19. **Margin Call.** The Borrower and Guarantor must post margin by toping-up additional cash or shares in the event of a Margin Call as stipulated in Section VI(3)(b). This provision may be triggered and called-upon by the Lender irrespective of amount funded to Borrower and the amount funded shall at no time be contingent on Margin Call validity or enforceability. A Margin Call is a standard provision in securities lending whereby the price of the securities has degraded to a point where the status of Pledged Collateral is deemed to be insufficient, and a credit risk from Lender's risk management perspective. Satisfaction of Margin Call by Borrower and Guarantor is required in order for funding to continue and avoid an Event of Default. The Margin Call is set in accordance with the herein sections and at no time shall be waived or forgiven.

20. **Non-Disparagement.** The Borrower and Guarantor agrees not to intentionally make, threaten to make or intentionally cause any other person to make, any public statement that is intended to criticize or disparage the Lender, any of its affiliates, agents or any of their respective officers, managers or directors. This clause shall not be construed to prohibit any person from making truthful statements when required by law, subpoena, court order, or the like. This clause shall remain in full force and survive the execution, delivery, cancellation, and termination of this Agreement regardless of the consummation of events and transactions contemplated hereof and all events to follow.

21. **Non-Illusory.** Notwithstanding the Terms and Conditions set forth herein, Lender and Borrower acknowledge, accept and agree that Collateral is fluid, variable, may vary and fluctuate in value and that Lenders faithful performance is conditional upon the full and faithful performance of Borrower, stability of the Collateral, absence of any Market Conditions,

Guarantor          Borrower          Lender

Astor Asset Management 3 Ltd

Material Event or an Event of Default and that sufficient and equitable consideration has been exchanged between the Parties, such that this Agreement is not illusory and should not be considered or declared as such. The Borrower acknowledges, accepts and agrees that the Terms and Conditions of this Agreement are reasonable and constitute an enforceable Agreement, the consideration provided by Lender are not illusory but are in fact material and considerable and the restrictions within this Agreement are necessary and reasonable for the protection of the legitimate business interests and goodwill of Lender.

22. **Not Construed Against Drafter.** The rule of construction that a contract be construed against the drafter shall not be applied in interpreting or affecting this Agreement and no ambiguity or conclusion drawn whatsoever in this Agreement or any portion thereof shall be construed or interpreted against the preparer and it will be deemed and established that both Parties actively participated in drafting and concluding this Agreement, each having been represented by its respective counsel.

23. **Notice.** Borrower and Guarantor further represent and warrant that they will yearly, on the anniversary of the Effective Date, submit a written statement to Lender by means of declaration stating whether Borrower or Guarantor obtained any other loans from any third parties pledging securities of same Issuer and whether there has been a material change in Borrowers or Guarantors financial condition, such as bankruptcy or insolvency filing of Borrower or Guarantor or of any entity controlled by Borrower or Guarantor. Borrower and Guarantor must also declare if any material lawsuit has been filed against it.

24. **Notices.** All notices and communications to either of the Parties by the other shall be in writing, sent by government mail, electronic mail or by a reputable commercial carrier and shall be deemed duly given on the earlier of the date the same is sent or when deposited in the mail to each Party as follows:

| If to Lender: | Astor Asset Management 3 Limited |
|---|---|
| Attention: | Operations Manager |
| | 777 Dunsmuir Street Suite 1400 |
| | Vancouver, British Columbia, V7Y 1K4 |
| | Email: compliance@astorcapitalfund.com : Telephone: +1 888 775 1628 |

| If to Borrower: | Corporacion RBS SA de CV |
|---|---|
| Attention: | Ave. Ferrocarril de Rio Frio 419 A99, Cuchilla del Moral 1, Iztapalapa |
| | 09319 Ciudad de Mexico, Mexico |
| | Email: egonzalez@gruposalinas.com.mx ; |
| | Telephone: 0052551720[0089] |

| If to Guarantor: | Ricardo Benjamin Salinas Pleigo |
|---|---|
| Attention: | Cristobal Colon 79 INT C, Mexico 09360 |
| | Email: egsalceda@gruposalinas.com.mx ; |
| | Telephone: +5215530091016 |

Either Party may designate by notice in writing to the other a new address to which notices, requests, and other communications hereunder shall be given.

25. **Records.** At the request of Lender, Borrower and Guarantor will cooperate in providing financial or other records, including audited financial statement reasonably necessary by

Initials: _____  _____  _____
          Guarantor  Borrower  Lender

Astor Asset Management 3 Ltd

Lender to establish ongoing Borrower and Guarantor credit-worthiness. Yearly upon the anniversary of the Effective Date, the Borrower and Guarantor will submit to Lender in writing declaration attesting to whether securities of same Issuer were sold or pledged to others in the preceding year. If none were sold or pledged, the Borrower and Guarantor shall inform Lender accordingly. If any were sold or pledged, then Borrower and Guarantor shall identify such transactions.

26. **Redemption.** This is a Hybrid Loan and Borrower and Guarantor expressly waives the benefit of all laws now existing or hereafter enacted providing for redemption of a right or redemption from any sale of Collateral made under this Loan as a result of incurable Event of Default and Borrower hereby releases all rights of redemption to which Borrower or Guarantor would otherwise be entitled, when the Collateral is forfeited and disposed of as a result of an incurable Event of Default by Borrower.

27. **Release and Waiver.** No waiver of any provision of this Agreement shall be effective unless agreed to in writing by the Parties. No course of dealing between Borrower, Guarantor and Lender shall operate as a waiver of any of the rights of the Parties under this Agreement with the exception of an action for injunctive relief, which shall not be permitted or attempted and shall be nullified by the judicial body upon its application. Should Lender fail to timely exercise any of its rights, options or elections hereunder, irrespective of whether Lender continues to fund the Borrower, the Lender shall not be deemed to have waived any breach or default declaration on the part of Borrower or to have released Borrower or Guarantor from any of the Obligations mandated herein, unless such waiver is strictly in writing, is signed by Lender and expressly waives Lenders rights. Delayed or postponed implementation of any of Lenders rights does not waive any rights afforded to Lender herein and the Lender is free to invoke such rights at any time Lender chooses in doing so. For consideration herein provided, Borrower hereby releases, absolves and forever discharges Lender and their respective successors, assigns, partners, directors, shareholders, officers, beneficial owners, advisers, affiliates, agents, attorneys, transferees, and employees from any and all claims, legal fees, demands, torts, cross-actions, controversies, omissions, inaccuracy, nonfulfillment of any representation or warranty, oversight, exclusion, negligence, causes of action, suits, damages, rights, outcomes, liabilities and obligations, at law or in equity whatsoever, known or unknown, whether past, present or future, now held, owned or possessed by Borrower or Guarantor, or which Borrower or Guarantor may, as a result of any of Lenders actions, inactions, going-concern status, assignments, dealings, failings to act, calculations or directives occurring on or prior or after the execution of this Agreement, and hereafter hold or claim to hold under common law or statutory right, arising, directly or indirectly out of the Loan or any of the Loan Documents or any of the documents, instruments or any other transactions contemplated thereby. Borrower and Guarantor understand and agree that this is a full, final and complete release and agrees that this release may be pled as an absolute and the final bar to any or all suit or suits pending, or which may hereafter be filed, claimed or prosecuted by Borrower or Guarantor, or anyone claiming by, through or under Borrower or Guarantor, in respect of any of the matters described herein may hereafter be had from anyone whomsoever. No Waiver is asserted or claimed against the Lender which refutes Lenders dominion and right to foreclose, deal-in or transact in the Pledged Collateral and no Waiver is alleged or claimed against the Lender which prohibits Lender prior to or post an Event of Default to exhaust its recourse against the Borrower or Guarantor or any other person or persons, third party guarantors or against any other security it may hold in respect to the Obligations of Borrower or Guarantor, before realizing upon or otherwise dealing with the Pledged Collateral in such manner as Lender may consider necessary or befitting in its own

Initials: _____  _____  _____
          Guarantor  Borrower  Lender

Astor Asset Management 3 Ltd

right. All of Lenders rights are reserved and none are Waived. Lenders acceptance of partial payments shall not invalidate, waive or diminish Lenders rights afforded herein.

28. **Severability.** If any of the provisions of this Agreement or in any of the Loan Documents is found by an arbitral tribunal and/or court of competent jurisdiction to be unlawful, then such provision will be further altered and modified in Lender's favor to meet legal conformity or, if impracticable, is stricken out entirely as if it was never even written in the first place, and the remainder of the rights, warranties, provisions, covenants and Obligations contained in this Agreement or any of the Loan Documents shall continue to be in full force and effect. If any provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

29. **Statement of Knowledge.** For purposes of this Agreement, the Borrower and Guarantor shall be deemed to have knowledge of a particular fact or matter referenced herein. unless otherwise qualified hereunder means a statement of the Borrower and Guarantor declaring knowledge of the actual facts or circumstances to which such phrase relates having made inquiries or investigations in connection with such facts and circumstances, Borrower having conducted reasonably diligent inquiry into the relevant subject matter.

30. **Survival.** Except as herein provided, all of the Borrower's and Guarantor's representations, warranties, waivers, Obligations, releases, indemnities, and covenants made in this Agreement shall remain in full force and survive the execution, delivery, cancellation, and termination of this Agreement regardless of the consummation of events and transactions contemplated hereof. All of the Lender's rights, benefits, enforcement covenants and secured interest into the collateral shall survive the termination of this Agreement, except for further funding of the Loan. The Lender shall receive, obtain and retain all the benefits, profit and interest of the securities pledged during the Loan Term and upon its expiration, should any amounts be further owed to Lender.

31. **Termination.** Early termination or rescission is not permitted under the Agreement, regardless of the reason or need to do so, and this Agreement will be valid and in full force and effect after its execution for its full Term, provided it can only be terminated after its maturity, jointly by both Parties in written form only and memorialized as an Addendum or mutual written release, or as stipulated herein and for no other reason. All enforcement covenants, conditions, and waivers will survive termination. If the Loan Documents shall, at any time after their execution and delivery for any reason, cease to be in full force and effect or shall be canceled, declared invalid, null or void by Borrower or Guarantor, their representatives or their agents or the validity or enforceability thereof shall be contested or challenged by Borrower, Guarantor or by any other person for or on the Borrower's or Guarantor's behalf, the Loan will be considered in default. The Lender retains the right to convert the Collateral during the Loan Term, and thereafter should Borrower or Guarantor default.

## X.    REQUIRED DISCLOSURES

It is mutually understood and agreed that Lender has a financial interest and privilege in the pledged shares according to the parties' understanding and contractual agreement. Borrower assumes the burden of topping up when required to do so. Borrower is aware that market conditions may cause the value of securities to decline. Borrower and Guarantor concede that Lender is not responsible for the degradation of the stock value, whether owing to action(s) or inaction(s) of Lender. A decline in value may require additional securities or cash to increase the value of the collateral. Borrower's or Guarantor's default will cause forfeiture of securities. Borrower and Guarantor now waive and forever discharge Lender against any claims under any applicable securities laws. Tax consequences are the responsibility of Borrower and Guarantor.

v. 1.05.1020          Page 25 of 31          Initials: _____ _____ _____
                                                     Guarantor  Borrower  Lender

**Astor Asset Management 3 Ltd**

Lender and its loan officers have not provided legal or tax advice of any kind to Borrower or Guarantor. Borrower and Guarantor attest that, at all times, they were represented by legal counsel representing its interests and Borrower and Guarantor have had ample opportunity to consult one. Borrower's and Guarantor's decision is at will and solely based on its independent judgment. Borrower and Guarantor have evaluated all risks independently and did not rely on representations made by Lender, if any. Lender does not discriminate based on sex, race, nationality, or religion. Lender is not a broker-dealer or financial advisor. This disclosure provides full transparency of risks involved. Neither Borrower nor Lender will participate in or engage in any money laundering scheme. Lender does not provide investment advice and its loan officers, and sales staff are prohibited from doing so. Borrower must ensure that the Pledged Collateral stays within Lender's value requirement following this Agreement. Loan is non-recourse to Borrower or to Guarantor and recourse will be against Collateral only. Lender has recommended that Borrower consult a professional tax advisor to determine the tax implications of a loan under the terms of this agreement before proceeding. Lender will not be liable for the devaluation of securities during the term of Loan. Lender is not an insider of the securities being pledged by Guarantor and Lender does not and has not offered to buy or sell advice to Borrower. Lender utilizes independent third-party compliance consultants in risk management analyses and underwriting recommendations. A default of Loan will cancel Lender's obligation to Borrower and to Guarantor. Neither Borrower nor Guarantor will undermine or interfere with securities of Issuer. Borrower will not use Loan proceeds for any illegal activity, including without limitation to, use of Loan proceeds in the drug trade or support of terrorist groups. Borrower is to consult a tax professional for any tax advice. Guarantor represents that Guarantor has full ownership of the securities and legal custody and as of the date of this agreement, is not a defendant in any lawsuit where the ownership and control of the pledged shares are challenged because Lender will not be a Party to any such challenge. Borrower will not transact with any entity on any international sanctioned list using the Loan proceeds. Lender is not affiliated with any government agency. Lender may readjust loan criterion due to adverse market conditions, Borrower's lack of cooperation or devaluation of securities. Borrower agrees that Loan is suitable for Borrower's needs. Lender has the right, but not the obligation, to refinance or increase Loan amount if the value of securities increases during the term of Loan. Borrower and Guarantor have risk-tolerance and the financial ability and liquid assets to post margin in the Event of Default. Lender is not and does not hold itself out to be a tax advisor. This is not an offer to or solicitation to purchase or sell securities. Loan will be based on all applicable laws, present Underwriting, and market conditions at the time of funding. Borrower and Guarantor agree to provide information necessary to the contemplated transaction in a timely, complete, and accurate manner. The Borrower and Guarantor further represent and warrant that all statements and documentation provided about Loan are true and complete and do not omit or forgo any material facts or information. Borrower understands that funding correlates and is relative to most current market conditions at time of funding or force majeure, and may cause Lender to advance Loan in tranches, adjust or postpone funding. Due to market dynamics, at all times throughout, the loan is subject to re-analysis and Underwriting reassessment prior to funding. During the Loan Term, all benefits and proceeds of Pledged Collateral inure to Lender. Lender reserves the right to maintain dominion over the Collateral during the Loan Term, which affords Lender the right to deal-in, dispose or convert over the Pledged Collateral. Lender may not call the Loan before Maturity Date unless a default has occurred. The Cash Collateral to be deposited in to Borrowers own account shall be solely computed by the Lender. No notice of any type is due to Borrower or to Guarantor other than the notices described herein. During the pendency of the Loan, neither Borrower nor Guarantor is entitled to receive or retain any benefits or rights not specifically stated or contemplated herein.

**IN WITNESS WHEREOF**, and after review, mutual preparation and consultation with respective legal counsel, the Parties have executed this Loan Agreement as of the date first written above.

END OF TEXT

Initials: _____    _____    _____
          Guarantor   Borrower    Lender

 Astor Asset Management 3 Ltd

## SIGNATORY PARTIES

**LENDER:** Astor Asset Management 3 Limited, a Canadian corporation.



Signature      <u>Mariia Mitsa, Managing Member</u>     07/28/2021
                Name and Title             Date

## BORROWER NOTARIZATION

**BORROWER:** Corporacion RBS SA de CV

July 28, 2021

Signature      <u>Ricardo Benjamin Salinas Pliego</u>     ~~July 14th, 2021~~
                Name and Title               Date

Notary Seal

Attorney/Notary/Witness                     Eduardo Gonzalez Saleda
                                      Attorney/Notary/Witness

Signature     July 14th 2021          Eduardo Gonzalez Saleda
              Date                  Signature                Date

# Astor Asset Management 3 Ltd

The Guarantor hereby attests and guarantees unconditionally the due, prompt and faithful performance and discharge by, and compliance with, all of the obligations, covenants, terms, conditions and undertakings under this Agreement in accordance with the terms hereof, including any such obligations, covenants, terms, conditions and undertakings that are required to be performed, discharged or complied with and that Guarantor has the capacity to full fill the full and faithful performance of Borrower as stipulated herein.

GUARANTOR: Ricardo Benjamin Salinas Pliego

July 28, 2021

_____       Ricardo Benjamin Salinas Pliego    July 14th 2021
Signature                          Name                               Date


_____
Notary Seal


_____       Edvardo Gonzalez Salceda
Attorney/Notary/Witness            Attorney/Notary/Witness

_____       Edvardo Gonzalez Salceda
Signature        July 14th, 2021   Signature              Date
                 Date

 Astor Asset Management 3 Ltd

<u>SCHEDULE A</u>

<u>BANKING INFORMATION</u>

**BORROWER BANKING INFORMATION (CORPORATE):**

| | |
|---|---|
| **Bank/Institution Name:** | |
| **Swift Code No/Routing No:** | |
| **Account Number:** | |
| **Account Name:** | Corporacion RBS SA de CV |
| **Bank Code:** | |
| **Branch Code:** | |
| **Address of Account:** | |

**CASH AND STOCK TOP UP ACCOUNT INFORMATION (CORPORATE):**

| | |
|---|---|
| **Institution's Name:** | Weiser Global Capital Markets |
| **Account Number:** | 200-804762 ; 200-804763 |
| **Account Name:** | Corporacion RBS SA de CV |
| **Address of Account:** | |

Astor Asset Management 3 Ltd

## BORROWER BANKING INFORMATION (INDIVIDUAL):

**Bank/Institution Name:**

**Swift Code No/Routing No:**
**Account Number:**

**Account Name:**                Ricardo Benjamin Salinas Pliego

**Bank Code:**
**Branch Code:**

**Address of Account:**

## CASH AND STOCK TOP UP ACCOUNT INFORMATION (INDIVIDUAL):

**Institution's Name:**              Weiser Global Capital Markets

**Account Number:**              200-804764 ; 200-804765

**Account Name:**              Ricardo Benjamin Salinas Pliego

**Address of Account:**

## INTEREST, PRINCIPAL AND PAYMENT INFORMATION:

**Please make payment payable to:**
Astor Asset Management 3 Limited
777 Dunsmuir Street, Suite 1400
Vancouver, British Columbia, V7Y 1K4



www.astorassetgroup.com

**Singapore**
Six Battery Road
Level 42
Singapore, 049909

asia.inquiries@astorassetgroup.com
+65 800 492 2419

**Hong Kong**
18 Westlands Road
Level 23
Hong Kong

asia.inquiries@astorassetgroup.com
+852 800 964 226

**United Kingdom**
20 MIDTOWN
20 PROCTER STREET,
LONDON, UK, WC1V 6NX

europe.inquiries@astorassetgroup.com
+44 2 0386 84 620

**Germany**
Niederrad business district
LYONER STRASSE 14
FRANKFURT, GERMANY, 60528

europe.inquiries@astorassetgroup.com
+49 0800 1812772

**Australia**
330 Collins Street,
level 14
Melbourne, Australia, 3000

oceania.inquiries@astorassetgroup.com
+613 8375 7172

# EXHIBIT 3



## CUSTODIAN MANAGEMENT AGREEMENT

### Security Name: Grupo Elektra SAB DE CV

### Symbol: ELEKTRA:MX

NOW, THEREFORE, for and in consideration of mutual premises provided or to be provided and other good and valuable, sufficient, and equitable consideration, monetary or in-kind, and other mutual covenants, the receipt of, adequacy and sufficiency of which is hereby acknowledged, provided for and satisfied, and intending to be bound hereby the performance thereof, and such represents reasonably just, equitable, adequate, and reasonable in value, the parties hereto covenant and agree to and stipulate as follows. That each Party agrees that the fair value of consideration it is receiving, has received and will receive under this Agreement equals or exceeds the fair value of the consideration it is delivering.

This Custodian Management Agreement (this "Agreement" or the "CMA") is entered into, effective on the date of execution hereof, by and between:

**Corporacion RBS SA de CV**, a corporation, for itself, representatives, affiliates, and assigns, with a principal place of residence/business located at Ave. Ferrocarril de Rio Frio 419 A99, Cuchilla del Moral 1, Iztapalapa 09319 Ciudad de Mexico, Mexico **(hereinafter "Borrower")** and **Ricardo Benjamin Salinas Pliego**, an individual, for itself, representatives, affiliates, and assigns, with a principal place of residence/business located at Cristobal Colon 79 INT C, Mexico 09360 **(hereinafter "Guarantor")** and hereby represent and warrant that both the corporation and the individual have the capacity and standing to enter into this Agreement **(hereinafter cumulatively the "Principal Account Holder")**;

AND

**Astor Asset Management 3 Limited**, for itself, representatives, affiliates, and assigns, with an office located at 777 Dunsmuir Street, Suite 1400, Vancouver, British Columbia, Canada V7Y 1K4, which represents and warrants that it has the capacity and standing to enter into this Agreement (hereinafter the "Lender");

AND

**Weiser Global Capital Markets**, a Class 1 registered custodial broker dealer, for itself, affiliates, and subsidiaries, with a principal place of business located At Unit A- Balmoral Corporate Center, Balmoral Development, Sanford Drive, Nassau, Bahamas, which represents and warrants that they have the capacity and standing to enter into this Agreement (hereinafter "Dealer"). Borrower and Guarantor, Lender, and the Dealer are hereinafter sometimes individually referred to as a "Party" and collectively as the "Parties".

**WHEREAS:** Lender will deposit Cash Collateral in to Borrowers Account(s), (the "Account") held at the Custodian which Account is identified in Section 3.1, (with right to substitute the identified account, in the event another account is opened by Custodian for the Borrower for purposes of continuing to carry out the herein said obligations of Parties), in order to fund Borrower and whereby it is mutually recognized that the Collateral until released to Guarantor in writing through a written Closing Statement, is the sole and exclusive property of Lender and controlled by this CMA. The written Closing Statement will memorialize the amount of funds to be released to Borrower and any expenses.

Initials: _____

Guarantor   Borrower   Lender   Custodian



1. **Pledge by Borrower and Guarantor.** The Borrower and Guarantor hereby appoint and authorize Lender as the exclusive lien holder over certain Pledged Collateral held on account of the Guarantor, and in the Guarantors name, place and stead, giving and granting to Lender, general, full power and authority to do and perform all and every act and thing whatsoever requisite necessary to be done in transacting in the Pledged Collateral as fully, to all intents and purposes, as could be done if personally present, with full power of substitution, hereby ratifying and confirming all that Lender shall lawfully do or cause to be done by virtue hereof as sole administrator of the Pledged Collateral. Additionally, the Borrower and Guarantor are hereby directing that all correspondence from the Dealer relating to the Depository Account(s) during the term of the loan shall be emailed and/or mailed to the Lender.

2. **Scope of this Agreement.** Lender, Borrower and Guarantor have entered into a Stock Loan Agreement (the "SLA"), which is independent of this Agreement and the Dealer is not bound by it, may not interpret or attempt to adhere to it, shall not base a Lender's entitlement order ("Entitlement Order") on it, shall not refuse to follow Lender's Entitlement Order, withhold, or attempt to interfere with or delay any such Entitlement Order. The pledged securities with the Dealer will be under the sole and exclusive control of the Lender.

3. **Control by Lender.** The Lenders scope of authority includes, but is not limited to, exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Principal Account Holder. The Parties further acknowledge that Lender reserves the right to direct the Dealer to comply with Entitlement Orders originated by Lender.

   3.1. The Depository Account(s) maintained by the Borrower and Guarantor and held by the Custodian in favor of Lender are as follows:

| Depository Broker Name: | Weiser Global Capital Markets |
| --- | --- |
| Depository Broker Address: | Unit A, Balmoral Corporate Center, Balmoral Development, Nassau, Bahamas |
| Borrower Account Number(s): | 200-804762 & 200-804763 |
| Borrower Account Name: | Corporacion RBS SA de CV |
| Borrower Account Address: | Ave. Ferrocarril de Rio Frio 419 A99, Cuchilla del Moral 1, Iztapalapa 09319 Ciudad de Mexico, Mexico |

| Depository Broker Name: | Weiser Global Capital Markets |
| --- | --- |
| Depository Broker Address: | Unit A, Balmoral Corporate Center, Balmoral Development, Nassau, Bahamas |
| Guarantor Account Numbers: | 200-804764 & 200-804765 |
| Guarantor Account Name: | Ricardo Benjamin Salinas Pliego |
| Guarantor Account Address: | Cristobal Colon 79 INT C, Mexico 09360 |

The Dealer's custodial banking counter parties consist of top tier multi-national banks.

Weiser Global Capital Markets
Collateral Services Department
Phone: +1-242-698-6600
collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____

Guarantor   Borrower   Lender   Custodian



Authorized Account of Party to Receive Shares, Funds for Top-Up, Conduct, Transmit, and Engage in All Transfers, Including Safe Proceeds Withdrawals.

| Intermediary Bank: | |
|---|---|
| Swift: | |
| FFC: | Weiser Global Capital Markets Ltd. |
| REF: | |
| | ** Email notification to: collateralservices@weiser.com.bs |

3.2. The Lender's lien and security interest also includes all proceeds of the foregoing, and all proceeds of trades. Guarantor represents and warrants to both Lender and the Dealer that they own the Pledged Collateral free and clear of any lien, whether voluntary or involuntary.

3.3. The Borrower and Guarantor agree to bear all reasonable costs, fees, and out of pocket expenses that might arise in the course of enforcing, executing and maintaining this Agreement.

3.4. For the services provided the Dealer will be entitled to an annual collateral management fee to be paid by Borrower and Guarantor based on the cumulative asset value of marketable securities on all Depository Account(s), the maximum fee being twenty hundredths of one percent (0.20%) per annum. Such nonrefundable fee shall be paid one year in advance. The first year's fee may be deducted from the Loan proceeds or Pledged Collateral, and each year of the term thereafter shall be the same fee paid annually on the anniversary of the Closing Date, paid to Lender and remitted to the Dealer. The annual Dealer management charge is exclusive of any other possible fees and administrative costs which may be imposed by third parties.

3.5. During the Loan Term, the Borrower and Guarantor hereby agree to unconditionally and irrevocably relinquish, forfeit, and renounce any right it may now or in the future have over the Depository Account(s) to the Lender in a form of a lien. Borrower and Guarantor shall not claim any right or privilege or exercise any control whatsoever over the Account(s) and shall not issue any instructions to the Dealer or directly or indirectly interfere with Lender's instructions to said Dealer or attempt to seek injunctive relief from any court of law, regulatory body, central depository, clearing house, custodian or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement. Nor will Borrower or Guarantor inhibit, frustrate, intrude upon, intercede, impede or interfere with the Dealer or the Dealer's sub-custodial counter parties during the Loan Term.

3.6. The obligations of Borrower and Guarantor are joint and several and both the Borrower and Guarantor agree that it is jointly and severally liable for and absolutely and unconditionally guarantee the performance of all obligations under this Agreement and the Lender will not exhaust remedies against either the Borrower or Guarantor before enforcing its rights against either the Borrower or Guarantor.

4. **Borrowers and Guarantors Rights in the Dedicated Depository Account(s).** Until the Lender notifies the Dealer in writing that the Lender's security interest in the Depository Account(s) have

Initials:  _____

Guarantor    Borrower    Lender    Custodian



terminated, the Dealer shall not distribute to Borrower or Guarantor any securities, assets, funds, or property currently or in the future held in the Depository Account(s).

5. **Waiver.** The Dealer will not be liable to either the Borrower or Guarantor for complying with any Entitlement Orders originated by the Lender and the Borrower and Guarantor hereby waive any rights to claims against the Dealer in connection thereto. Further, it is agreed that the Dealer is not obliged to verify and will not verify whether Lender has the right to give Entitlement Orders.

6. **Indemnity.** Lender, Borrower and Guarantor indemnify the Dealer, its officers, directors, employees, and agents against any and all claims, demands, lawsuits, liabilities, and expenses related to, arising out of or in connection with this agreement (including without limitation any and all court costs, reasonable attorneys' fees, damages and disbursements). Both Borrower and Guarantor acknowledge that they are both bound by the instructions that the Lender gives the Dealer. As to Dealer, Lender's, Borrowers and Guarantors liability under this section is joint and several. Between Lender, Borrower and Guarantor, both Borrower and Guarantor agree to be responsible for and to reimburse Lender for any liability under this Section, except to the extent any claims, demands, lawsuits, liabilities or expenses with respect to which liability arises are caused by Lender's gross negligence or willful misconduct.

7. **Gender Neutrality.** All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders, and the singular shall include plural and vice versa.

8. **Termination.** Lender may at any time terminate this Agreement on not less than fourteen (14) days written notice to the Dealer, the Borrower and Guarantor. The Dealer may terminate this Agreement on not less than five (5) days written notice to the Lender, the Borrower and Guarantor. Upon such termination by the Dealer, the Lender shall within two (2) Business Days issue an Entitlement Order to the Dealer ordering the Dealer to promptly transfer the Pledged Collateral to the Lender or to such person(s) under the written instructions issued by or on behalf of the Lender. Upon transfer pursuant to such Entitlement Order, the Dealer's obligations under this Agreement are or deemed to have been fully discharged.

9. **Applicable Law and Provision in the Event of Dispute.** If a dispute arises with respect to Dealer, Borrower and Guarantor, the applicable law and proceedings shall be as set forth in the Dealer's Account Terms & Conditions. If a dispute arises with respect to Borrower, Guarantor and the Lender, the applicable law and proceedings shall be set forth in the Stock Loan Agreement. The Parties irrevocably and unconditionally waive any defense or claim of inconvenient or improper forum or venue of jurisdiction, on account of place of residence, location of parties, location of transaction or any other subject matter.

10. **Miscellaneous.**

   10.1.    Neither the Borrower nor the Guarantor may assign, transfer, charge, or novate any of its rights or obligations under this Agreement.

   10.2.    Capitalized terms used but not defined herein shall have the meanings given to such terms in the SLA.

   10.3.    All communications from and to any of the Parties hereto may be transmitted by mail to the addresses listed below or electronically and shall, in the case of the latter, have full legal force and effect, including electronic signatures contained therein.

Weiser Global Capital Markets
Collateral Services Department
Phone: +1-242-698-6600
collateralservices@weiser.com.bs www.weiser.com.bs

Initials:

Guarantor    Borrower    Lender    Custodian



**Lender:**
Astor Asset Management 3 Limited
Loan Services
777 Dunsmuir Street, Suite 1400,
Vancouver, British Columbia, Canada V7Y 1K4
compliance@astorcapitalfund.com ; +1 888 775 1628

**Guarantor:**
Ricardo Benjamin Salinas Pliego
Cristobal Colon 79 INT C, Mexico 09360
egsalceda@gruposalinas.com.mx ; +5215530091016

**Borrower:**
Corporacion RBS SA de CV
Ave. Ferrocarril de Rio Frio 419 A99,
Cuchilla del Moral 1, Iztapalapa 09319 Ciudad de Mexico, Mexico
rsalinas@gruposalinas.com.mx ; 00525517200089

**Depository Broker:**
Weiser Global Capital Markets
20 Bay Street, 11th Floor
Toronto, Canada, M5J2N8
CollateralServices@weiser.com.bs ; +1 416 915 0808

or

Weiser Global Capital Markets
Unit A, Balmoral Corporate Center, Balmoral Development
Sanford Drive, Nassau, Bahamas
CollateralServices@weiser.com.bs ; +1 242 698 6600

### - DISCLAIMER -

BORROWER AND GUARANTOR REPRESENT THAT THE SECURITIES AND OR PROPERTY IN
THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY ILL-GOTTEN GAIN OR A RESULT
OF ANY FRAUDULENT ACTIVITY WHICH WILL FALL UNDER PENAL LAW. BORROWER AND
GUARANTOR ARE NOT UNDER THE INFLUENCE OF DRUGS OR ALCOHOL WHEN ENTERING
INTO THIS AGREEMENT. NEITHER BORROWER NOR GUARANTOR HAVE BEEN DECLARED
BY A COURT OF LAW TO BE MENTALLY INCOMPETENT. THE SUBJECT SHARES AND
PROPERTY IN THE DEPOSITORY ACCOUNT(S) ARE NOT PART OF ANY PENDING
LITIGATION AND ARE FREE OF ANY LIEN OR ENCUMBRANCE. BORROWER AND
GUARANTOR ORDERS AND MANDATES THE DEALER THAT IRRESPECTIVE OF HOW THIS
AGREEMENT MAY BE INTERPRETED, ANY AND ALL ENTITLEMENT ORDERS SHALL COME
SOLELY FROM LENDER AND SHALL NOT BE REFUTED, QUESTIONED OR CONTESTED. THE
PARTIES HAVE EVALUATED ALL RISKS INDEPENDENTLY AND DID NOT RELY ON
REPRESENTATIONS MADE BY LENDER. THE DEALER SHALL BE FULLY INDEMNIFIED BY

Initials: _____

Guarantor   Borrower   Lender   Custodian



BORROWER AND GUARANTOR AND LENDER AGAINST ANY LIABILITIES OCCASIONED BY THIS AGREEMENT. NO FUDICIARY DUTY EXISTS BETWEEN LENDER THE BORROWER OR GUARANTOR. BORROWER AND GUARANTOR ATTEST THAT, AT ALL TIMES, THEY WERE REPRESENTED BY LEGAL COUNSEL AND/OR BORROWER AND GUARANTOR HAD AMPLE OPPORTUNITY TO CONSULT ONE.

DEALER WILL NOT BE LIABLE TO BORROWER OR GUARANTOR FOR COMPLYING WITH ENTITLEMENT ORDERS ORIGINIATED BY LENDER, EVEN IF BORROWER OR GUARANTOR NOTIFIES DEALER OR DEALER BELIEVES THAT LENDER IS NOT LEGALLY ENTITLED TO ISSUE THE ENTITLEMENT ORDER.

** END OF TEXT **

Initials: _____

Guarantor   Borrower   Lender   Custodian



## BY GUARANTOR

Ricardo Benjamin Salinas Pliego
Name of Individual

Signature

July 28, 2021
Date

July 28,2021

On this _____, before me appeared _Ricardo Benjamin Salinas Pliego_ (Authorized Signatory) as principal of this agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he/she executed the same at his/her free act and deed.

_____ (seal)
Attorney/Notary/Witness Public

Each Attorney/Notary/Witness is only certifying Borrower's signature.

******************************************************************

## BY LENDER

Astor Asset Management 3 Limited
Name of Corporation

Authorized Signatory

07/28/2021
Date

Mariia Mitsa, Managing Member
Name, Title

******************************************************************

## BY DEPOSITORY BROKER

Weiser Global Capital Markets
Name of Corporation

Authorized Signatory

Date

Name, Title

Weiser Global Capital Markets
Collateral Services Department
Phone: +1-242-698-6600
collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____

Guarantor   Borrower   Lender   Custodian



**IN WITNESS WHEREOF,** the Parties, intending to be legally bound, have caused their proper and duly authorized officers to execute and deliver this Agreement as of the day and year signed;

BY BORROWER

Corporación RBS SA de CV
Name of Corporation

Authorized Signatory

July 28, 2021
Date

Ricardo Benjamin Salinas Pliego
Name, Title

July 28, 2021

On this _July 28, 2021_, before me appeared _Ricardo Benjamin Salinas Pliego_ (Authorized Signatory) as principal of this agreement who proved to me through government issued photo identification to be the above-named person, in my presence executed foregoing instrument and acknowledged that he/she executed the same at his/her free act and deed.

_____ (seal)
Attorney/Notary/Witness Public

Each Attorney/Notary/Witness is only certifying Borrowers signature.

*****************************************************************************************

Weiser Global Capital Markets
Collateral Services Department
Phone: +1-242-698-6600
collateralservices@weiser.com.bs www.weiser.com.bs

Initials: _____
         Guarantor  Borrower  Lender  Custodian