# EXHIBIT 4

# Control Agreement

This Control Agreement (this "Agreement"), e f f e c t i v e  as of November 1st, 2021, is entered into by: (1) **Corporation RBS SA de CV.**, a Limited Liability Corporation with its principal place of business located at Ave. Ferrocarril de Rio Frio 419 A99, Cuchilla del Moral 1, Iztapalapa 09319 Ciudad de Mexico, Mexico (hereinafter the "Borrower"); (2) **Ricardo Benjamin Salinas Pliego**, an individual with his principal place of residence located at Cristobal Colon 79 INT C, Mexico 09360 (hereinafter the "Guarantor") (the Borrower and Guarantor shall jointly herein be referred to as the "Principal Account Holders"); (3) **Astor Asset Management 3 Limited**, account TMC-70, a Limited Liability Corporation with its principal place of business located at 18C – 3107 Av des Hotels, Quebec, Canada G1W 4W5 (hereinafter the "Lender"); and (4) **Tavira Monaco SAM**, a company authorised and regulated by the CCAF and whose registered office address is Le Montaigne, 6 Bd Des Moulins, 98000 Monaco (the "Depository Broker").

## WITNESSETH:

WHEREAS the Lender has agreed to make a loan (the "Loan") to the Principal Account Holders and, in that regard, the Lender and the Principal Account Holders have entered into a Non-Recourse Loan and Securities Pledge Agreement dated as of 28th of July, 2021 (as amended, supplemented or modified from time to time, the "Loan Agreement"), in which, among other things, the Principal Account Holders have granted to the Lender a security interest and/or pledge in the Principal Account Holders' assets included in the professional brokerage accounts respectively numbered TMC-63 and TMC-64, which the Depository Broker maintains for the Principal Account Holders (the "Accounts");

AND WHEREAS the Loan Agreement provides that the Principal Account Holders will execute and deliver to the Lender and/or the Depository Broker such form of power of attorney, charge and any other document or instrument in respect of the Accounts as the Lender and/or the Depository Broker require to give effect to the terms of the Loan Agreement;

AND WHEREAS the parties are entering into this Agreement in order to grant the rights to the Lender over the Accounts provided by the Loan Agreement and perfect the Lender's security interest in the Accounts.

NOW THEREFORE, in consideration of the premises and in order to induce the Lender to make the Loan under the Loan Agreement, the parties hereto hereby agree as follows:

1. **CONTROL BY LENDER.** The parties acknowledge that the Lender may from time to time provide notifications to the Depository Broker directing it to sell, transfer, pledge, hypothecate, lend, withdraw or redeem any funds, stocks or other property in the Accounts or any act in furtherance thereof (each, an "Entitlement Order"). The parties further acknowledge that the Depository Broker shall comply with any such Entitlement Order originated by the Lender without any requirement for consent from, or notice to, the Principal Account Holders. For the avoidance of doubt, the Principal Account Holders shall have no right whatsoever to object to any Entitlement Order originated by the Lender and complied with by the Depository Broker.

2. **PRINCIPAL ACCOUNT HOLDERS' RIGHTS IN ACCOUNTS.** Each of the Depository Broker and the Principal Account Holders acknowledges that the Principal Account Holders shall have no right to give an Entitlement Order or other direction to the Depository Broker in respect of the

EWG

Accounts or the property therein, without the prior written consent of the Lender.

3. **DEPOSITORY BROKER'S REPRESENTATIONS AND WARRANTIES.** The Depository Broker represents and warrants to the Lender that:

> 3.1 the Depository Broker maintains the Accounts for the Principal Account Holders; and

> 3.2 the Depository Broker does not know of any claim to or interest in the Accounts, except for the claims and interests of the parties referred to in this Agreement.

4. **RELIANCE ON REPRESENTATIONS AND WARRANTIES BY DEPOSITORY BROKER.** By executing this Agreement, the Principal Account Holders hereby agree with the Depository Broker that the Depository Broker shall have the benefit of the representations, warranties and covenants made by the Principal Account Holders to the Lender in the Loan Agreement and acknowledge that the Depository Broker will be relying on such representations, warranties and covenants in connection with the transactions contemplated herein.

5. **PRIORITY OF LENDER'S SECURITY INTEREST.**

> 5.1 The Depository Broker hereby subordinates, in favour of the Lender, any security interest, lien or right of setoff it may have, now or in the future, against the Accounts or property in the Accounts, except that the Depository Broker will retain its prior lien on property in the Accounts to secure payment for property purchased for the Accounts and normal commissions and fees for the Accounts.

> 5.2 The Depository Broker covenants not to agree with any third party that the Depository Broker will comply with any Entitlement Order or other direction to the Depository Broker in respect of the Accounts or the property therein originated by such third party.

> 5.3 Should any dispute arise between the Lender and the Principal Account Holders and be notified in writing by the Lender to the Depository Broker, the Depository Broker will transfer all property and amounts within the Accounts to the Lender and the Principal Account Holders will not object to any such transfers.

6. **STATEMENTS and CONFIRMATIONS.** The Depository Broker will send a copy of all statements and confirmations for the Accounts that it sends to the Principal Account Holders simultaneously to the Lender.

7. **DEPOSITORY BROKER'S RESPONSIBILITY.**

> 7.1 The Depository Broker will not be liable to the Lender for complying with Entitlement Orders originated from the Principal Account Holders that are received by the Depository Broker before the date hereof.

> 7.2 The Depository Broker will not be liable to the Principal Account Holders for complying with any Entitlement Orders originated by the Lender or performing its obligations under subsection 9.3 hereof, even if the Principal Account Holders notify the Depository Broker, or the Depository Broker believes, that the Lender is not legally entitled to issue the Entitlement

EWG

Order, unless the Depository Broker takes the action after it is served with an injunction, restraining order or other valid legal process enjoining it from doing so issued by a court of competent jurisdiction, and has had a reasonable opportunity to act on the injunction, restraining order or other legal process.

7.3 This Agreement does not create any obligation of the Depository Broker except for those expressly set forth in this Agreement. In particular, the Depository Broker need not investigate and will not investigate whether the Lender is entitled under the Loan Agreement to give an Entitlement Order. The Depository Broker may rely on, and act upon, without inquiry, any notices and communications which it believes are given by the appropriate party, including any Entitlement Orders issued by the Lender after the effective date of this Agreement.

8. **INDEMNITY.** The Lender and the Principal Account Holders will indemnify the Depository Broker, its officers, directors, employees, assignees and agents against any and all claims, demands, lawsuits, liabilities or expenses which may be sustained or incurred by any of such persons in connection with or arising out of the Depository Broker's performance under this Agreement, except any claims, demands, lawsuits, liabilities or expenses which are caused by the Depository Broker's fraud, gross negligence or wilful misconduct. The Lender's and the Principal Account Holders' liability under this section is joint and several. The Principal Account Holders acknowledge and agree that the Depository Broker will act solely in accordance with the instructions issued by the Lender, and that the Depository Broker shall have no liability to the Principal Account Holders for acting in accordance with such instructions save in the event of the Depository Broker's fraud, gross negligence or wilful misconduct.

9. **TERMINATION; SURVIVAL.**

9.1 The Lender may at any time terminate this Agreement by written notice to the Depository Broker and the Principal Account Holders. The Depository Broker may terminate this Agreement on not less than ten (10) business days' written notice to the Lender and the Principal Account Holders. Upon such termination by the Depository Broker, the Depository Broker shall promptly transfer all property and other amounts in the Accounts to the Lender or pursuant to instructions issued by or on behalf of the Lender.

9.2 If the Lender notifies the Depository Broker in writing that the Lender's security interest in the Accounts has been terminated, this Agreement will thereupon immediately terminate and cease to exist without any further action on the part of the parties or repercussion for the Depository Broker.

9.3 If the Lender notifies the Depository Broker in writing that an event of default has occurred under the Loan Agreement, this Agreement will thereupon immediately terminate and cease to exist without any further action on the part of the parties and the Depository Broker shall promptly transfer all property and other amounts in the Accounts to the Lender or pursuant to instructions issued by or on behalf of the Lender without any further action on the part of the parties or repercussion f o r  the Depository Broker.

9.4 Sections 5, 7, 8, 9 and 10 hereof will survive termination of this Agreement.

10. **MISCELLANEOUS.**

EWG

10.1 Governing Law. This Agreement and the Accounts shall be governed by the laws of England and Wales. The Depository Broker and the Principal Account Holders may not change the law governing the Accounts without the Lender's express written consent.

10.2 Consent to Jurisdiction; Venue. Each party to this Agreement irrevocably agrees that the courts of England shall have exclusive jurisdiction to hear, settle and/or determine any dispute, controversy or claim (including any non-contractual dispute, controversy or claim) arising out of or in connection with this Agreement, including any question regarding its existence, validity, formation or termination. For these purposes, each party irrevocably submits to the exclusive jurisdiction of the English courts.

10.3 Entire Agreement; Paramountcy. This Agreement constitutes the entire agreement between the parties pertaining to the subject-matter hereof and, except for the Loan Agreement between the Lender and the Principal Account Holders, supersedes all prior agreements, understandings, negotiations and discussions of the parties, whether oral or written. In the event of any conflict, inconsistency, ambiguity or difference between the provisions of this Agreement and any agreement between the Depository Broker and the Principal Account Holders, the provisions of this Agreement shall govern and be paramount and any such provision in such other agreement(s) shall be deemed to be amended to the extent necessary to eliminate any such conflict, inconsistency, ambiguity or difference.

10.4 Amendments, Etc. No amendments to, or waiver of a right under, this Agreement will be binding unless it is in writing and signed by the parties to this Agreement.

10.5 Severability. To the extent a provision of this Agreement is unenforceable, this Agreement will be construed as if the unenforceable provision were omitted.

10.6 Successors and Assigns. A successor to or assignee of the Lender's rights and obligations under the Loan Agreement will succeed to the Lender's rights and obligations under this Agreement. The Principal Account Holders may not assign, transfer, charge or novate any of its rights or obligations under this Agreement.

10.7 Notices. Any notices or other communications to a party under this Agreement, including any Entitlement Orders, shall be in writing and, with respect to the Principal Account Holders and the Lender, shall be given in accordance with the notice provisions of the Loan Agreement.

10.8 Language. The parties hereto acknowledge and confirm that they have requested that this Agreement, as well as all notices and other documents contemplated hereby, be drawn up in the English language.

EWG

10.9 Independent Legal Advice. The Principal Account Holders acknowledge that: (i) each of the Lender and the Depository Broker has recommended and encouraged the Principal Account Holders to obtain independent legal advice with respect to this Agreement and the transactions contemplated hereby; (ii) they have, in fact, been given an opportunity to obtain independent legal advice from counsel/advisors of their choosing; and (iii) if they have



not obtained independent legal advice, despite having been encouraged and given the opportunity to do so, the Principal Account Holders explicitly waive the right to obtain such advice, and, in any event, the Principal Account Holders acknowledge that they have read and understood this Agreement.

10.10 Counterparts and Transmission. This Agreement may be: (i) executed in two or more counterparts, each of which counterparts when so executed and delivered shall be deemed to be an original, but all of which counterparts together shall constitute one and the same document; and/or (ii) transmitted by facsimile and/or internet device and that the reproduction of signatures by way of facsimile and/or PDF device will be treated as though such reproductions were executed originals and communication by such means will be legal and binding.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

**Astor Asset Management 3 Limited (LENDER)**

By: _____     Print Name   Mariia Mitsa     Date   03.12.21
     Signature                                                      Managing Member

**Tavira Monaco SAM (DEPOSITORY BROKER)**

By: _____     Eliot Goodfellow     13/12/2021
     Signature                                        Print Name                          Date

**Corporation RBS SA de CV (BORROWER)**

By: _____    _Ricardo Benjamin Salinas Pliego_    _30 Nov 21_
      Signature                            Print Name                 Date

**Ricardo Benjamin Salinas Pliego (GUARANTOR)**

By: _____    _Ricardo Benjamin Salinas Pliego_    _30 Nov 21_
      Signature                            Print Name                 Date

EWG

# EXHIBIT 5

## NOTICE TO BORROWER AND GUARANTOR

PLEASE TAKE NOTICE THAT A COLLATERALIZED, SECURED FIXED INSTRUMENT BASED LOAN TRANSACTION MAY INVOLVE SUBSTANTIAL ELEMENTS OF RISK THAT INVOLVE SHARES IN PUBLICLY TRADED SECURITIES WHICH MAY BE SUBJECT TO ADVERSE CREDIT RISKS, ADVERSE TAX RISKS AND/OR ADVERSE MARKET CONDITIONS THAT COULD NEGATIVELY IMPACT ALL OR PART OF THE COLLATERALIZED, SECURED, FIXED INSTRUMENT LOAN TRANSACTION. ALWAYS CONSULT WITH A REGISTERED INVESTMENT ADVISOR AND YOUR ATTORNEYS BEFORE INVESTING OR ENGAGING IN MARGIN BORROWING.

THIS CLOSING STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY ANY SECURITIES REGULATORS OR COMMISSIONS OR SECURITIES EXCHANGES IN ANY JURISDICTION (THE "SECURITIES REGULATORS").

NO SECURITIES REGULATORS HAVE ISSUED A RULING ON EITHER THE ACCURACY OR LEGAL SUFFICIENCY OF THIS CLOSING STATEMENT NOR OF THE UNDERLYING COLLATERALIZED, SECURED, FIXED INSTRUMENT LOAN TRANSACTION (THE "TRANSACTION") THAT THIS CLOSING STATEMENT PROMULGATES.

NEITHER THIS CLOSING STATEMENT NOR THE UNDERLYING TRANSACTION IS INTENDED IN ANY WAY TO BE A PUBLIC OFFERING, BUT INSTEAD IS A CLOSING FOR AN UNDERLYING COLLATERALIZED, SECURED, FIXED-INSTRUMENT FINANCING TRANSACTION TO BE OFFERED TO AND AS AGREED TO BY QUALIFIED INVESTORS, AS DEFINED BY SECURITIES REGULATORS AND/OR BY ANY APPLICABLE SECURITIES ACT. MARGIN BORROWING ENTAILS RISK, AND THE BORROWER AND GUARANTOR ARE AWARE OF SUCH RISKS AND HAVE EFFECTIVE MANAGEMENT STRATEGIES IN PLACE TO REDUCE OR ELIMINATE RISK AS A RESULT OF MARGIN BORROWING.

LENDER INTENDS TO FUND THE BORROWER IN ACCORDANCE WITH THE STOCK LOAN AGREEMENT EXECUTED BETWEEN BORROWER, GUARANTOR AND LENDER. THE FUNDING WILL CONSIST OF MULTIPLE TRANCHES WITH DURATION BETWEEN EACH TRANCHE AND THE FUNDING AMOUNT DEPENDENT ON MARKET CONDITIONS AND LENDERS SOLE DISCRETION. ALL CALCULATIONS SHOULD BE VERIFIED BY BORROWER AND GUARANTOR UPON RECEIPT AS LENDER TAKES NO RESPONSIBILITY FOR ERRORS. CALCULATIONS INCLUDE COSTS, DEDUCTIONS, EXPENSES AND ADJUSTMENTS RECITED.



2

# CLOSING STATEMENT

**Gross Proceeds: MXN 501,591,693.09**
**Funds Settled (Net): MXN 500,000,000.00**
**Tranche 1**
**August 9, 2021**

**WHEREAS**, Astor Asset Management 3 Limited ("Lender"), Corporacion RBS SA de CV ("Borrower") and Ricardo Benjamin Salinas Pliego ("Guarantor"), collectively herein known as the "Parties", have entered into an agreed upon collateralized, secured fixed instrument-based loan transaction (the "Loan Transaction"); and

**WHEREAS**, the Parties entered into an agreed upon and fully executed Stock Loan Agreement (the "SLA") established as of July 28, 2021 to facilitate and collateralize the agreed upon Loan Transaction by and between the Parties; and

**WHEREAS**, on the date of July 30, 2021 ("Confirmation Day") Lender received the required confirmation from the Depository Broker that three million six hundred thousand (3,600,000) shares (the "Shares") of Grupo Elektra, S.A.B. de C.V., ELEKTRA:MX, (the "Issuer") posted to Guarantor's account #200-804764 at the Depository Broker (the "Pledged Collateral"), pursuant to the SLA; and

**WHEREAS**, the Loan-to-Value ratio (the "LTV") of the Shares is set in the SLA at fifty-five percent (55%) of the Shares' Fair Market Value (the "FMV"); and

**WHEREAS**, acceptance of funds constitutes Borrower's and Guarantor's further recognition and acknowledgment of all terms and conditions herein; and

**WHEREAS**, the Loan Transaction proceeds as more fully stated herein in this Closing Statement, have been or shall imminently be transferred to Borrower and credited to Borrower's account #200-804763 at the SLA listed Depository Broker upon or post the Tranche Date listed herein, in accordance with the SLA and this Closing Statement; and

**WHEREAS**, as per the SLA, the Shares have been pledged to Lender and shall be collateralized by Lender in order to release the Loan Transaction proceeds and to provide the funding facility in accordance with the SLA, which has become legally binding and in full force and effect by and between the Parties; and

**NOW, THEREFORE**, in consideration of the premises and of the representations, warranties, covenants and agreements herein contained, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:



3

## STATEMENT OF TRANCHE PROCEEDS

| | | | |
|---|---|---:|---|
| Tranche Proceeds (Gross): | ₱ | 501,591,693.09 | MXN |
| **Deductions:** | | | |
| Annual Custodian Management Charge: 0.15% | ₱ | (2,938,860.67) | MXN |
| Maintenance Fee: 0.0625% per quarter[1] | ₱ | 2,002,559.63 | MXN |
| Origination Fee: 1%[2] | ₱ | 2,507,958.47 | MXN |
| Foreign Exchange & Bank Fees: | ₱ | – | MXN |
| Legal Expenses: | ₱ | 20,035.66 | MXN |
| Quarterly Advance Interest: 1.15% per annum | | TBD | |
| **Net Settled Funds:** | ₱ | 500,000,000.00 | MXN |

## FUNDING PROCEEDS AND COLLATERALIZATION RECORD

| | LTV | FMP (MXN) | Facility (MXN) | Shares Pledged | Avg. Volume[3] |
|---|---|---|---|---|---|
| Master Facility | 55% | ₱1,618.23 | ₱3,204,095,400.00 | 3,600,000 | 82,368 |
| | Current FMP (USD): | ₱1,618.23 | | | |

| Tranche No. | Tranche Date | Price (MXN) | Gross Funding Amount (MXN) | Collaterized Shares | Net Funds after Deductions (MXN) |
|---|---|---|---|---|---|
| 1 | 9-Aug-21 | ₱1,618.23 | ₱ 501,591,693.09 | 563,569 | ₱ 500,000,000.00 |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |

| | | | |
|---|---|---|---|
| **Total Funding to Date:** | ₱ 501,591,693.09 | | ₱ 500,000,000.00 |
| **Current Value of Pledged Shares:** | ₱5,825,628,000.00 | | |
| **Current Value of Uncollateralized Shares:** | ₱4,913,643,737.13 | 3,036,431 | |
| **Balance due Borrower at Tranche Price:** | ₱2,702,504,055.42 | | |

---

1. *Maintenance Fee in the exact same amount as initial charge is due in advance every three months; future payments must be paid by Borrower to Lender in advance every three months on the quarterly anniversary of the Tranche 1 Closing Statement for the term of the Loan Transaction without further notice or repeated demand.*

2. *Pursuant to the SLA, 50% of the Origination Fee applicable to each tranche is deducted from the Loan Principal Amount. The balance of the 1% Origination Fee in the exact same amount as the initial deduction listed in each Closing Statement is due without further notice or repeated demand on the first annual anniversary of each respective Tranche Date.*

3. *Daily Average Volume for one month preceding collateral settlement per Yahoo Finance data for June 30, 2021 to July 29, 2021.*





4

Borrower and Guarantor hereby acknowledge, understand and agree that the current FMV of the shares, as stated above, is the FMV of the shares at the time of funding and is for this tranche, as per the Schedules in this Closing Statement.

Borrower and Guarantor further hereby acknowledge, understand and agree that each subsequent tranche of the Loan Principal Amount and its loan proceeds accordingly may vary and may likely fluctuate due to market conditions, risk management, daily trading price of the Shares at time of funding and changes in Borrower or Guarantor qualification, and Lender may issue future Closing Statements without requiring the signature of Borrower and Guarantor.

Borrower and Guarantor shall note that the first year's Annual Custodian Management Charge has been invoiced to Borrower directly by Depository Broker. Tranche 1 Closing Statement includes an adjustment in favor of Borrower for excess amount invoiced by Depository Broker. For each subsequent annual period, the Annual Custodian Management Charge in the amount of USD$440,044.43 must be remitted by Borrower to Lender at least fourteen (14) days prior to the Effective Date of the SLA without further notice or repeated demand.

Borrower and Guarantor shall additionally note that quarterly interest shall be due and payable in advance on the 1st of the month every three (3) months, with interest accruing from the date Cash Collateral is deposited by Lender to Borrower's account.

Borrower and Guarantor hereby acknowledge and agree that Lender reserves the right to deduct from loan proceeds foreign exchange and banking costs incurred by Lender in funding the Loan Transaction which is denominated in Mexican Pesos, and any such costs may be applied retroactively after Lender determines costs incurred.

All Parties hereby agree that Weiser Global Capital Markets Ltd. ("Weiser"), as the agreed-upon Depository Broker, is not a party to the transaction between Lender, Borrower and Guarantor, nor does Weiser take responsibility or assume any liability in coordinating, structuring or overseeing any aspect of the underlying Loan Transaction and merely acts as a custodian over the collateral Shares. Any and all arrangements between Lender, Borrower and Guarantor have been negotiated and determined by and between their respective counsel.

Borrower and Guarantor expressly agree that the SLA and all of its provisions, warranties, rights, terms and conditions are valid and in full legal force and effect as of the date of this Closing Statement and there are no material changes.

Borrower and Guarantor expressly agree that failure to remedy any event of default or other deficiency in this Loan Transaction, other loan facilities between the Parties or any other loan or debt facility of the Borrower or Guarantor ("All Facilities") will constitute a default of All Facilities between the Parties.

Borrower and Guarantor expressly represent that they are not subject to, part of nor the subject of any criminal investigation where the Pledged Collateral may be exposed to seizure or claim.



Borrower and Guarantor expressly represent that there has not been any material change to the Shares or the shares of the Issuer, Borrower or Guarantor which may undermine the value of the Pledged Collateral, and, to the best of Borrower's and Guarantor's knowledge, the Issuer of the Shares is not subject to any criminal investigation or misconduct and has timely filed all of its required reports with the stock exchange where Shares are traded.

Borrower and Guarantor expressly represent and agree to cooperate with the Lender, Depository Broker, Global Custodian and sub-Custodian and any third-party due diligence and compliance firm in furnishing any further required audited financial records and due diligence.

Borrower and Guarantor expressly represent that they are currently registered, domiciled and in Good Standing in their corporate home jurisdiction, have not declared bankruptcy in the last seven (7) years and are fully solvent.

Borrower and Guarantor expressly represent that the pledged securities as above stated are not restricted in any way, are free trading and that neither Borrower nor Guarantor have received any notice of any kind from any stock exchange or any broker-dealer which has informed or advised Borrower or Guarantor that the pledged securities are in any way restricted, under a special watch, are on a special hotlist or stop trade limitation and, further that Borrower and Guarantor are not aware of any such notice or alert that any issued security of the Issuer of the Shares is limited or restricted in trading in any way.

Borrower and Guarantor expressly represent that no representations or warranties of any kind have been made by Lender to Borrower or Guarantor, other than those in the written and executed loan agreement by and between the Parties to this Loan Transaction.

Borrower and Guarantor hereby acknowledge, understand and agree that in the event of any inconsistency or conflict with the signed and executed SLA, this Closing Statement shall be the final and controlling document, and the protective covenants and provisions of this Closing Statement shall prevail over any previous document, and furthermore, Borrower and Guarantor expressly agree that in section II.3(b) of the SLA the reference to "every four months" is replaced by "every three months" and in section VI.3(b) of the SLA the reference to "Hereinafter a new FMP" is replaced by "Thereafter a new Margin Call threshold" and the reference to "original FMP" is replaced by "original Margin Call threshold".

Borrower and Guarantor expressly represent that they are not a resident or citizen of the United States of America, that they to the best of their knowledge are not subject to the Securities and Exchange Acts of 1933 and 1934 and are not a subject of any investigation or action by the United States Securities & Exchange Commission or any other regulatory or enforcement agency of the United States of America.

Borrower and Guarantor hereby acknowledge, understand and agree that failure of Lender to exercise any right, power or remedy provided under this Closing Statement or the SLA or otherwise available in respect hereof at law or in equity, or to insist upon compliance by any party hereto with its obligations hereunder, and any custom or practice of the parties at



variance with the terms hereof, shall not constitute a waiver by Lender of its right to exercise any such or other right, power or remedy available to it at any time or to demand such compliance at any time in the future. At no time shall funding be construed to be a waiver of any kind including funding provided after an Event of Default. Lender reserves the right to continue funding and invoke an Event of Default at any time in the future. All of Lender's rights are reserved.

Borrower and Guarantor expressly represent that at all times they have been represented by competent legal counsel and that Borrower and Guarantor have had ample opportunity to consult separately with independent legal counsel in order to make an informed decision whether to agree to execute the SLA and this Closing Statement.

Borrower and Guarantor expressly represent that this Closing Statement has not been modified, edited or altered in any way and expressly agree this Closing Statement cannot be modified except by written addendum thereto fully executed by the Parties herein.

Borrower and Guarantor further and expressly represent that they are Qualified/Professional Investors, have agreed to this Closing Statement and all of its representations, warranties, covenants and agreements herein contained of their own free will, based upon their independent judgment and upon the advice of competent independent legal counsel.

Borrower and Guarantor further and expressly understand that Lender's underwriting may change at any time up-until funding or during funding if such funding is in tranches and market conditions, changes in Pledged Collateral or deterioration of Borrower's or Guarantor's qualifying criteria, in Lenders sole discretion, warrant it. Borrower and Guarantor further understand and expressly agree that the Lock-Up Period for Prepayment of the Loan Transaction shall be extended to coincide with loan Maturity Date. Lender does not guarantee funding or voting rights and all funding is at Lenders sole discretion until disbursement.

Borrower and Guarantor are capable and willing to post margin when required to do so.

## I. LOAN PROCEEDS ACCOUNT INFORMATION:

| Institution's Name | Weiser Global Capital Markets Ltd. |
|---|---|
| Account Number | 200-804763 |
| Account Name | Corporacion RBS SA de CV |

## II. CASH & STOCK TOP UP ACCOUNT INFORMATION:

| Institution's Name | Weiser Global Capital Markets Ltd. |
|---|---|
| Account Number | 200-804765 |
| Account Name | Ricardo Benjamin Salinas Pliego |




It is Borrower's and Guarantor's responsibility to notify Lender of transfers and confirm each transaction is processed by the receiving institution before any applicable due date.

IN WITNESS WHEREOF, the Parties hereto have caused this Closing Statement and Addendum to be duly executed as of the day and year written below. Each Party has consulted their respective legal counsel and agree to the terms written herein.

**BORROWER:** Corporacion RBS SA de CV

| | | |
|---|---|---|
| _Signature_ | Ricardo Benjamin Salinas Pliego<br>Name and Title | August 9, 2021<br>Date |
| _Seal_ | Eduardo Gonzalez Salceda Sanchez<br>Witness<br>Witness is only certifying Borrower's Signature | |

**GUARANTOR:** Ricardo Benjamin Salinas Pliego

| | | |
|---|---|---|
| _Signature_ | Ricardo Benjamin Salinas Pliego<br>Name and Title | August 9, 2021<br>Date |
| _Seal_ | Eduardo Gonzalez Salceda Sanchez<br>Witness<br>Witness is only certifying Guarantor's Signature | |

**LENDER:** Astor Asset Management 3 Limited

| | | |
|---|---|---|
| Signature | Name and Title | Date |




8



## United Kingdom
20 MIDTOWN
20 PROCTER STREET,
LONDON, UK, WC1V 6NX

europe.inquiries@astorassetgroup.com
**+44 2 0386 84 620**

## Germany
Niederrad business district
LYONER STRASSE 14
FRANKFURT, GERMANY, 60528

europe.inquiries@astorassetgroup.com
**+49 0800 1812772**

## Australia
330 Collins Street,
level 14
Melbourne, Australia, 3000

oceania.inquiries@astorassetgroup.com
**+613 8375 7172**

## Vietnam
65 Le Loi Street, Level 14,
Bem Nghe Ward
Ho Chi Minh City, Vietnam, District 1

asia.inquiries@astorassetgroup.com
**+84 28 4458 1398**

## Hong Kong
18 Westlands Road
Level 23
Hong Kong, Hong Kong

asia.inquiries@astorassetgroup.com
**+852 800 964 226**

## Singapore
Six Battery Road
30 Cecil Street Level 42
Singapore, Singapore 049909

asia.inquiries@astorassetgroup.com
**+65 800 492 2419**

 

# EXHIBIT 6



Astor Asset Management

# SECURITIES-BACKED FINANCING

**A Fixed Instrument, Collateralized Non-Recourse Facility**

## CLOSING STATEMENT AND SETTLEMENT

**Prepared Exclusively for a Shareholder of:**

**GRUPO ELEKTRA, S.A.B. DE C.V.**
**SYMBOL: (ELEKTRA:MX)**

# NOTICE TO BORROWER AND GUARANTOR

PLEASE TAKE NOTICE THAT A COLLATERALIZED, SECURED FIXED INSTRUMENT BASED LOAN TRANSACTION MAY INVOLVE SUBSTANTIAL ELEMENTS OF RISK THAT INVOLVE SHARES IN PUBLICLY TRADED SECURITIES WHICH MAY BE SUBJECT TO ADVERSE CREDIT RISKS, ADVERSE TAX RISKS AND/OR ADVERSE MARKET CONDITIONS THAT COULD NEGATIVELY IMPACT ALL OR PART OF THE COLLATERALIZED, SECURED, FIXED INSTRUMENT LOAN TRANSACTION. ALWAYS CONSULT WITH A REGISTERED INVESTMENT ADVISOR AND YOUR ATTORNEYS BEFORE INVESTING OR ENGAGING IN MARGIN BORROWING.

THIS CLOSING STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY ANY SECURITIES REGULATORS OR COMMISSIONS OR SECURITIES EXCHANGES IN ANY JURISDICTION (THE "SECURITIES REGULATORS").

NO SECURITIES REGULATORS HAVE ISSUED A RULING ON EITHER THE ACCURACY OR LEGAL SUFFICIENCY OF THIS CLOSING STATEMENT NOR OF THE UNDERLYING COLLATERALIZED, SECURED, FIXED INSTRUMENT LOAN TRANSACTION (THE "TRANSACTION") THAT THIS CLOSING STATEMENT PROMULGATES.

NEITHER THIS CLOSING STATEMENT NOR THE UNDERLYING TRANSACTION IS INTENDED IN ANY WAY TO BE A PUBLIC OFFERING, BUT INSTEAD IS A CLOSING FOR AN UNDERLYING COLLATERALIZED, SECURED, FIXED-INSTRUMENT FINANCING TRANSACTION TO BE OFFERED TO AND AS AGREED TO BY QUALIFIED INVESTORS, AS DEFINED BY SECURITIES REGULATORS AND/OR BY ANY APPLICABLE SECURITIES ACT. MARGIN BORROWING ENTAILS RISK, AND THE BORROWER AND GUARANTOR ARE AWARE OF SUCH RISKS AND HAVE EFFECTIVE MANAGEMENT STRATEGIES IN PLACE TO REDUCE OR ELIMINATE RISK AS A RESULT OF MARGIN BORROWING.

LENDER INTENDS TO FUND THE BORROWER IN ACCORDANCE WITH THE STOCK LOAN AGREEMENT EXECUTED BETWEEN BORROWER, GUARANTOR AND LENDER. THE FUNDING WILL CONSIST OF MULTIPLE TRANCHES WITH DURATION BETWEEN EACH TRANCHE AND THE FUNDING AMOUNT DEPENDENT ON MARKET CONDITIONS AND LENDERS SOLE DISCRETION. ALL CALCULATIONS SHOULD BE VERIFIED BY BORROWER AND GUARANTOR UPON RECEIPT AS LENDER TAKES NO RESPONSIBILITY FOR ERRORS. CALCULATIONS INCLUDE COSTS, DEDUCTIONS, EXPENSES AND ADJUSTMENTS RECITED.



# CLOSING STATEMENT

**Gross Proceeds: MXN 327,497,030.23**
**Funds Settled (Net): MXN 300,000,000.00**
**Tranche 2**
**September 10, 2021**

**WHEREAS,** Astor Asset Management 3 Limited ("Lender"), Corporacion RBS SA de CV ("Borrower") and Ricardo Benjamin Salinas Pliego ("Guarantor"), collectively herein known as the "Parties", have entered into an agreed upon collateralized, secured fixed instrument-based loan transaction (the "Loan Transaction"); and

**WHEREAS,** the Parties entered into an agreed upon and fully executed Stock Loan Agreement (the "SLA") established as of July 28, 2021 to facilitate and collateralize the agreed upon Loan Transaction by and between the Parties; and

**WHEREAS,** on the date of July 30, 2021 ("Confirmation Day") Lender received the required confirmation from the Depository Broker that three million six hundred thousand (3,600,000) shares (the "Shares") of Grupo Elektra, S.A.B. de C.V., ELEKTRA:MX, (the "Issuer") posted to Guarantor's account #200-804764 at the Depository Broker (the "Pledged Collateral"), pursuant to the SLA; and

**WHEREAS,** the Loan-to-Value ratio (the "LTV") of the Shares is set in the SLA at fifty-five percent (55%) of the Shares' Fair Market Value (the "FMV"); and

**WHEREAS,** acceptance of funds constitutes Borrower's and Guarantor's further recognition and acknowledgment of all terms and conditions herein; and

**WHEREAS,** the Loan Transaction proceeds as more fully stated herein in this Closing Statement, have been or shall imminently be transferred to Borrower and credited to Borrower's account #200-804763 at the SLA listed Depository Broker upon or post the Tranche Date listed herein, in accordance with the SLA and this Closing Statement; and

**WHEREAS,** as per the SLA, the Shares have been pledged to Lender and shall be collateralized by Lender in order to release the Loan Transaction proceeds and to provide the funding facility in accordance with the SLA, which has become legally binding and in full force and effect by and between the Parties; and

**NOW, THEREFORE,** in consideration of the premises and of the representations, warranties, covenants and agreements herein contained, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:



## STATEMENT OF TRANCHE PROCEEDS

| | | |
|---|---|---|
| Tranche Proceeds (Gross): | ₱ 327,497,030.23 | MXN |
| Deductions: | | |
| Custodian Management Charge: 0.0375% per quarter | ₱ 5,132,326.99 | MXN |
| Maintenance Fee: 0.0625% per quarter[1] | ₱ - | MXN |
| Origination Fee: 1%[2] | ₱ 1,637,485.15 | MXN |
| Foreign Exchange & Bank Fees: 2.5% | ₱ 20,727,218.09 | MXN |
| Legal Expenses: | ₱ - | MXN |
| Quarterly Advance Interest: 1.15% per annum | TBD | |
| Net Settled Funds: | ₱ 300,000,000.00 | MXN |

## FUNDING PROCEEDS AND COLLATERALIZATION RECORD

| | LTV | FMP (MXN) | Facility (MXN) | Shares Pledged | Avg. Volume[3] |
|---|---|---|---|---|---|
| Master Facility | 55% | ₱1,618.23 | ₱3,204,095,400.00 | 3,600,000 | 82,368 |
| Current FMP (USD): | | ₱1,599.19 | | | |

| Tranche No. | Tranche Date | Price (MXN) | Gross Funding Amount (MXN) | Collaterized Shares | Net Funds after Deductions (MXN) |
|---|---|---|---|---|---|
| 1 | 9-Aug-21 | ₱1,618.23 | ₱ 501,591,693.09 | 563,569 | ₱ 500,000,000.00 |
| 2 | 17-Sep-21 | ₱1,599.19 | ₱ 327,497,030.23 | 372,344 | ₱ 300,000,000.00 |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| Total Funding to Date: | | | ₱ 829,088,723.32 | | ₱ 800,000,000.00 |
| Current Value of Pledged Shares: | | | ₱5,757,084,000.00 | | |
| Current Value of Uncollateralized Shares: | | | ₱4,260,381,289.53 | 2,664,087 | |
| Balance due Borrower at Tranche Price: | | | ₱2,343,209,709.24 | | |

1. *Maintenance Fee in the exact same amount as initial charge is due in advance every three months; future payments must be paid by Borrower to Lender in advance every three months on the quarterly anniversary of the Tranche 1 Closing Statement for the term of the Loan Transaction without further notice or repeated demand.*

2. *Pursuant to the SLA, 50% of the Origination Fee applicable to each tranche is deducted from the Loan Principal Amount. The balance of the 1% Origination Fee in the exact same amount as the initial deduction listed in each Closing Statement is due without further notice or repeated demand on the first annual anniversary of each respective Tranche Date.*

3. *Daily Average Volume for one month preceding collateral settlement per Yahoo Finance data for June 30, 2021 to July 29, 2021.*



Borrower and Guarantor hereby acknowledge, understand and agree that the current FMV of the shares, as stated above, is the FMV of the shares at the time of funding and is for this tranche, as per the Schedules in this Closing Statement.

Borrower and Guarantor further hereby acknowledge, understand and agree that each subsequent tranche of the Loan Principal Amount and its loan proceeds accordingly may vary and may likely fluctuate due to market conditions, risk management, daily trading price of the Shares at time of funding and changes in Borrower or Guarantor qualification, and Lender may issue future Closing Statements without requiring the signature of Borrower and Guarantor.

Borrower and Guarantor shall note that the Custodian Management Charge for the first three (3) months has been deducted from loan proceeds. Tranche 1 Closing Statement includes a Custodian Management Charge adjustment in favor of Borrower which is reversed in Tranche 2 Closing Statement, and the Custodian Management Charge for the initial period is deducted from loan proceeds in Tranche 2 Closing Statement. For each subsequent quarterly period, the Custodian Management Charge in the amount of USD$110,011.11 must be remitted by Borrower to Lender at least fourteen (14) days prior to each quarterly anniversary of the Effective Date of the SLA without further notice or repeated demand.

Borrower and Guarantor shall additionally note that quarterly interest shall be due and payable in advance on the 1st of the month every three (3) months, with interest accruing from the date Cash Collateral is deposited by Lender to Borrower's account.

Borrower and Guarantor hereby acknowledge and agree that Lender reserves the right to deduct from loan proceeds foreign exchange and banking costs incurred by Lender in funding the Loan Transaction which is denominated in Mexican Pesos, and any such costs may be applied retroactively after Lender determines costs incurred.

All Parties hereby agree that Weiser Global Capital Markets Ltd. ("Weiser"), as the agreed-upon Depository Broker, is not a party to the transaction between Lender, Borrower and Guarantor, nor does Weiser take responsibility or assume any liability in coordinating, structuring or overseeing any aspect of the underlying Loan Transaction and merely acts as a custodian over the collateral Shares. Any and all arrangements between Lender, Borrower and Guarantor have been negotiated and determined by and between their respective counsel.

Borrower and Guarantor expressly agree that the SLA and all of its provisions, warranties, rights, terms and conditions are valid and in full legal force and effect as of the date of this Closing Statement and there are no material changes.

Borrower and Guarantor expressly agree that failure to remedy any event of default or other deficiency in this Loan Transaction, other loan facilities between the Parties or any other loan or debt facility of the Borrower or Guarantor ("All Facilities") will constitute a default of All Facilities between the Parties.

Borrower and Guarantor expressly represent that they are not subject to, part of nor the subject of any criminal investigation where the Pledged Collateral may be exposed to seizure or claim.



Borrower and Guarantor expressly represent that there has not been any material change to the Shares or the shares of the Issuer, Borrower or Guarantor which may undermine the value of the Pledged Collateral, and, to the best of Borrower's and Guarantor's knowledge, the Issuer of the Shares is not subject to any criminal investigation or misconduct and has timely filed all of its required reports with the stock exchange where Shares are traded.

Borrower and Guarantor expressly represent and agree to cooperate with the Lender, Depository Broker, Global Custodian and sub-Custodian and any third-party due diligence and compliance firm in furnishing any further required audited financial records and due diligence.

Borrower and Guarantor expressly represent that they are currently registered, domiciled and in Good Standing in their corporate home jurisdiction, have not declared bankruptcy in the last seven (7) years and are fully solvent.

Borrower and Guarantor expressly represent that the pledged securities as above stated are not restricted in any way, are free trading and that neither Borrower nor Guarantor have received any notice of any kind from any stock exchange or any broker-dealer which has informed or advised Borrower or Guarantor that the pledged securities are in any way restricted, under a special watch, are on a special hotlist or stop trade limitation and, further that Borrower and Guarantor are not aware of any such notice or alert that any issued security of the Issuer of the Shares is limited or restricted in trading in any way.

Borrower and Guarantor expressly represent that no representations or warranties of any kind have been made by Lender to Borrower or Guarantor, other than those in the written and executed loan agreement by and between the Parties to this Loan Transaction.

Borrower and Guarantor hereby acknowledge, understand and agree that in the event of any inconsistency or conflict with the signed and executed SLA, this Closing Statement shall be the final and controlling document, and the protective covenants and provisions of this Closing Statement shall prevail over any previous document, and furthermore, Borrower and Guarantor expressly agree that in section II.3(b) of the SLA the reference to "every four months" is replaced by "every three months" and in section VI.3(b) of the SLA the reference to "Hereinafter a new FMP" is replaced by "Thereafter a new Margin Call threshold" and the reference to "original FMP" is replaced by "original Margin Call threshold".

Borrower and Guarantor expressly represent that they are not a resident or citizen of the United States of America, that they to the best of their knowledge are not subject to the Securities and Exchange Acts of 1933 and 1934 and are not a subject of any investigation or action by the United States Securities & Exchange Commission or any other regulatory or enforcement agency of the United States of America.

Borrower and Guarantor hereby acknowledge, understand and agree that failure of Lender to exercise any right, power or remedy provided under this Closing Statement or the SLA or otherwise available in respect hereof at law or in equity, or to insist upon compliance by any party hereto with its obligations hereunder, and any custom or practice of the parties at



variance with the terms hereof, shall not constitute a waiver by Lender of its right to exercise any such or other right, power or remedy available to it at any time or to demand such compliance at any time in the future. At no time shall funding be construed to be a waiver of any kind including funding provided after an Event of Default. Lender reserves the right to continue funding and invoke an Event of Default at any time in the future. All of Lender's rights are reserved.

Borrower and Guarantor expressly represent that at all times they have been represented by competent legal counsel and that Borrower and Guarantor have had ample opportunity to consult separately with independent legal counsel in order to make an informed decision whether to agree to execute the SLA and this Closing Statement.

Borrower and Guarantor expressly represent that this Closing Statement has not been modified, edited or altered in any way and expressly agree this Closing Statement cannot be modified except by written addendum thereto fully executed by the Parties herein.

Borrower and Guarantor further and expressly represent that they are Qualified/Professional Investors, have agreed to this Closing Statement and all of its representations, warranties, covenants and agreements herein contained of their own free will, based upon their independent judgment and upon the advice of competent independent legal counsel.

Borrower and Guarantor further and expressly understand that Lender's underwriting may change at any time up-until funding or during funding if such funding is in tranches and market conditions, changes in Pledged Collateral or deterioration of Borrower's or Guarantor's qualifying criteria, in Lenders sole discretion, warrant it. Borrower and Guarantor further understand and expressly agree that the Lock-Up Period for Prepayment of the Loan Transaction shall be extended to coincide with loan Maturity Date. Lender does not guarantee funding or voting rights and all funding is at Lenders sole discretion until disbursement.

Borrower and Guarantor are capable and willing to post margin when required to do so.

## I. LOAN PROCEEDS ACCOUNT INFORMATION:

| | |
|---|---|
| Institution's Name | Weiser Global Capital Markets Ltd. |
| Account Number | 200-804763 |
| Account Name | Corporacion RBS SA de CV |

## II. CASH & STOCK TOP UP ACCOUNT INFORMATION:

| | |
|---|---|
| Institution's Name | Weiser Global Capital Markets Ltd. |
| Account Number | 200-804765 |
| Account Name | Ricardo Benjamin Salinas Pliego |



## III. INTEREST, PRINCIPAL & FEE PAYMENT INFORMATION:

| | |
|---|---|
| Institution's Name | Weiser Global Capital Markets Ltd. |
| Account Number | 200-804586 |
| Account Name | Astor Interest Credit |

*NOTE: Depository Broker must be contacted to request internal transfer of funds from Borrower account.*

It is Borrower's and Guarantor's responsibility to notify Lender of transfers and confirm each transaction is processed by the receiving institution before any applicable due date.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*



IN WITNESS WHEREOF, the Parties hereto have caused this Closing Statement and Addendum to be duly executed as of the day and year written below. Each Party has consulted their respective legal counsel and agree to the terms written herein.

**BORROWER:** Corporacion RBS SA de CV

| | Ricardo Benjamin Salinas Pliego | September 17, 2021 |
|---|---|---|
| Signature | Name and Title | Date |

| | Eduardo Gonzalez Salceda Sanchez | |
|---|---|---|
| Seal | Witness | |
| | Witness is only certifying Borrower's Signature | |

**GUARANTOR:** Ricardo Benjamin Salinas Pliego

| | Ricardo Benjamin Salinas Pliego | September 17, 2021 |
|---|---|---|
| Signature | Name and Title | Date |

| | Eduardo Gonzalez Salceda Sanchez | |
|---|---|---|
| Seal | Witness | |
| | Witness is only certifying Guarantor's Signature | |

**LENDER:** Astor Asset Management 3 Limited

| | Mariia Mitsa, Managing Member | 09/13/2021 |
|---|---|---|
| Signature | Name and Title | Date |

