# EXHIBIT 7

## NOTICE TO BORROWER AND GUARANTOR

PLEASE TAKE NOTICE THAT A COLLATERALIZED, SECURED FIXED INSTRUMENT BASED LOAN TRANSACTION MAY INVOLVE SUBSTANTIAL ELEMENTS OF RISK THAT INVOLVE SHARES IN PUBLICLY TRADED SECURITIES WHICH MAY BE SUBJECT TO ADVERSE CREDIT RISKS, ADVERSE TAX RISKS AND/OR ADVERSE MARKET CONDITIONS THAT COULD NEGATIVELY IMPACT ALL OR PART OF THE COLLATERALIZED, SECURED, FIXED INSTRUMENT LOAN TRANSACTION. ALWAYS CONSULT WITH A REGISTERED INVESTMENT ADVISOR AND YOUR ATTORNEYS BEFORE INVESTING OR ENGAGING IN MARGIN BORROWING.

THIS CLOSING STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY ANY SECURITIES REGULATORS OR COMMISSIONS OR SECURITIES EXCHANGES IN ANY JURISDICTION (THE "SECURITIES REGULATORS").

NO SECURITIES REGULATORS HAVE ISSUED A RULING ON EITHER THE ACCURACY OR LEGAL SUFFICIENCY OF THIS CLOSING STATEMENT NOR OF THE UNDERLYING COLLATERALIZED, SECURED, FIXED INSTRUMENT LOAN TRANSACTION (THE "TRANSACTION") THAT THIS CLOSING STATEMENT PROMULGATES.

NEITHER THIS CLOSING STATEMENT NOR THE UNDERLYING TRANSACTION IS INTENDED IN ANY WAY TO BE A PUBLIC OFFERING, BUT INSTEAD IS A CLOSING FOR AN UNDERLYING COLLATERALIZED, SECURED, FIXED-INSTRUMENT FINANCING TRANSACTION TO BE OFFERED TO AND AS AGREED TO BY QUALIFIED INVESTORS, AS DEFINED BY SECURITIES REGULATORS AND/OR BY ANY APPLICABLE SECURITIES ACT. MARGIN BORROWING ENTAILS RISK, AND THE BORROWER AND GUARANTOR ARE AWARE OF SUCH RISKS AND HAVE EFFECTIVE MANAGEMENT STRATEGIES IN PLACE TO REDUCE OR ELIMINATE RISK AS A RESULT OF MARGIN BORROWING.

LENDER INTENDS TO FUND THE BORROWER IN ACCORDANCE WITH THE STOCK LOAN AGREEMENT EXECUTED BETWEEN BORROWER, GUARANTOR AND LENDER. LENDER WILL AT ALL TIMES MAINTAIN ITS ABILITY TO RETURN AN EQUIVALENT NUMBER OF ISSUER SECURITIES VALUED AT FAIR MARKET VALUE. THE FUNDING WILL CONSIST OF MULTIPLE TRANCHES WITH DURATION BETWEEN EACH TRANCHE AND THE FUNDING AMOUNT DEPENDENT ON MARKET CONDITIONS AND LENDERS SOLE DISCRETION.  ALL CALCULATIONS SHOULD BE VERIFIED BY BORROWER AND GUARANTOR UPON RECEIPT AS LENDER TAKES NO RESPONSIBILITY FOR ERRORS. CALCULATIONS INCLUDE COSTS, DEDUCTIONS, EXPENSES AND ADJUSTMENTS RECITED.






# CLOSING STATEMENT

**Gross Proceeds: MXN 532,484,020.62**
**Funds Settled (Net): MXN 510,000,000.00**
**Tranche 3**
**February 4, 2022**

**WHEREAS**, Astor Asset Management 3 Limited ("Lender"), Corporacion RBS SA de CV ("Borrower") and Ricardo Benjamin Salinas Pliego ("Guarantor"), collectively herein known as the "Parties", have entered into an agreed upon collateralized, secured fixed instrument-based loan transaction (the "Loan Transaction"); and

**WHEREAS**, the Parties entered into an agreed upon and fully executed Stock Loan Agreement (the "SLA") established as of July 28, 2021 to facilitate and collateralize the agreed upon Loan Transaction by and between the Parties; and

**WHEREAS**, on the date of July 30, 2021 ("Confirmation Day") Lender received the required confirmation from the Depository Broker that three million six hundred thousand (3,600,000) shares (the "Shares") of Grupo Elektra, S.A.B. de C.V., ELEKTRA:MX, (the "Issuer") posted to Guarantor's account at the Depository Broker (the "Pledged Collateral"), pursuant to the SLA; and

**WHEREAS**, the Loan-to-Value ratio (the "LTV") of the Loan was originally set in the SLA at fifty-five percent (55%) of the Shares' Fair Market Value (the "FMV"), it has been mutually agreed that the LTV of the Loan is hereby adjusted to forty-five percent (45%); and

**WHEREAS**, the Approved Loan Amount is hereby being reduced to Two Billion Sixty Eight Million Mexican Pesos (MXN 2,068,000,000.00) with an equivalent number of shares to be collateralized and any remaining uncollateralized shares to be returned to Borrower upon successful competition of funding; and

**WHEREAS**, acceptance of funds constitutes Borrower's and Guarantor's further recognition and acknowledgment of all terms and conditions herein; and

**WHEREAS**, the Loan Transaction proceeds as more fully stated herein in this Closing Statement, have been or shall imminently be transferred to Borrower upon or post the Tranche Date listed herein, in accordance with the SLA and this Closing Statement; and

**WHEREAS**, as per the SLA, the Shares have been pledged to Lender and shall be collateralized by Lender in order to release the Loan Transaction proceeds and to provide the funding facility in accordance with the SLA, which has become legally binding and in full force and effect by and between the Parties; and

**NOW, THEREFORE**, in consideration of the premises and of the representations, warranties, covenants and agreements herein contained, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:



## STATEMENT OF TRANCHE PROCEEDS

| | | | |
|---|---|---:|---|
| Tranche Proceeds (Gross): | ₱ | 532,484,020.62 | MXN |
| Deductions: | | | |
| Custodian Transfer Charge: | ₱ | 6,509,500.00 | MXN |
| Maintenance Fee: 0.0625% per quarter[1] | ₱ | - | MXN |
| Origination Fee: 1%[2] | ₱ | 2,662,420.10 | MXN |
| Foreign Exchange & Bank Fees: 2.5% | ₱ | 13,312,100.52 | MXN |
| Legal Expenses: | ₱ | - | MXN |
| Quarterly Advance Interest: 1.15% per annum | | TBD | |
| **Net Settled Funds:** | ₱ | **510,000,000.00** | **MXN** |

## FUNDING PROCEEDS AND COLLATERALIZATION RECORD

| | LTV | FMP (MXN) | Facility (MXN) | Shares Pledged | Avg. Volume[3] |
|---|---|---|---|---|---|
| Master Facility | 45% | ₱1,618.23 | ₱2,621,532,600.00 | 3,600,000 | 82,368 |
| Current FMP (USD): | | ₱1,353.54 | | | |

| Tranche No. | Tranche Date | Price (MXN) | Gross Funding Amount (MXN) | Collaterized Shares | Net Funds after Deductions (MXN) |
|---|---|---|---|---|---|
| 1 | 9-Aug-21 | ₱1,618.23 | ₱ 501,591,693.09 | 563,569 | ₱ 500,000,000.00 |
| 2 | 17-Sep-21 | ₱1,599.19 | ₱ 327,497,030.23 | 372,344 | ₱ 300,000,000.00 |
| 3[4] | 7-Feb-22 | ₱1,353.54 | ₱ 532,484,020.62 | 1,299,497 | ₱ 510,000,000.00 |
| 4 | | | | | |
| 5 | | | | | |

| | | | |
|---|---|---|---|
| **Total Funding to Date:** | ₱1,361,572,743.94 | | ₱1,310,000,000.00 |
| **Current Value of Pledged Shares:** | ₱4,872,744,000.00 | | |
| **Current Value of Uncollateralized Shares:** | ₱1,847,027,148.60 | 1,364,590 | |
| **Balance due Borrower at Tranche Price:** | ₱ 831,162,216.87 | | |

1. *Maintenance Fee in the exact same amount as initial charge is due in advance every three months; future payments must be paid by Borrower to Lender in advance every three months on the quarterly anniversary of the Tranche 1 Closing Statement for the term of the Loan Transaction without further notice or repeated demand.*

2. *Pursuant to the SLA, 50% of the Origination Fee applicable to each tranche is deducted from the Loan Principal Amount. The balance of the 1% Origination Fee in the exact same amount as the initial deduction listed in each Closing Statement is due without further notice or repeated demand on the first annual anniversary of each respective Tranche Date.*

3. *Daily Average Volume for one month preceding collateral settlement per Yahoo Finance data for June 30, 2021 to July 29, 2021.*

4. *Collateralized shares are adjusted to reflect reduction of Loan to 45% LTV.*



Borrower and Guarantor hereby acknowledge, understand and agree that the current FMV of the shares, as stated above, is the FMV of the shares at the time of funding and is for this tranche, as per the Schedules in this Closing Statement.

Borrower and Guarantor further hereby acknowledge, understand and agree that each subsequent tranche of the Loan Principal Amount and its loan proceeds accordingly may vary and may likely fluctuate due to market conditions, risk management, daily trading price of the Shares at time of funding and changes in Borrower or Guarantor qualification, and Lender may issue future Closing Statements without requiring the signature of Borrower and Guarantor.

Borrower and Guarantor shall note that the Custodian Management Charge for the first three (3) months has been deducted from loan proceeds. Borrower is responsible for these and all Custodian and third-party fees related to custody. Tranche 1 Closing Statement includes a Custodian Management Charge adjustment in favor of Borrower which is reversed in Tranche 2 Closing Statement, and the Custodian Management Charge for the initial period is deducted from loan proceeds in Tranche 2 Closing Statement. For each subsequent quarterly period, the Custodian Management Charge in the amount of USD$110,011.11 must be remitted by Borrower to Lender at least fourteen (14) days prior to each quarterly anniversary of the Effective Date of the SLA without further notice or repeated demand.

Borrower and Guarantor shall additionally note that quarterly interest shall be due and payable in advance on the 1st of the month every three (3) months, with interest accruing from the date Cash Collateral is deposited by Lender to Borrower's account.

Borrower and Guarantor hereby acknowledge and agree that Lender reserves the right to deduct from loan proceeds foreign exchange and banking costs incurred by Lender in funding the Loan Transaction which is denominated in Mexican Pesos, and any such costs may be applied retroactively after Lender determines costs incurred.

All Parties hereby agree that Tavira Securities Limited ("Tavira"), as the agreed-upon Depository Broker, is not a party to the transaction between Lender, Borrower and Guarantor, nor does Tavira take responsibility or assume any liability in coordinating, structuring or overseeing any aspect of the underlying Loan Transaction and merely acts as a custodian over the collateral Shares. Any and all arrangements between Lender, Borrower and Guarantor have been negotiated and determined by and between their respective counsel.

Borrower and Guarantor expressly agree that the SLA and all of its provisions, warranties, rights, terms and conditions are valid and in full legal force and effect as of the date of this Closing Statement and there are no material changes.

Borrower and Guarantor expressly agree that failure to remedy any event of default or other deficiency in this Loan Transaction, other loan facilities between the Parties or any other loan or debt facility of the Borrower or Guarantor ("All Facilities") will constitute a default of All Facilities between the Parties.



Borrower and Guarantor expressly represent that they are not subject to, part of nor the subject of any criminal investigation where the Pledged Collateral may be exposed to seizure or claim.

Borrower and Guarantor expressly represent that there has not been any material change to the Shares or the shares of the Issuer, Borrower or Guarantor which may undermine the value of the Pledged Collateral, and, to the best of Borrower's and Guarantor's knowledge, the Issuer of the Shares is not subject to any criminal investigation or misconduct and has timely filed all of its required reports with the stock exchange where Shares are traded.

Borrower and Guarantor expressly represent and agree to cooperate with the Lender, Depository Broker, Global Custodian and sub-Custodian and any third-party due diligence and compliance firm in furnishing any further required audited financial records and due diligence.

Borrower and Guarantor expressly represent that they are currently registered, domiciled and in Good Standing in their corporate home jurisdiction, have not declared bankruptcy in the last seven (7) years and are fully solvent.

Borrower and Guarantor expressly represent that the pledged securities as above stated are not restricted in any way, are free trading and that neither Borrower nor Guarantor have received any notice of any kind from any stock exchange or any broker-dealer which has informed or advised Borrower or Guarantor that the pledged securities are in any way restricted, under a special watch, are on a special hotlist or stop trade limitation and, further that Borrower and Guarantor are not aware of any such notice or alert that any issued security of the Issuer of the Shares is limited or restricted in trading in any way.

Borrower and Guarantor expressly represent that no representations or warranties of any kind have been made by Lender to Borrower or Guarantor, other than those in the written and executed loan agreement by and between the Parties to this Loan Transaction.

Borrower and Guarantor hereby acknowledge, understand and agree that in the event of any inconsistency or conflict with the signed and executed SLA, this Closing Statement shall be the final and controlling document, and the protective covenants and provisions of this Closing Statement shall prevail over any previous document, and furthermore, Borrower and Guarantor expressly agree that in section II.3(b) of the SLA the reference to "every four months" is replaced by "every three months" and in section VI.3(b) of the SLA the reference to "Hereinafter a new FMP" is replaced by "Thereafter a new Margin Call threshold" and the reference to "original FMP" is replaced by "original Margin Call threshold".

Borrower and Guarantor expressly represent that they are not a resident or citizen of the United States of America, that they to the best of their knowledge are not subject to the Securities and Exchange Acts of 1933 and 1934 and are not a subject of any investigation or action by the United States Securities & Exchange Commission or any other regulatory or enforcement agency of the United States of America.

Borrower and Guarantor hereby acknowledge, understand and agree that failure of Lender to exercise any right, power or remedy provided under this Closing Statement or the SLA or



otherwise available in respect hereof at law or in equity, or to insist upon compliance by any party hereto with its obligations hereunder, and any custom or practice of the parties at variance with the terms hereof, shall not constitute a waiver by Lender of its right to exercise any such or other right, power or remedy available to it at any time or to demand such compliance at any time in the future. Lender's acceptance of late or partial payments remitted by Borrower or Borrower's tardy compliance with any term or provision of the SLA will not be a waiver of Lender's rights. At no time shall funding be construed to be a waiver of any kind including funding provided after an Event of Default. Lender reserves the right to continue funding and invoke an Event of Default at any time in the future. All of Lender's rights are reserved.

Borrower and Guarantor expressly represent that at all times they have been represented by competent legal counsel and that Borrower and Guarantor have had ample opportunity to consult separately with independent legal counsel in order to make an informed decision whether to agree to execute the SLA and this Closing Statement.

Borrower and Guarantor expressly represent that this Closing Statement has not been modified, edited or altered in any way and expressly agree this Closing Statement cannot be modified except by written addendum thereto fully executed by the Parties herein.

Borrower and Guarantor further and expressly represent that they are Qualified/Professional Investors, have agreed to this Closing Statement and all of its representations, warranties, covenants and agreements herein contained of their own free will, based upon their independent judgment and upon the advice of competent independent legal counsel.

Borrower and Guarantor further and expressly understand that Lender's underwriting may change at any time up-until funding or during funding if such funding is in tranches and market conditions, changes in Pledged Collateral or deterioration of Borrower's or Guarantor's qualifying criteria, in Lenders sole discretion, warrant it. Borrower and Guarantor further understand and expressly agree that the Lock-Up Period for Prepayment of the Loan Transaction shall be extended to coincide with loan Maturity Date. Lender does not guarantee funding or voting rights and all funding is at Lenders sole discretion until disbursement.

Borrower and Guarantor are capable and willing to post margin when required to do so.

## I.  CASH & STOCK TOP UP ACCOUNT INFORMATION:

| | |
|---|---|
| Institution's Name | Tavira Securities Limited |
| Account Number | TMC-63 |
| Account Name | Ricardo Benjamin Salinas Pliego |



## II. INTEREST, PRINCIPAL & FEE PAYMENT INFORMATION:

| | |
|---|---|
| Beneficiary | Sierra Universal Corp |
| Beneficiary Account Number | 898123822869 |
| Beneficiary Bank | Bank of America |
| Beneficiary Bank ABA | 026 009 593 |
| Beneficiary Bank SWIFT | BOFAUS6S |
| Reference | Astor interest payment from RBS SA de CV |

It is Borrower's and Guarantor's responsibility to notify Lender of transfers and confirm each transaction is processed by the receiving institution before any applicable due date.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*



IN WITNESS WHEREOF, the Parties hereto have caused this Closing Statement and Addendum to be duly executed as of the day and year written below. Each Party has consulted their respective legal counsel and agree to the terms written herein.

**BORROWER:** Corporacion RBS SA de CV

_____    <u>Ricardo  Salinas  Pliego</u>    <u>16/02/22</u>
Signature                    Name and Title                    Date


_____    _____
Seal                         Witness
                             Witness is only certifying Borrower's Signature


**GUARANTOR:** Ricardo Benjamin Salinas Pliego

_____    <u>Ricardo  Salinas  Pliego</u>    <u>16/02/22</u>
Signature                    Name and Title                    Date


_____    _____
Seal                         Witness
                             Witness is only certifying Guarantor's Signature


**LENDER:** Astor Asset Management 3 Limited

_____    **Mariia Mitsa, Managing Member**    16/02/2022
Signature                    Name and Title                    Date



# EXHIBIT 8

## NOTICE TO BORROWER AND GUARANTOR

PLEASE TAKE NOTICE THAT A COLLATERALIZED, SECURED FIXED INSTRUMENT BASED LOAN TRANSACTION MAY INVOLVE SUBSTANTIAL ELEMENTS OF RISK THAT INVOLVE SHARES IN PUBLICLY TRADED SECURITIES WHICH MAY BE SUBJECT TO ADVERSE CREDIT RISKS, ADVERSE TAX RISKS AND/OR ADVERSE MARKET CONDITIONS THAT COULD NEGATIVELY IMPACT ALL OR PART OF THE COLLATERALIZED, SECURED, FIXED INSTRUMENT LOAN TRANSACTION. ALWAYS CONSULT WITH A REGISTERED INVESTMENT ADVISOR AND YOUR ATTORNEYS BEFORE INVESTING OR ENGAGING IN MARGIN BORROWING.

THIS CLOSING STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY ANY SECURITIES REGULATORS OR COMMISSIONS OR SECURITIES EXCHANGES IN ANY JURISDICTION (THE "SECURITIES REGULATORS").

NO SECURITIES REGULATORS HAVE ISSUED A RULING ON EITHER THE ACCURACY OR LEGAL SUFFICIENCY OF THIS CLOSING STATEMENT NOR OF THE UNDERLYING COLLATERALIZED, SECURED, FIXED INSTRUMENT LOAN TRANSACTION (THE "TRANSACTION") THAT THIS CLOSING STATEMENT PROMULGATES.

NEITHER THIS CLOSING STATEMENT NOR THE UNDERLYING TRANSACTION IS INTENDED IN ANY WAY TO BE A PUBLIC OFFERING, BUT INSTEAD IS A CLOSING FOR AN UNDERLYING COLLATERALIZED, SECURED, FIXED-INSTRUMENT FINANCING TRANSACTION TO BE OFFERED TO AND AS AGREED TO BY QUALIFIED INVESTORS, AS DEFINED BY SECURITIES REGULATORS AND/OR BY ANY APPLICABLE SECURITIES ACT. MARGIN BORROWING ENTAILS RISK, AND THE BORROWER AND GUARANTOR ARE AWARE OF SUCH RISKS AND HAVE EFFECTIVE MANAGEMENT STRATEGIES IN PLACE TO REDUCE OR ELIMINATE RISK AS A RESULT OF MARGIN BORROWING.

LENDER INTENDS TO FUND THE BORROWER IN ACCORDANCE WITH THE STOCK LOAN AGREEMENT EXECUTED BETWEEN BORROWER, GUARANTOR AND LENDER. LENDER WILL AT ALL TIMES MAINTAIN ITS ABILITY TO RETURN AN EQUIVALENT NUMBER OF ISSUER SECURITIES VALUED AT FAIR MARKET VALUE. THE FUNDING WILL CONSIST OF MULTIPLE TRANCHES WITH DURATION BETWEEN EACH TRANCHE AND THE FUNDING AMOUNT DEPENDENT ON MARKET CONDITIONS AND LENDERS SOLE DISCRETION.  ALL CALCULATIONS SHOULD BE VERIFIED BY BORROWER AND GUARANTOR UPON RECEIPT AS LENDER TAKES NO RESPONSIBILITY FOR ERRORS. CALCULATIONS INCLUDE COSTS, DEDUCTIONS, EXPENSES AND ADJUSTMENTS RECITED.



# CLOSING STATEMENT

**Gross Proceeds: MXN 613,000,000.00**
**Funds Settled (Net): MXN 592,871,767.12**
**Tranche 4**
**June 22, 2022**

**WHEREAS,** Astor Asset Management 3 Limited ("Lender"), Corporacion RBS SA de CV ("Borrower") and Ricardo Benjamin Salinas Pliego ("Guarantor"), collectively herein known as the "Parties", have entered into an agreed upon collateralized, secured fixed instrument-based loan transaction (the "Loan Transaction"); and

**WHEREAS,** the Parties entered into an agreed upon and fully executed Stock Loan Agreement (the "SLA") established as of July 28, 2021 to facilitate and collateralize the agreed upon Loan Transaction by and between the Parties; and

**WHEREAS,** the Parties subsequently entered into the Addendum to SLA dated July 31, 2021 and the Second Addendum to SLA dated December 6, 2021 and a Third Addendum to SLA dated June 13, 2022, each of which remains in full force and effect to date; and

**WHEREAS,** on the date of July 30, 2021 ("Confirmation Day") Lender received the required confirmation from the Depository Broker that three million six hundred thousand (3,600,000) shares (the "Shares") of Grupo Elektra, S.A.B. de C.V., ELEKTRA MX, (the "Issuer") posted to Guarantor's account at Weiser Global Capital Markets, the Depository Broker (the "Pledged Collateral"), pursuant to the SLA; and

**WHEREAS,** on the date of June 22, 2022 ("Confirmation Day") Lender received the required confirmation from the Depository Broker that one million four hundred thirty-one thousand seven hundred (1,431,700) shares (the "Shares") of Grupo Elektra, S.A.B. de C.V., ELEKTRA:MX, (the "Issuer") were posted to Guarantor's account at the Depository Broker (the "Pledged Collateral"), pursuant to the SLA; and

**WHEREAS,** the Loan-to-Value ratio (the "LTV") of the Loan was originally set in the SLA at fifty-five percent (55%) of the Shares' Fair Market Value (the "FMV"), subsequently for Tranche 3 reduced to forty-five percent (45%), and it has been mutually agreed that the LTV of the Loan is hereby adjusted to thirty-five percent (35%); and

**WHEREAS,** the Approved Loan Amount is hereby being reduced to One Billion Nine Hundred Seventy Four Million Five Hundred Seventy Two Thousand Seven Hundred Forty Three Mexican Pesos and Ninety Four Centavos (MXN 1,974,572,743.94), funding completed, the Term of the Loan has now commenced upon completion of funding and all shares are collateralized; and

**WHEREAS,** acceptance of funds constitutes Borrower's and Guarantor's further recognition and acknowledgment of all terms and conditions herein; and

**WHEREAS,** the Loan Transaction proceeds as more fully stated herein in this Closing Statement, have been or shall imminently be transferred to Borrower upon or post the Tranche Date listed herein, in accordance with the SLA and this Closing Statement; and



**WHEREAS**, as per the SLA, the Shares have been pledged to Lender and shall be collateralized by Lender in order to release the Loan Transaction proceeds and to provide the funding facility in accordance with the SLA, which has become legally binding and in full force and effect by and between the Parties; and

**NOW, THEREFORE**, in consideration of the premises and of the representations, warranties, covenants and agreements herein contained, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

## STATEMENT OF TRANCHE PROCEEDS

| | | |
|---|---|---|
| Tranche Proceeds (Gross): | ₱ 613,000,000.00 | MXN |
| **Deductions:** | | |
| Custodian Management Charge: 0.0375% per quarter | ₱ | MXN |
| Maintenance Fee: 0.0625% per quarter[1] | ₱ | |
| Origination Fee: 1%[2] | ₱ 3,085,000.00 | MXN |
| Foreign Exchange & Bank Fees 2.5% | ₱ 1,585,000.00 | MXN |
| Legal Expenses: | ₱ | |
| Quarterly Advance Interest: 1.15% per annum | ₱ 1,739,233.88 | MXN |
| **Net Settled Funds:** | ₱ 592,871,767.12 | MXN |

### FUNDING PROCEEDS AND COLLATERALIZATION RECORD

| | LTV | MP (MXN) | Facility (MXN) | Shares (Pledged) | Avg. Volume |
|---|---|---|---|---|---|
| Master Facility | 35% | ₱1,618.23 | ₱1,974,572,743.94 | 3,600,000 | 58,419 |
| Current FMP (MXN): | | ₱1,150.00 | | 1,431,700 | |

| Tranche No. | Date | Price (MXN) | | S/bc Funding Amount (MXN) | Collateralized Shares | | Net Proceeds Deductions (SD) |
|---|---|---|---|---|---|---|---|
| 1 | 9-Aug-21 | ₱ 1,618.23 | ₱ | 501,591,693.09 | 563,569 | ₱ | 500,000,000.00 |
| 2 | 17-Sep-21 | ₱ 1,599.19 | ₱ | 327,497,030.23 | 372,344 | ₱ | 300,000,000.00 |
| 3[4] | 7-Feb-22 | ₱ 1,353.54 | ₱ | 532,484,020.62 | 1,299,497 | ₱ | 510,000,000.00 |
| 4[5] | 22-Jun-22 | ₱ 1,150.00 | ₱ | 613,000,000.00 | 2,796,290 | ₱ | 592,871,767.12 |

| | | |
|---|---|---|
| **Total Funding to Date:** | ₱ | 1,974,572,743.94 |
| **Current FMV of Collateralized Shares:** | ₱ | 5,786,455,000.00 |
| **Current FMV of Uncollateralized Shares:** | ₱ | - |

---

1. *Maintenance Fee in the exact same amount as initial charge is due in advance every three months; future payments must be paid by Borrower to Lender in advance every three months on the quarterly anniversary of the Tranche 1 Closing Statement for the term of the Loan Transaction without further notice or repeated demand.*

2. *Pursuant to the SLA, 50% of the Origination Fee applicable to each tranche is deducted from the Loan Principal Amount. The*



balance of the 1% Origination Fee in the exact same amount as the initial deduction listed in each Closing Statement is due without further notice or repeated demand on the first annual anniversary of each respective Tranche Date.

3. Daily Average Volume for one month preceding collateral settlement per Yahoo Finance data for June 30, 2021 to July 29, 2021.

4. Collateralized shares are adjusted to reflect reduction of Loan to 45% LTV.

5. Collateralized shares reflect reduction of Loan to 35% LTV and current tranche price.

### REMAINDER OF PAGE INTENTIONALLY LEFT BLANK



Borrower and Guarantor hereby acknowledge, understand and agree that the current FMV of the shares, as stated above, is the FMV of the shares at the time of funding and is for this tranche, as per the Schedules in this Closing Statement.

Borrower and Guarantor further hereby acknowledge, understand and agree that each subsequent tranche of the Loan Principal Amount and its loan proceeds accordingly may vary and may likely fluctuate due to market conditions, risk management, daily trading price of the Shares at time of funding and changes in Borrower or Guarantor qualification, and Lender may issue future Closing Statements without requiring the signature of Borrower and Guarantor.

Borrower and Guarantor shall note that the Custodian Management Charge for the first three (3) months has been deducted from loan proceeds. Borrower is responsible for these and all Custodian and third-party fees related to custody. Tranche 1 Closing Statement includes a Custodian Management Charge adjustment in favor of Borrower which is reversed in Tranche 2 Closing Statement, and the Custodian Management Charge for the initial period is deducted from loan proceeds in Tranche 2 Closing Statement. For each subsequent quarterly period, the Custodian Management Charge in the amount of USD$110,011.11 must be remitted by Borrower to Lender at least fourteen (14) days prior to each quarterly anniversary of the Effective Date of the SLA without further notice or repeated demand.

Borrower and Guarantor shall additionally note that quarterly interest shall be due and payable in advance on the 1st of the month every three (3) months, with interest accruing from the date Cash Collateral is deposited by Lender to Borrower's account.

Borrower and Guarantor hereby acknowledge and agree that Lender reserves the right to deduct from loan proceeds foreign exchange and banking costs incurred by Lender in funding the Loan Transaction which is denominated in Mexican Pesos, and any such costs may be applied retroactively after Lender determines costs incurred.

All Parties hereby agree that Tavira Securities Limited ("Tavira"), as the agreed-upon Depository Broker, is not a party to the transaction between Lender, Borrower and Guarantor, nor does Tavira take responsibility or assume any liability in coordinating, structuring or overseeing any aspect of the underlying Loan Transaction and merely acts as a custodian over the collateral Shares. Any and all arrangements between Lender, Borrower and Guarantor have been negotiated and determined by and between their respective counsel.

Borrower and Guarantor expressly agree that the SLA and all of its provisions, warranties, rights, terms and conditions are valid and in full legal force and effect as of the date of this Closing Statement and there are no material changes.

Borrower and Guarantor expressly agree that failure to remedy any event of default or other deficiency in this Loan Transaction, other loan facilities between the Parties or any other loan or debt facility of the Borrower or Guarantor ("All Facilities") will constitute a default of All Facilities between the Parties.



Borrower and Guarantor expressly represent that they are not subject to, part of nor the subject of any criminal investigation where the Pledged Collateral may be exposed to seizure or claim.

Borrower and Guarantor expressly represent that there has not been any material change to the Shares or the shares of the Issuer, Borrower or Guarantor which may undermine the value of the Pledged Collateral, and, to the best of Borrower's and Guarantor's knowledge, the Issuer of the Shares is not subject to any criminal investigation or misconduct and has timely filed all of its required reports with the stock exchange where Shares are traded.

Borrower and Guarantor expressly represent and agree to cooperate with the Lender, Depository Broker, Global Custodian and sub-Custodian and any third-party due diligence and compliance firm in furnishing any further required audited financial records and due diligence.

Borrower and Guarantor expressly represent that they are currently registered, domiciled and in Good Standing in their corporate home jurisdiction, have not declared bankruptcy in the last seven (7) years and are fully solvent.

Borrower and Guarantor expressly represent that the pledged securities as above stated are not restricted in any way, are free trading and that neither Borrower nor Guarantor have received any notice of any kind from any stock exchange or any broker-dealer which has informed or advised Borrower or Guarantor that the pledged securities are in any way restricted, under a special watch, are on a special hotlist or stop trade limitation and, further that Borrower and Guarantor are not aware of any such notice or alert that any issued security of the Issuer of the Shares is limited or restricted in trading in any way.

Borrower and Guarantor expressly represent that no representations or warranties of any kind have been made by Lender to Borrower or Guarantor, other than those in the written and executed loan agreement by and between the Parties to this Loan Transaction.

Borrower and Guarantor hereby acknowledge, understand and agree that in the event of any inconsistency or conflict with the signed and executed SLA, this Closing Statement shall be the final and controlling document, and the protective covenants and provisions of this Closing Statement shall prevail over any previous document, and furthermore, Borrower and Guarantor expressly agree that in section II.3(b) of the SLA the reference to "every four months" is replaced by "every three months" and in section VI.3(b) of the SLA the reference to "Hereinafter a new FMP" is replaced by "Thereafter a new Margin Call threshold" and the reference to "original FMP" is replaced by "original Margin Call threshold".

Borrower and Guarantor expressly represent that they are not a resident or citizen of the United States of America, that they to the best of their knowledge are not subject to the Securities and Exchange Acts of 1933 and 1934 and are not a subject of any investigation or action by the United States Securities & Exchange Commission or any other regulatory or enforcement agency of the United States of America.

Borrower and Guarantor hereby acknowledge, understand and agree that failure of Lender to exercise any right, power or remedy provided under this Closing Statement or the SLA or



otherwise available in respect hereof at law or in equity, or to insist upon compliance by any party hereto with its obligations hereunder, and any custom or practice of the parties at variance with the terms hereof, shall not constitute a waiver by Lender of its right to exercise any such or other right, power or remedy available to it at any time or to demand such compliance at any time in the future. Lender's acceptance of late or partial payments remitted by Borrower or Borrower's tardy compliance with any term or provision of the SLA will not be a waiver of Lender's rights. At no time shall funding be construed to be a waiver of any kind including funding provided after an Event of Default. Lender reserves the right to continue funding and invoke an Event of Default at any time in the future. All of Lender's rights are reserved.

Borrower and Guarantor expressly represent that at all times they have been represented by competent legal counsel and that Borrower and Guarantor have had ample opportunity to consult separately with independent legal counsel in order to make an informed decision whether to agree to execute the SLA and this Closing Statement.

Borrower and Guarantor expressly represent that this Closing Statement has not been modified, edited or altered in any way and expressly agree this Closing Statement cannot be modified except by written addendum thereto fully executed by the Parties herein.

Borrower and Guarantor further and expressly represent that they are Qualified/Professional Investors, have agreed to this Closing Statement and all of its representations, warranties, covenants and agreements herein contained of their own free will, based upon their independent judgment and upon the advice of competent independent legal counsel.

Borrower and Guarantor further and expressly understand that Lender's underwriting may change at any time up-until funding or during funding if such funding is in tranches and market conditions, changes in Pledged Collateral or deterioration of Borrower's or Guarantor's qualifying criteria, in Lenders sole discretion, warrant it. Borrower and Guarantor further understand and expressly agree that the Lock-Up Period for Prepayment of the Loan Transaction shall be extended to coincide with loan Maturity Date. Lender does not guarantee funding or voting rights and all funding is at Lenders sole discretion until disbursement.

Borrower and Guarantor are capable and willing to post margin when required to do so.

## I. CASH & STOCK TOP UP ACCOUNT INFORMATION:

| | |
|---|---|
| Institution's Name | Favira Securities Limited |
| Account Number | TMC-63 |
| Account Name | Ricardo Benjamin Salinas Pliego |



## II. INTEREST, PRINCIPAL & FEE PAYMENT INFORMATION:

| | |
|---|---|
| Beneficiary | Sierra Universal Corp |
| Beneficiary Account Number | 898123822869 |
| Beneficiary Bank | Bank of America |
| Beneficiary Bank ABA | 026 009 593 |
| Beneficiary Bank SWIFT | BOFAUS6S |
| Reference | Astor interest payment from RBS SA de CV |

It is Borrower's and Guarantor's responsibility to notify Lender of transfers and confirm each transaction is processed by the receiving institution before any applicable due date.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*



IN WITNESS WHEREOF, the Parties hereto have caused this Closing Statement and Addendum to be duly executed as of the day and year written below. Each Party has consulted their respective legal counsel and agree to the terms written herein.

**BORROWER:** Corporacion RBS SA de CV

_____    Ricardo Salinas Pliego    _____    27. 06. 2022
Signature                  Name and Title                                Date


_____    _____
Seal                       Witness
                           Witness is only certifying Borrower's Signature

**GUARANTOR:** Ricardo Benjamin Salinas Pliego

_____    Ricardo Salinas Pliego    _____    27.06.2022
Signature                  Name and Title                                Date


_____    _____
Seal                       Witness
                           Witness is only certifying Guarantor's Signature

**LENDER:** Astor Asset Management 3 Limited

_____    Maria Mitsa   Managing Member    June 27 2022
Signature                  Name and Title                   Date



## United Kingdom
20 MIDTOWN
20 PROCTER STREET,
LONDON, UK, WC1V 6NX

europe.inquiries@ astorassetgroup.com
**+44 2 0386 84 620**

## Australia
330 Collins Street,
level 14
Melbourne, Australia, 3000

oceania.inquiries@ astorassetgroup.com
**+613 8375 7172**

## Hong Kong
18 Westlands Road
Level 23
Hong Kong, Hong Kong

asia.inquiries@ astorassetgroup.com
**+852 800 964 226**

## Germany
Niederrad business district
LYONER STRASSE 14
FRANKFURT, GERMANY, 60528

europe.inquiries@ astorassetgroup.com
**+49 0800 1812772**

## Vietnam
65 Le Loi Street, Level 14,
Bem Nghe Ward
Ho Chi Minh City, Vietnam, District 1

asia.inquiries@ astorassetgroup.com
**+84 28 4458 1398**

## Singapore
Six Battery Road
30 Cecil Street Level 42
Singapore, Singapore 049909

asia.inquiries@ astorassetgroup.com
**+65 800 492 2419**

