
**Astor Capital Fund**

Event of Default, unjust enrichment, extreme remedy and right of redemption are hereby waived by the Borrower and Guarantor, and neither the Borrower nor Guarantor will assert any right or claim against the forfeited collateral transferred to Lender as a result of an incurable Event of Default. During the pendency of this Loan, neither the Borrower nor Guarantor will seek injunctive relief or interference from any court of law, regulatory body, **Transfer Agent, custodian,** sub-custodian, Depository Broker, central depository or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement or freeze the shares. Injunctive relief by Borrower or Guarantor or any interference by Borrower or Guarantor, central depository or regulatory agency shall be an immediate and an incurable Event of Default. Neither Borrower nor Guarantor will interfere in any way or challenge the validity or enforceability of this Agreement, and the same shall be a Breach thereof.

11. **Suitability.** Both Borrower and Guarantor have carefully considered, and have discussed with their own respective professional legal, tax and financial advisers the suitability of this Agreement and Investment Risk associated with it and have fully considered for purposes of this Loan the risks of this Investment, and understand that (i) this Loan is an Investment and is suitable only for an investor who is able to bear the economic consequences of losing its entire Investment, (ii) the margin loan backed by the Securities is a speculative Investment which involves a high degree of risk, (iii) that there is lack of predictability in final loan amount, (iv) potential forfeiture of the Collateral, (v) that there are various unforeseen financial implications, independent and dependent on actions of Borrower or Guarantor, including the fluctuating and final value of the Collateral, (vi) Guarantors inability to receive back the Collateral and its adverse value.

## V.    LENDER WARRANTIES AND REPRESENTATIONS

Lender represents and warrants to Borrower that:

1. **Best Efforts Approach.** Despite stock market volatility, erratic trading volume, and pricing fluctuations, best efforts will be employed by Lender to facilitate the funding of the Loan in its entirety for the full Approved Loan Amount, in accordance with this Agreement and as contemplated herein by both Parties. Lender will not act in bad faith at any time during the Term of the Loan.

2. **Cash Collateral.** The lender will deposit Cash Collateral into Borrowers designated account at the Depository Broker which shall coincide with Loan Principal Amount to be funded and released to Borrower at Closing upon execution of the Closing Statement.

3. **Dividend Distributions.** Lender will credit the Guarantor for any, and all dividends received or credited to the Lender. If dividends are not received or credited to the Guarantor's account at the Depository Broker, then Guarantor is not entitled to any to be credited. Lender shall credit Borrower for all dividends received on behalf of Guarantor if any, at Maturity of the loan to be subtracted from outstanding principal balance. No dividends will be credited to Borrower or Guarantor if the Issuer does not pay them to the Depository Broker for any reason whatsoever. Dividends may not be used to offset any sums due to Lender prior to Loan Maturity unless requested so in advance by Borrower and approved by Lender in writing.

4. **Dealing with Securities.**

 Astor Capital Fund

a) **The Borrower and Guarantor** acknowledge and agree that upon the transfer of the Pledged Collateral to the Depository Broker by the Guarantor, the subject Pledged Collateral will: (i) have been given value by the Lender for the use of the Pledged Collateral, for purpose of determining Fair Market Value ("FMV"), in establishing that the Lender has Lien and Encumbrance rights in the Pledged Collateral; (ii) including the power to transfer rights in such Pledged Collateral as may be contemplated by Lender, in accordance with the herein Agreement.

b) **During the Loan Term,** provided that there has not been an Event of Default, the Lender will not sell or short-sell the shares of the Pledged Collateral on any publicly traded securities exchange. However, upon the occurrence of an incurable Event of Default, the Lender reserves the right to dispose of the Collateral on any publicly traded securities exchange, but is not obligated in doing so.

c) **The Borrower acknowledges** and agrees that the Pledged Collateral will be utilized by Lender to assert its preferential Lien over it.

d) **The Lender will not** engage in short-selling the Pledge Collateral by borrowing the shares of same Issuer from any entity or person and later buying the shares in the same security, then returning the borrowed shares in an effort to make a profit.

e) **The Lender will not** engage in Front Running, by buying or selling ahead of arrival of the Pledged Collateral.

5. **Order of Payment.** Payments received from sale of Collateral upon Event of Default shall be applied in the following order: (i) firstly, to all outstanding Principal balance, interest and fees; (ii) second, to any costs and fees charged by Custodian to Lender; and (iii) lastly, to any excess proceeds of sale of Collateral to be returned to Guarantor. Notwithstanding the forgoing, in case of an incurable Event of Default, nothing contained herein shall obligate the Lender to maximize sales proceeds, sell at market, on any specific platform or exchange, or at any specific price, provide accountability on the forfeited Collateral or to qualify the return to Borrower or Guarantor remaining balance of any proceeds.

6. **Transfer of Securities.** The Lender will not transfer the securities to its own account unless an incurable Event of Default has taken place. Only upon an incurable Event of Default will Lender request the Depository Broker to transfer the securities in the Guarantor's account to Lender's sole control and custody in order to satisfy Obligations of Borrower and Guarantor.

7. **Funding Guarantee and Borrowers Remedy.** The Lender guarantees to begin funding the stated Loan and the Approved Loan Amount within one (1) Business Days from the Closing Date. If the Lender or the Depository Broker fails to release the stated funding partially or in full within the one (1) Business Days of Closing Date, then Borrower shall have the right to terminate this Agreement, provided that the shares were in fact delivered in full to effectuate the Approved Loan Amount, all of the conditions stipulated herein have been met, shares are not restricted, are free-trading and neither Borrower nor Guarantor interfered with the Depository Broker or central depository, trading of the Issuer shares were not halted and force majeure conditions did not interfere or prevent Lender from funding.

Should Lender fail to return to Guarantor the Pledged Collateral within five (5) Business Days of receipt of Pay-Off Amount, the Lender shall be liable to Guarantor for two (2) times the amount of the Pledged Collateral on deposit at the Depository Broker.

 Astor Capital Fund

**8. Voting Rights.** Lender represents that it will fully cooperate with the registered owner of the securities of Issuer in exercising its Voting Rights on issues brought by the Issuer before its shareholders and the Lender will either instruct the Depository Broker to vote on behalf of registered owner of the securities of Issuer, or the Lender will vote on registered owner's behalf in accordance with instructions issued by the registered owner. Should the registered owner request that Lender vote on behalf of the registered owner, the registered owner may assign in writing the Voting Rights to Lender and Lender will agree to accept such Voting Rights from the registered owner. However, in no event will the Lender be liable in any way to Borrower or Guarantor or any registered owner as a result of any voting action or inaction.

## VI.    CONDITIONS TO FUNDING; EVENTS OF DEFAULT; AND REMEDIES

**1. Conditions Precedent.** The obligation of the Lender to fund the Loan is subject to the fulfillment of the following conditions precedent to the satisfaction of Lender: (a) The delivery of duly executed Stock Loan Agreement, Closing Statement, Custodian Management Agreement (CMA); (b) that all matters, facts, representations, documentation, announcements, filings, due diligence, regulatory compliance, and instruments in connection with Pledged Collateral, Issuer, and the Loan have been met and are in form and substance satisfactory to Lender's compliance, underwriting team, Global Custodian and Intermediary Custodian, as well its counsel; (c) the delivery of the stock in electronic form to Lender's Depository Broker representing the Pledged Collateral; and (d) Guarantors transfer of Security Interest in the Collateral as a Pledge.

**2. Valid Transactions and Events of Default.** In order for the transaction to be completed to Maturity by the Borrower, the Borrower and Guarantor must fulfill in the performance of and observance of any covenant, representation, provision or agreement contained herein and not default in any other loan document or provision.

**3.** Borrower is obliged to remedy the following matters, if occurred, in order to avoid being in breach of this or any other loan Agreement:

a) Failure by Borrower or Guarantor to pay the interest and all applicable fees or charges when due as stipulated, or the Approved Loan Amount when due, or any other default in the performance of an obligation that is not cured within the applicable Cure Period;

b) If the Collateral has fallen to less than seventy percent (70%) of the Fair Market Price ("FMP") utilized to compute the Loan Amount published by the average of the closing price on three (3) Business Days by the securities exchange (the "Margin-Call"). If this occurs, then the Borrower will, within five (5) Business Days and without further demand, automatically transfer to the Depository Broker a top-up of shares or cash equal to twenty percent (20%) more than the FMV and cure the deficiency. Hereinafter a new FMP is established at seventy-five percent (75%) of the original FMP. There will not be opportunity to cure if the Pledged Collateral falls by more than fifty percent (50%) of FMP as the Lender will sell the securities to satisfy the Loan Obligations and terminate this Agreement with no further recourse to Borrower;

c) If the class of securities provided as Pledged Collateral is delisted or trading is halted for five (5) or more Business Days by a regulatory agency or otherwise;

d) If any representation or warranty made by Borrower or Guarantor in this Agreement or in any statement furnished in contemplation of obtaining a Loan shall prove to have been knowingly untrue, omitted or misleading in any material respect;

Initials: _____    _____    _____
         Guarantor   Borrower   Lender

 Astor Capital Fund

e) If any of the Loan Documents shall at any time after their execution and delivery for any reason, cease to be in full force and effect or shall be declared invalid, null or void or the validity, obligations hereunder or enforceability thereof shall be contested, repudiated, disaffirmed or challenged by Borrower or Guarantor, it's agents or counsel or by any other person or entity acting on behalf of or for the Borrower or Guarantor;

f) A governmental agency which controls the actions of Issuer has commenced an investigation of the Issuer;

g) A Material Event upon the financial condition of Borrower, Guarantor or Issuer;

h) The Issuer is seeking or applied for an extension in which to file the required regulatory reports;

i) An incurable Event of Default occurring in any other Loan between Lender and Borrower.

4. **Lender's Remedy.** If the Obligations aforementioned are not met, the Lender's remedy shall include and not be limited to any course of action against Borrower and Guarantor for Breach of this Agreement, including the occurrence of any of the foregoing Event(s) of Default, if not cured within the designated Cure Period, and if applicable, shall terminate the Stock Loan Agreement, result in Acceleration of all Loan amounts, interest, costs, expenses, and fees due thereunder, and cause forfeiture of the Guarantor's Pledged Collateral; any and all excess proceeds of the sale of Collateral in Event(s) of Default will be returned to Guarantor.

Notwithstanding the above, in case of an incurable Event of Default, nothing contained herein shall obligate or create any duty upon the Lender in any way to apply the proceeds of any sale of the Pledged Collateral to the Loan Principal or against any other Obligation of Borrower or Guarantor or to return remaining balance of proceeds realized as a result of any sale of Pledged Collateral, to maximize sales proceeds, sell the Pledged Collateral in the market, or at any specific price, or in any specific order, or on any specific day or to provide accounting or accountability with respect to the disposition of the Pledged Collateral as a result of an incurable Event of Default. There is no duty owed or implied to Borrower or Guarantor by Lender to maximize the sale of Pledged Collateral upon incurable Event of Default.

5. **Market Conditions.** If the Pledged Collateral experiences a Material Event or Valuation Event, Borrower's or Guarantor's lack of cooperation, restriction or material change in price prior to or post-funding, the Lender will have the right to cease the funding of the Loan or amend the Underwriting criterion, until such circumstances are dissipated and cured, or adjust funding based on new Underwriting criterion.

## VII.    GOVERNING LAW. JURISDICTION.

a) This Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of England and Wales.

b) Each party hereto irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against any other party hereto in any way relating to this Agreement or the transactions contemplated hereby, in any forum other than the courts of England and Wales, and any appellate court from any thereof. Each of the parties hereto irrevocably and

 Astor Capital Fund

unconditionally submits to the exclusive jurisdiction of such courts and agrees that any such action, litigation or proceeding may be brought in any England and Wales court to the fullest extent permitted by applicable law. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding, subject to any permitted appeal, shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

c) Each party hereto irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court referred to in Section. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

d) Irrespective of any outcome of any such legal proceeding, the Lender will be awarded all of its reasonable legal fees and costs in enforcing, collecting, defending, executing, and maintaining this Agreement.

## VIII.  INDEMNIFICATION AND LIMITED LIABILITY RELEASE

1. Lender will not be liable for any indirect, incidental, special, punitive, opportunity loss, or consequential damages, forgone or speculative profit, including loss of revenue or profits or losses arising from Lender's performance under this Agreement. However, the Borrower and Guarantor will be liable for Lender's recovery, speculative profit and opportunity loss when Borrower or Guarantor willfully obstructs or delay's Lender's recovery and enforcement efforts. Borrower and Guarantor agree to indemnify the Lender, each legal entity, if any, who controls, is controlled by or is under common control with the Lender, and each of their respective directors, assignees, officers and employees (the "Indemnified Parties"), and to hold each Indemnified Party of Lender harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of Borrower or Guarantor), in connection with or arising out of or relating to the matters referred to in this Agreement whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Lender, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority. The indemnity agreement contained in this Section shall survive the termination of this Agreement, payment of any amounts hereunder and the assignment of any rights hereunder.

2. Neither Borrower nor Guarantor will not hold Lender, its agents, directors, shareholders, assignees, Depository Broker or other known and unknown persons responsible for any fluctuations or depreciation in the value of the Pledged Collateral that Guarantor may experience during the pendency of Loan. Borrower and Guarantor agree to indemnify Lender for and to hold Lender harmless from, any loss or expense that such Borrower or Guarantor may sustain or incur as a consequence of default by Borrower or Guarantor in making a borrowing. This covenant shall survive the termination of this Agreement.

Initials: _____    _____    _____
          Guarantor  Borrower  Lender

 Astor Capital Fund

## IX.    GENERAL PROVISIONS

1. **Amendments.** Amendments to this Agreement (including the adding or updating of any annexes, appendices, or schedules) will not be enforced unless such amendment is in writing and signed by authorized signatories on behalf of both Parties and added as an Addendum, with the exception of either Party informing the other of change of banks and only notice of such change is sufficient. Electronic email exchanges will not modify this Agreement. No amendment, modification or waiver in respect to this Agreement will be effective unless in writing (including writing evidenced by a facsimile transmission) and executed by each of the Parties.

2. **Assignment.** This Agreement, its equities, and Obligations shall be freely transferrable, pledge-able or assignable in whole or in part as the Parties may see fit or as may be in their best interest. Any transfer or assignment action by either Party shall be followed up by written notice to the other Party.

3. **Balance of Equities.** In the event that this Agreement is reviewed, interpreted or evaluated by any judiciary body or arbitration tribunal in assessing the balance of equities based on this Agreement and law, notwithstanding any of the other terms within this Agreement, the outcome of any decision shall be interpreted to weight in favor of and benefit the Lender at all times irrespective of unjust enrichment and extreme remedy.

4. **Clog on Redemption.** This Agreement is not a mortgage and will not be construed as a mortgage by the Parties or any tribunal or court of law. This is a Hybrid Loan requiring an Investment through Pledge of Collateral by Guarantor. In case there is an Event of Default, neither Borrower nor Guarantor shall have equity of redemption or right to redeem the Pledged Collateral and no incurable Event of Default shall be construed as a clog on equity of redemption and Lenders right to forfeiture of the Pledged Collateral will trump and supersede any right of redemption. No provision of this Agreement or any action of Lender upon an incurable Event of Default will be construed as a clog on equity of redemption and Lenders right to forfeiture of Pledged Collateral is absolute and final. Guarantor shall be able to redeem its Pledged Collateral after the Lock-Up period, provided that all Obligations of Borrower are satisfied, and the Loan has not experienced an incurable Event of Default.

5. **Confidentiality.** This Agreement is to be kept confidential and is not to be reproduced in any manner whatsoever for persons other than the Parties hereto. Specifically, each Party agrees to maintain the confidentiality of the business, trade, finances, and methods ("Confidential Information") of the other Party and not disclose the Confidential Information to any person other than those whose knowledge is essential for the performance of this Loan. Lender will not reveal the existence of this Agreement to the media or any regulatory body or government agency unless ordered to do so by a court of law. Lender may reveal the contents of this Agreement to defend Lender's dignity and reputation and dispel incorrect public information about the subject transaction. A default under this Agreement by the Borrower or Guarantor will deem this clause invalidated. The Parties acknowledge that the existence and the terms of this Agreement and any oral or written information exchanged between the Parties in connection with the preparation and performance of this Agreement are regarded as confidential information. Each Party shall maintain confidentiality of all such confidential information, and without obtaining the written consent of the other Party, it shall not disclose any relevant confidential information to any third parties, except for the information that: (a) is or will be in the public domain (other than through the receiving Party's unauthorized disclosure); (b) is under the obligation to be disclosed pursuant to the applicable laws or


Astor Capital Fund

regulations, rules of any stock exchange, or orders of the court or other government authorities; or (c) is required to be disclosed by any Party to its shareholders, investors, legal counsels or financial advisors regarding the transaction contemplated hereunder, provided that such shareholders, investors, legal counsels or financial advisors shall be bound by the confidentiality Obligations similar to those set forth in this Section. Disclosure of any confidential information by the staff members or agencies hired by any Party shall be deemed disclosure of such confidential information by such Party, which Party shall be held liable for breach of this Agreement. This Section shall survive the termination of this Agreement for any reason.

6. **Consideration.** This Agreement and the transaction herein constitute adequate, just and sufficient consideration. There shall be no argument or defense raised at any time that Consideration is in any way insufficient or was not made. For purposes of this provision, Consideration will include Lender coordinating, arranging, advising as well as agreeing to extend financing as stipulated in this Agreement, sufficiency of which is accepted and acknowledged.

7. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement regardless of number in existence or distribution.

8. **Cross-Default.** A default in any other loan will cause an incurable Event of Default in this Loan and a default in this Agreement will cause an incurable Event of Default in other Loan agreements with Lender.

9. **Depository Broker.** The Depository Broker reserves the right to custody and sub-custody the Pledged Collateral to any licensed financial institution in accordance with its Terms & Conditions.

10. **Enforcement of Clauses.** If any arbitrator, court or other party determines that any term, phrase, clause, or provision in this Agreement is in conflict with or contradicts any of its other terms, phrases, clauses, or provisions, then this Agreement shall be allowed to be amended by Lender by modifying or striking the contradictory term, word, phrase, clause, covenant or provision such that the Agreement and remaining provision and covenant is deemed to be fully enforceable and in all cases as to Lender's exclusive and sole benefit, to the full purpose and intent hereof as intended by Lender.

11. **Entire Agreement and Merger Clause.** This Agreement contains the entire Agreement between the Parties hereto and is legally binding upon them as of the date of the execution hereof. There were not and will be any oral, written or electronic modifications other than written Addendums duly executed by both Parties, which will supersede this Agreement. Oral or written or electronic notations or modifications other than written Addendums executed by both Parties are not enforceable, and all previous known and unknown statements and promises, written or oral are hereby merged in to this Agreement. This Agreement shall be final, controlling, and fully merged with respect to any previous discussions, promises, understandings, representations or warranties made by Lender.

12. **Errors and Omissions.** Borrower and Guarantor expressly agree and acknowledges that they had reasonable opportunity to obtain the assistance of its own counsel to fully review and participate in the negotiation and revision of any of the terms, provisions, covenants, representations, warranties and conditions of this Agreement prior to its execution; and the decision of whether or not to seek advice of counsel with respect to this Agreement is the

Initials: _____    _____    _____
              Guarantor    Borrower    Lender

# Astor Capital Fund

responsibility of Borrower and Guarantor. Therefore, under no circumstances shall Lender be liable to Borrower or to Guarantor for any errors or omissions in this Agreement that may be disadvantageous to Borrower or Guarantor, or which may result in claims of actual or alleged or perceived harm to Borrower or Guarantor. Borrower and Guarantor further agree and acknowledges that any errors or omissions in the Agreement shall be strictly construed to favor the Lender. Once this Agreement is fully executed by both parties, Borrower and Guarantor fully and completely waive all rights to correct any such errors or omissions, or to seek redress against Lender for any such errors or omissions, whether by arbitration, lawsuit or any other equitable remedy. In addition, if Borrower, Guarantor or anyone on its behalf, makes a demand or claim for liability against Lender that arises out of, results from, or relates in any way to any such error or omission in this Agreement, Borrower and Guarantor shall indemnify, defend and hold harmless Lender from any such liability which may be incurred as the result of such demand or claim, including court costs and attorney's fees.

13. **Fiduciary Duty.** This Agreement is not intended to create or impose or give the appearance to the Parties that there is a fiduciary or trustee duty or other similar common law rights that are not expressly stated herein. Notwithstanding anything to the contrary contained in this Agreement, perception drawn or otherwise applicable provision of law or equity, neither Party shall be liable to the other for any act or omission that constitutes a bad faith violation of implied covenant of good faith and fair dealing and the same is expressly excluded. Any fiduciary or trustee duty whatsoever to the other is hereby irrevocably disclaimed and not provided. No duty of any type is owed to Borrower or to Guarantor other than which is explicitly stated.

14. **Force Majeure.** Lender will not be liable to the Borrower or to Guarantor for failure to perform any of its Obligations under this Agreement to the extent such performance is hindered, delayed or prevented by Force Majeure (except for failure to make payments hereunder). If Lender is unable, in whole or in part, to carry out its Obligations under this Agreement due to Force Majeure, it must provide notice to the Borrower and Guarantor. Initial notice may be given orally; however, written notification with reasonably full particulars of the event or occurrence is required as soon as reasonably possible. If Lender will claim Force Majeure, it will promptly give written notice to the Borrower and Guarantor of the termination of such Force Majeure and will resume performance of any suspended obligation as soon as reasonably possible after termination of such Force Majeure. For purposes of this Agreement, "Force Majeure" will mean causes, conditions, events or circumstances which are beyond the reasonable control of the Lender claiming Force Majeure. Notwithstanding any provision of this Agreement, Lender shall not be liable for its inability in performing any of its Obligations hereunder if such inability is caused by or arises as a result of circumstances beyond its reasonable control ("Force Majeure Event"). For the purposes of this Clause, a Force Majeure Event shall include, without limitation, inability or delay in performance caused through acts of God, fire, flood, riot, epidemics or population quarantine, degradation in stock value, stock market crash, illiquidity of the stock, Borrower's or Guarantor's lack of cooperation and other adverse financial market conditions, lightning, explosion, civil commotion, war, malicious damage, storm, tempest, electronic malfunctions, acts or omissions of telecommunications carriers, acts of government or other regulatory authority, acts or omissions of persons or bodies for which Lender affected thereby is not responsible, and any other circumstances beyond the reasonable control of the Lender which may possibly undermine the Pledged Collateral or securities of Issuer. Force Majeure applies only to Lender and does not apply to Borrower, nor shall excuse Borrower from complying with terms of this Agreement.

15. **Intentionally left in blank.**

**v. 1.05.1020**          Page 21 of 31          Initials: _____ _____ _____
                                                          Guarantor  Borrower  Lender

 Astor Capital Fund

16. **Headings.** The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

17. **Joint and Several Liability of Borrower.** Borrower and Guarantor shall be jointly and severally liable hereunder and under each of the Loan Documents to which it is a party with respect to all Obligations. Notwithstanding the foregoing, the Borrower's obligations and liabilities with respect to the Loan proceeds which it receives, and related fees, costs and expenses, and it's obligations and liabilities arising as a result of the joint and several liability of the Borrower and Guarantor hereunder with respect to proceeds received by Borrower, together with the related fees, costs and expenses, shall be separate and distinct obligations, both of which are primary obligations of the Borrower, and the Guarantor hereby irrevocably and unconditionally guarantees the payment of all Obligations and performance of the Borrower. Neither the joint and several liability of the Borrower and the Guarantor shall be impaired or released which would or might, in the absence of this provision, operate to release, discharge or otherwise prejudicially affect the obligations of the Borrower. Without limiting the generality of the foregoing in any manner, all representations and warranties of Borrower and Guarantor contained herein are made jointly and severally. For purposes of this Agreement and any other Loan Documents, representations, warranties and covenants contained in this Agreement shall be imputed to the Borrower and the Guarantor and any consent by one Borrower shall constitute the consent of and shall bind the Borrower and Guarantor.

18. **Lender's Obligations.** All of Lender's obligations, representations and warranties in the performance of this Agreement are contingent upon Borrower and Guarantor performing in accordance with this Agreement and as the Lender may at its sole discretion from time to time decide.

19. **Margin Call.** The Borrower and Guarantor must post margin by toping-up additional cash or shares in the event of a Margin Call as stipulated in Section VI(3)(b). This provision may be triggered and called-upon by the Lender irrespective of amount funded to Borrower and the amount funded shall at no time be contingent on Margin Call validity or enforceability. A Margin Call is a standard provision in securities lending whereby the price of the securities has degraded to a point where the status of Pledged Collateral is deemed to be insufficient, and a credit risk from Lender's risk management perspective. Satisfaction of Margin Call by Borrower and Guarantor is required in order for funding to continue and avoid an Event of Default. The Margin Call is set in accordance with the herein sections and at no time shall be waived or forgiven.

20. **Non-Disparagement.** The Borrower and Guarantor agrees not to intentionally make, threaten to make or intentionally cause any other person to make, any public statement that is intended to criticize or disparage the Lender, any of its affiliates, agents or any of their respective officers, managers or directors. This clause shall not be construed to prohibit any person from making truthful statements when required by law, subpoena, court order, or the like. This clause shall remain in full force and survive the execution, delivery, cancellation, and termination of this Agreement regardless of the consummation of events and transactions contemplated hereof and all events to follow.

21. **Non-Illusory.** Notwithstanding the Terms and Conditions set forth herein, Lender and Borrower acknowledge, accept and agree that Collateral is fluid, variable, may vary and fluctuate in value and that Lenders faithful performance is conditional upon the full and faithful performance of Borrower, stability of the Collateral, absence of any Market Conditions,

Initials: _____  _____  _____
Guarantor  Borrower  Lender

![Astor Capital Fund logo]

**Astor Capital Fund**

Material Event or an Event of Default and that sufficient and equitable consideration has been exchanged between the Parties, such that this Agreement is not illusory and should not be considered or declared as such. The Borrower acknowledges, accepts and agrees that the Terms and Conditions of this Agreement are reasonable and constitute an enforceable Agreement, the consideration provided by Lender are not illusory but are in fact material and considerable and the restrictions within this Agreement are necessary and reasonable for the protection of the legitimate business interests and goodwill of Lender.

22. **Not Construed Against Drafter.** The rule of construction that a contract be construed against the drafter shall not be applied in interpreting or affecting this Agreement and no ambiguity or conclusion drawn whatsoever in this Agreement or any portion thereof shall be construed or interpreted against the preparer and it will be deemed and established that both Parties actively participated in drafting and concluding this Agreement, each having been represented by its respective counsel.

23. **Notice.** Borrower and Guarantor further represent and warrant that they will yearly, on the anniversary of the Effective Date, submit a written statement to Lender by means of declaration stating whether Borrower or Guarantor obtained any other loans from any third parties pledging securities of same Issuer and whether there has been a material change in Borrowers or Guarantors financial condition, such as bankruptcy or insolvency filing of Borrower or Guarantor or of any entity controlled by Borrower or Guarantor. Borrower and Guarantor must also declare if any material lawsuit has been filed against it.

24. **Notices.** All notices and communications to either of the Parties by the other shall be in writing, sent by government mail, electronic mail or by a reputable commercial carrier and shall be deemed duly given on the earlier of the date the same is sent or when deposited in the mail to each Party as follows:

Astor Asset Management Ltd.

| If to Lender: | ~~Astor Asset Management 3 Limited~~ |
|---|---|
| Attention: | Operations Manager |
| | ~~777 Dunsmuir Street Suite 1400~~ 388 Market St, San Francisco, CA 94133, USA |
| | ~~Vancouver, British Columbia, V7Y 1K4~~ |
| | Email: compliance@astorcapitalfund.com ; Telephone: +1 888 775 1628 |

| If to Borrower: | Corporacion RBS SA de CV |
|---|---|
| Attention: | Ave. Ferrocarril de Rio Frio 419 A99, Cuchilla del Moral 1, Iztapalapa |
| | 09319 Ciudad de Mexico, Mexico |
| | Email: egonzalez@gruposalinas.com.mx ; |
| | Telephone: 0052551720[0089] |

| If to Guarantor: | Ricardo Benjamin Salinas Pleigo |
|---|---|
| Attention: | Cristobal Colon 79 INT C, Mexico 09360 |
| | Email: egsalceda@gruposalinas.com.mx ; |
| | Telephone: +5215530091016 |

Either Party may designate by notice in writing to the other a new address to which notices, requests, and other communications hereunder shall be given.

25. **Records.** At the request of Lender, Borrower and Guarantor will cooperate in providing financial or other records, including audited financial statement reasonably necessary by

 **Astor Capital Fund**

Lender to establish ongoing Borrower and Guarantor credit-worthiness. Yearly upon the anniversary of the Effective Date, the Borrower and Guarantor will submit to Lender in writing declaration attesting to whether securities of same Issuer were sold or pledged to others in the preceding year. If none were sold or pledged, the Borrower and Guarantor shall inform Lender accordingly. If any were sold or pledged, then Borrower and Guarantor shall identify such transactions.

26. **Redemption.** This is a Hybrid Loan and Borrower and Guarantor expressly waives the benefit of all laws now existing or hereafter enacted providing for redemption of a right or redemption from any sale of Collateral made under this Loan as a result of incurable Event of Default and Borrower hereby releases all rights of redemption to which Borrower or Guarantor would otherwise be entitled, when the Collateral is forfeited and disposed of as a result of an incurable Event of Default by Borrower.

27. **Release and Waiver.** No waiver of any provision of this Agreement shall be effective unless agreed to in writing by the Parties. No course of dealing between Borrower, Guarantor and Lender shall operate as a waiver of any of the rights of the Parties under this Agreement with the exception of an action for injunctive relief, which shall not be permitted or attempted and shall be nullified by the judicial body upon its application. Should Lender fail to timely exercise any of its rights, options or elections hereunder, irrespective of whether Lender continues to fund the Borrower, the Lender shall not be deemed to have waived any breach or default declaration on the part of Borrower or to have released Borrower or Guarantor from any of the Obligations mandated herein, unless such waiver is strictly in writing, is signed by Lender and expressly waives Lenders rights. Delayed or postponed implementation of any of Lenders rights does not waive any rights afforded to Lender herein and the Lender is free to invoke such rights at any time Lender chooses in doing so. For consideration herein provided, Borrower hereby releases, absolves and forever discharges Lender and their respective successors, assigns, partners, directors, shareholders, officers, beneficial owners, advisers, affiliates, agents, attorneys, transferees, and employees from any and all claims, legal fees, demands, torts, cross-actions, controversies, omissions, inaccuracy, nonfulfillment of any representation or warranty, oversight, exclusion, negligence, causes of action, suits, damages, rights, outcomes, liabilities and obligations, at law or in equity whatsoever, known or unknown, whether past, present or future, now held, owned or possessed by Borrower or Guarantor, or which Borrower or Guarantor may, as a result of any of Lenders actions, inactions, going-concern status, assignments, dealings, failings to act, calculations or directives occurring on or prior or after the execution of this Agreement, and hereafter hold or claim to hold under common law or statutory right, arising, directly or indirectly out of the Loan or any of the Loan Documents or any of the documents, instruments or any other transactions contemplated thereby. Borrower and Guarantor understand and agree that this is a full, final and complete release and agrees that this release may be pled as an absolute and the final bar to any or all suit or suits pending, or which may hereafter be filed, claimed or prosecuted by Borrower or Guarantor, or anyone claiming by, through or under Borrower or Guarantor, in respect of any of the matters described herein may hereafter be had from anyone whomsoever. No Waiver is asserted or claimed against the Lender which refutes Lenders dominion and right to foreclose, deal-in or transact in the Pledged Collateral and no Waiver is alleged or claimed against the Lender which prohibits Lender prior to or post an Event of Default to exhaust its recourse against the Borrower or Guarantor or any other person or persons, third party guarantors or against any other security it may hold in respect to the Obligations of Borrower or Guarantor, before realizing upon or otherwise dealing with the Pledged Collateral in such manner as Lender may consider necessary or befitting in its own

# 🦁 Astor Capital Fund

right. All of Lenders rights are reserved and none are Waived. Lenders acceptance of partial payments shall not invalidate, waive or diminish Lenders rights afforded herein.

28. **Severability.** If any of the provisions of this Agreement or in any of the Loan Documents is found by an arbitral tribunal and/or court of competent jurisdiction to be unlawful, then such provision will be further altered and modified in Lender's favor to meet legal conformity or, if impracticable, is stricken out entirely as if it was never even written in the first place, and the remainder of the rights, warranties, provisions, covenants and Obligations contained in this Agreement or any of the Loan Documents shall continue to be in full force and effect. If any provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

29. **Statement of Knowledge.** For purposes of this Agreement, the Borrower and Guarantor shall be deemed to have knowledge of a particular fact or matter referenced herein, unless otherwise qualified hereunder means a statement of the Borrower and Guarantor declaring knowledge of the actual facts or circumstances to which such phrase relates having made inquiries or investigations in connection with such facts and circumstances, Borrower having conducted reasonably diligent inquiry into the relevant subject matter.

30. **Survival.** Except as herein provided, all of the Borrower's and Guarantor's representations, warranties, waivers, Obligations, releases, indemnities, and covenants made in this Agreement shall remain in full force and survive the execution, delivery, cancellation, and termination of this Agreement regardless of the consummation of events and transactions contemplated hereof. All of the Lender's rights, benefits, enforcement covenants and secured interest into the collateral shall survive the termination of this Agreement, except for further funding of the Loan. The Lender shall receive, obtain and retain all the benefits, profit and interest of the securities pledged during the Loan Term and upon its expiration, should any amounts be further owed to Lender.

31. **Termination.** Early termination or rescission is not permitted under the Agreement, regardless of the reason or need to do so, and this Agreement will be valid and in full force and effect after its execution for its full Term, provided it can only be terminated after its maturity, jointly by both Parties in written form only and memorialized as an Addendum or mutual written release, or as stipulated herein and for no other reason. All enforcement covenants, conditions, and waivers will survive termination. If the Loan Documents shall, at any time after their execution and delivery for any reason, cease to be in full force and effect or shall be canceled, declared invalid, null or void by Borrower or Guarantor, their representatives or their agents or the validity or enforceability thereof shall be contested or challenged by Borrower, Guarantor or by any other person for or on the Borrower's or Guarantor's behalf, the Loan will be considered in default. The Lender retains the right to convert the Collateral during the Loan Term, and thereafter should Borrower or Guarantor default.

## X.    REQUIRED DISCLOSURES

It is mutually understood and agreed that Lender has a financial interest and privilege in the pledged shares according to the parties' understanding and contractual agreement. Borrower assumes the burden of topping up when required to do so. Borrower is aware that market conditions may cause the value of securities to decline. Borrower and Guarantor concede that Lender is not responsible for the degradation of the stock value, whether owing to action(s) or inaction(s) of Lender. A decline in value may require additional securities or cash to increase the value of the collateral. Borrower's or Guarantor's default will cause forfeiture of securities. Borrower and Guarantor now waive and forever discharge Lender against any claims under any applicable securities laws. Tax consequences are the responsibility of Borrower and Guarantor.


Astor Capital Fund

Lender and its loan officers have not provided legal or tax advice of any kind to Borrower or Guarantor. Borrower and Guarantor attest that, at all times, they were represented by legal counsel representing its interests and Borrower and Guarantor have had ample opportunity to consult one. Borrower's and Guarantor's decision is at will and solely based on its independent judgment. Borrower and Guarantor have evaluated all risks independently and did not rely on representations made by Lender, if any. Lender does not discriminate based on sex, race, nationality, or religion. Lender is not a broker-dealer or financial advisor. This disclosure provides full transparency of risks involved. Neither Borrower nor Lender will participate in or engage in any money laundering scheme. Lender does not provide investment advice and its loan officers, and sales staff are prohibited from doing so. Borrower must ensure that the Pledged Collateral stays within Lender's value requirement following this Agreement. Loan is non-recourse to Borrower or to Guarantor and recourse will be against Collateral only. Lender has recommended that Borrower consult a professional tax advisor to determine the tax implications of a loan under the terms of this agreement before proceeding. Lender will not be liable for the devaluation of securities during the term of Loan. Lender is not an insider of the securities being pledged by Guarantor and Lender does not and has not offered to buy or sell advice to Borrower. Lender utilizes independent third-party compliance consultants in risk management analyses and underwriting recommendations. A default of Loan will cancel Lender's obligation to Borrower and to Guarantor. Neither Borrower nor Guarantor will undermine or interfere with securities of Issuer. Borrower will not use Loan proceeds for any illegal activity, including without limitation to, use of Loan proceeds in the drug trade or support of terrorist groups. Borrower is to consult a tax professional for any tax advice. Guarantor represents that Guarantor has full ownership of the securities and legal custody and as of the date of this agreement, is not a defendant in any lawsuit where the ownership and control of the pledged shares are challenged because Lender will not be a Party to any such challenge. Borrower will not transact with any entity on any international sanctioned list using the Loan proceeds. Lender is not affiliated with any government agency. Lender may readjust loan criterion due to adverse market conditions, Borrower's lack of cooperation or devaluation of securities. Borrower agrees that Loan is suitable for Borrower's needs. Lender has the right, but not the obligation, to refinance or increase Loan amount if the value of securities increases during the term of Loan. Borrower and Guarantor have risk-tolerance and the financial ability and liquid assets to post margin in the Event of Default. Lender is not and does not hold itself out to be a tax advisor. This is not an offer to or solicitation to purchase or sell securities. Loan will be based on all applicable laws, present Underwriting, and market conditions at the time of funding. Borrower and Guarantor agree to provide information necessary to the contemplated transaction in a timely, complete, and accurate manner. The Borrower and Guarantor further represent and warrant that all statements and documentation provided about Loan are true and complete and do not omit or forgo any material facts or information. Borrower understands that funding correlates and is relative to most current market conditions at time of funding or force majeure, and may cause Lender to advance Loan in tranches, adjust or postpone funding. Due to market dynamics, at all times throughout, the loan is subject to re-analysis and Underwriting reassessment prior to funding. During the Loan Term, all benefits and proceeds of Pledged Collateral inure to Lender. Lender reserves the right to maintain dominion over the Collateral during the Loan Term, which affords Lender the right to deal-in, dispose or convert over the Pledged Collateral. Lender may not call the Loan before Maturity Date unless a default has occurred. The Cash Collateral to be deposited in to Borrowers own account shall be solely computed by the Lender. No notice of any type is due to Borrower or to Guarantor other than the notices described herein. During the pendency of the Loan, neither Borrower nor Guarantor is entitled to receive or retain any benefits or rights not specifically stated or contemplated herein.

IN WITNESS WHEREOF, and after review, mutual preparation and consultation with respective legal counsel, the Parties have executed this Loan Agreement as of the date first written above.

END OF TEXT

Initials: _____    _____    _____
          Guarantor   Borrower    Lender

# Astor Capital Fund

## SIGNATORY PARTIES

Astor Asset Management Ltd.          United States of America

**LENDER:** ~~Astor Asset Management 3 Limited~~, a ~~Canadian~~ corporation.

Signature

Mariia Mitsa, Managing Member          07/25/2021

Name and Title          Date

## BORROWER NOTARIZATION

**BORROWER:** Corporacion RBS SA de CV

Signature

Ricardo Benjamin Salinas Pliego    July 14th, 2021

Name and Title          Date

Notary Seal

Attorney/Notary/Witness          Attorney/Notary/Witness

Signature    July 14th 2021    Date          Signature    Date

 Astor Capital Fund

The Guarantor hereby attests and guarantees unconditionally the due, prompt and faithful performance and discharge by, and compliance with, all of the obligations, covenants, terms, conditions and undertakings under this Agreement in accordance with the terms hereof, including any such obligations, covenants, terms, conditions and undertakings that are required to be performed, discharged or complied with and that Guarantor has the capacity to full fill the full and faithful performance of Borrower as stipulated herein.

GUARANTOR: Ricardo Benjamin Salinas Pliego

_____
Signature

Ricardo Benjamin Salinas Pliego    July 14 th, 2021
Name                                                Date

_____
Notary Seal

_____
Attorney/Notary/Witness

Edvardo Gonzalez Saleda
Attorney/Notary/Witness

_____    July 14th, 2021
Signature                            Date

Edvardo Gonzalez Saleda
Signature                            Date

 **Astor Capital Fund**

### SCHEDULE A
### BANKING INFORMATION

**BORROWER BANKING INFORMATION (CORPORATE):**

**Bank/Institution Name:**

**Swift Code No/Routing No:**
**Account Number:**

**Account Name:**            Corporacion RBS SA de CV

**Bank Code:**
**Branch Code:**

**Address of Account:**

**CASH AND STOCK TOP UP ACCOUNT INFORMATION (CORPORATE):**

**Institution's Name:**          Weiser Global Capital Markets

**Account Number:**          200-804762 ; 200-804763

**Account Name:**          Corporacion RBS SA de CV

**Address of Account:**


Astor Capital Fund

## BORROWER BANKING INFORMATION (INDIVIDUAL):

**Bank/Institution** Name:

**Swift Code No/Routing** No:
**Account** Number:

**Account** Name:    Ricardo Benjamin Salinas Pliego

**Bank** Code:
**Branch** Code:

**Address of** Account:

## CASH AND STOCK TOP UP ACCOUNT INFORMATION (INDIVIDUAL):

**Institution's** Name:    Weiser Global Capital Markets

**Account** Number:    200-804764 ; 200-804765

**Account** Name:    Ricardo Benjamin Salinas Pliego

**Address of** Account:

## INTEREST, PRINCIPAL AND PAYMENT INFORMATION:

**Please make payment payable to:**
~~Astor Asset Management 3 Limited~~  Astor Asset Management Ltd.
~~777 Dunsmuir Street, Suite 1400~~
~~Vancouver, British Columbia, V7Y 1K4~~  388 Market St, San Francisco, CA 94133, USA



www.astorcapitalfund.com

**Singapore**
Six Battery Road
Level 42
Singapore, 049909

asia.inquiries@astorcapitalfund.com
+65 800 492 2419

**Hong Kong**
18 Westlands Road
Level 23
Hong Kong

asia.inquiries@astorcapitalfund.com
+852 800 964 226

**United Kingdom**
20 MIDTOWN
20 PROCTER STREET,
LONDON, UK, WC1V 6NX

europe.inquiries@astorcapitalfund.com
+44 2 0386 84 620

**Germany**
Niederrad business district
LYONER STRASSE 14
FRANKFURT, GERMANY, 60528

europe.inquiries@astorcapitalfund.com
+49 0800 1812772

**Australia**
330 Collins Street,
level 14
Melbourne, Australia, 3000

oceania.inquiries@astorcapitalfund.com
+613 8375 7172

# EXHIBIT 12

| | |
|---|---|
| **From:** | Eduardo Gonzalez Salceda Sanchez |
| **To:** | Zara Akbar |
| **Cc:** | Javier Gayo; Jean-Marc Tornare; Norma Elvira Urzua Villasenor; Alexandre Torti |
| **Subject:** | Re: ELEKTRA SLA/CMA Dated: July 28, 2021 |
| **Attachments:** | image013947.png.html |
| | image254452.png.html |
| | image384061.png.html |
| | image405170.png.html |
| | image286774.png.html |
| | image013947.png.html |
| | image254452.png.html |
| | image384061.png.html |
| | image405170.png.html |
| | image286774.png.html |

Dear Zara, hope everything is fine!

Please give us an update regarding the reversed of the collateralised shares

Best Regards,

On 25 Oct 2021, at 3:38, Zara Akbar <zara@enness.je> wrote:

Morning Eduardo,

Hope you are well. I am happy to advise that I have been informed by Astor that the instructions for the transfer of the 935,913 (collateralised) shares of Group Elektra S.A.B. de CV (ELEKTRA*:MX) shall be reversed back to the account # 200-804765 of Mr. Ricardo B. Salinas Pliego within the next 24 hours.

So we should see the shares reappear back into the account later today or tomorrow.

Please let me know if you have any further questions.

Kind regards,

Zara

**Zara Akbar**
HEAD OF SECURITIES BASED LENDING

+44 (0) 7999 043 065
zara@enness.je





# Unusual Property Finance

LEISURE DEVELOPMENT, RETAIL SPACES AND MORE

Enness (Jersey) Limited is registered with the Jersey Financial Services Commission with the company number 127668. Our address is; Office 17, First Floor, International Finance Centre 5, The Esplanade, St Helier, Jersey, JE2 3BY.

On 23 Oct 2021, at 18:01, Eduardo Gonzalez Salceda Sanchez <egsalceda@gruposalinas.com.mx> wrote:

**Attention:** This email originated outside Enness Ltd. Please be extra vigilant when opening attachments or clicking on links.

Dear Zara, hope everything is fine!

It is very important that you have the sensibility of the necessity for the shares to return to the collateral contract until no later than in this week, since if the account statement is issued without the shares there could be trigger an alienation with great tax implications!

Please we really need your help to make Astor and Weiser understand that they are breaching and violating the contracts.

Best Regards,


On 23 Oct 2021, at 1:18, Alexandre Torti <a.torti@fininvesta.com> wrote:


Dear Zara,

In light with the bellow answer, it looks like the party which is the source of all this trouble is Astor. Could you kindly transmit this message to Astor and get their position and clear explanation as to what is causing all this mess?

Thanks and regards,
<2ECF3192-ECCE-4137-9BBD-47C0FB559438.gif>


Début du message réexpédié :

**De:** Weiser Compliance <compliance@weiser.com.bs>
**Objet: RE: ELEKTRA SLA/CMA Dated: July 28, 2021**
**Date:** 22 octobre 2021 à 21:49:23 UTC+2
**À:** Alexandre Torti <a.torti@fininvesta.com>
**Cc:** Zara Akbar <zara@enness.je>, Javier Gayo <javier.gayo@fininvesta.com>, Eduardo Gonzalez Salceda <egsalceda@gruposalinas.com.mx>, Collateral Services <collateralservices@weiser.com.bs>, Christos Liva <Christos.Liva@waml.ch>

Dear Mr. Torti,

In the order of your queries, Weiser Global Capital Markets ("WGCM") advises as follows;

1. Client instructions are always settled provided the client has the funds, shares, or margin as the case may be, and the account or corporation is up-to-date and in good standing.  WGCM cannot provide a representation to you in advance of receiving an instruction and on another party's account.

2. Instruction for any transaction on account(s) under a Custody Management Agreement (CMA) must come from the party that has been granted the rights of control. The CMA executed by your client grants such rights exclusively to Astor Asset Management 3.

3. Refer to Item #1.


Kind regards,

Weiser Compliance

**Weiser Global Capital Markets**
Unit A, Balmoral Corporate Center,
Balmoral Development

Nassau, Bahamas
**Tel: +1 242 698 6600**
**Mobile: +1 242 813 8571**
E: compliance@weiser.com.bs
www.weiser.com.bs

<image001.jpg>

---

**From:** Alexandre Torti <a.torti@fininvesta.com>
**Sent:** Tuesday, 19 October 2021 4:49 AM
**To:** Collateral Services <collateralservices@weiser.com.bs>; Shelby Brice <sbrice@weiser.com.bs>; Christos Liva <Christos.Liva@waml.ch>
**Cc:** Zara Akbar <zara@enness.je>; Javier Gayo <javier.gayo@fininvesta.com>; Eduardo Gonzalez Salceda <egsalceda@gruposalinas.com.mx>
**Subject:** ELEKTRA SLA/CMA Dated: July 28, 2021

Dear all,

Kindly review the bellow and provide me with an answer.

**Background**

- Astor Asset Management 3 Limited issued an Entitlement Order dated: October 5, 2021 for the transfer of 935, 913 (Collateralised) shares of Group Elektra S.A.B. de CV (ELEKTRA*:MX) from account 200-804765 of Ricardo Benjamin Salinas Pliego to the account of Astor Capital Fund Ltd.

- This Entitlement Order was in breach of terms and conditions the SLA dated July 28, 2021, as per Section V Lender Warranties and Representations Cause 6 - Transfer of Securities of the SLA Dated July 28, 2021.

- Astor Asset Management 3 Limited has agreed to issue an Entitlement Order to transfer the
  935, 913 (Collateralised) shares of Group Elektra S.A.B. de CV (ELEKTRA*:MX) from the account of Astor Capital Fund Ltd to the account 200-804765 of Ricardo Benjamin Salinas Pliego.

We would like you to confirm the following:

1. Any Entitlement Order issued by Astor Asset Management 3 Limited to transfer the

935, 913 (Collateralised) shares of Group Elektra S.A.B. de CV (ELEKTRA*:MX) from the account of Astor Capital Fund Ltd to the account 200-804765 of Ricardo Benjamin Salinas Pliego shall be upheld and completed without delay.

2. There are no restrictions on the transfer of the uncollateralised shares (i.e. 2,664,087 shares) of

Group Elektra S.A.B. de CV (ELEKTRA*:MX) to any account as instructed by Mr. Ricardo Benjamin Salinas Pliego.

3. There are no restrictions on the transfer of the

935,913 (Collateralised) shares of Group Elektra S.A.B. de CV (ELEKTRA*:MX) from the account of Astor Capital Fund Ltd to

the account 200-804765 of Ricardo Benjamin Salinas Pliego.

Awaiting your urgent reply.

# EXHIBIT 13

# ADDENDUM TO STOCK LOAN AGREEMENT

Reference is made to multiple executed Stock Loan Agreement(s) ("SLA") specifically

SLA #1 dated May 1, 2021 between Astor Asset Management 3 Limited, a Canadian corporation and Corporacion RBS SA de CV;

and

SLA #2 dated July 14, 2021 between Astor Asset Management Ltd, a USA corporation as the Lender and Corporacion RBS SA de CV as the Borrower and Ricardo Benjamin Salinas Pliego as Guarantor;

and

SLA #3 dated July 28, 2021 between Astor Asset Management 3 LTD, a Canadian corporation as the Lender and Corporacion RBS SA de CV as the Borrower and Ricardo Benjamin Salinas Pliego as Guarantor.

Terms used in this Addendum shall have their meaning ascribed to them in the SLA #3 and this Addendum is being made a part of SLA #3.

May it be known that the undersigned parties, for good, just sufficient, equitable and valuable consideration, do hereby agree to make the following changes and clarification as are outlined below. These changes will be made valid as if they are included in the SLA #3.

1.  It is mutually agreed that the SLA #1 dated May 1, 2021 between Astor Asset Management LTD, a USA corporation and Corporacion RBS SA de CV as the Borrower is hereby declared null and void.

2.  It is mutually agreed that the SLA #2 dated July 14, 2021 between Astor Asset Management Ltd, a USA corporation as the Lender and Corporacion RBS SA de CV as the Borrower and Ricardo Benjamin Salinas Pliego as Guarantor is hereby declared null and void.

3.  It is mutually agreed and understood that the Lender is Astor Asset Management 3 LTD, a company incorporated in Quebec Canada with the incorporation number 1176785997 and the only valid and binding surviving SLA between the Parties is that which is between Astor Asset Management 3 LTD, a company incorporated in Quebec Canada with the incorporation number 1176785997 and Corporacion RBS SA de CV as the Borrower and Ricardo Benjamin Salinas Pliego as Guarantor dated July 28, 2021 and herein referred to as SLA #3.

4.  It is mutually agreed and understood that the SLA #3 between Astor Asset Management 3 LTD and Corporacion RBS SA de CV as Borrower and Ricardo Benjamin Salinas Pliego as Guarantor is, has and will be in full force and effect beginning on July 28, 2021.

5.  It is mutually agreed and understood that the Custodian Management Agreement ("CMA") executed by and between the undersigned parties and Weiser Global Capital Markets will be in full force and effect beginning on July 28, 2021.

6.  The terms and conditions of the SLA #3 dated July 28, 2021 by and between Astor Asset Management 3 LTD, a Quebec Canada corporation number 1176785997 as the Lender and Corporacion RBS SA de CV as the Borrower and Ricardo Benjamin Salinas Pliego as Guarantor is valid and will remain in full force and effect except and to the extent they are amended herein.

IN WITNESS WHEREOF, the Parties hereto after consultations with their respective attorneys have caused this Addendum to SLA #3 to be duly executed as of the day and year written below.

_____
Astor Asset Management 3 LTD

Mariia Mitsa
**Print Name of Signatory**

Managing Member
**Title of Signatory**

07/31/2021
**Date**

_____
Corporacion RBS SA de CV

Ricardo Benjamin Salinas Pliego
**Print Name of Signatory**

Power of attorney
**Title of Signatory**

7/31/2021
**Date**

_____
Ricardo Benjamin Salinas Pliego

Ricardo Benjamin Salinas Pliego
Print Name of Signatory

Title of Signatory

7/31/2021
Date

# EXHIBIT 14

# SECOND ADDENDUM TO STOCK LOAN AGREEMENT

Reference is made to multiple executed Stock Loan Agreement(s) ("SLA") specifically:

SLA #1 dated May 1, 2021 between Astor Asset Management 3 Limited, a Canadian corporation and Corporacion RBS SA de CV;

and

SLA #2 dated July 14, 2021 between Astor Asset Management Ltd, a USA corporation as the Lender and Corporacion RBS SA de CV as the Borrower and Ricardo Benjamin Salinas Pliego as Guarantor;

and

SLA #3 dated July 28, 2021 between Astor Asset Management 3 LTD, a Canadian corporation as the Lender and Corporacion RBS SA de CV as the Borrower and Ricardo Benjamin Salinas Pliego as Guarantor.

Terms used in this Addendum shall have their meaning ascribed to them in the SLA #3 and this Addendum is being made a part of SLA #3.

May it be known that the undersigned parties, for good, just, sufficient, equitable and valuable consideration, do hereby agree to make the following changes and clarification as are outlined below. These changes will be made valid as if they are included in the SLA #3.

1. It is mutually agreed, understood and represented that all Entitlement Orders issued by Lender in relation to the Custodian Management Agreement executed by and between the Lender, the Depository Broker, the Borrower and the Guarantor will be in accordance with the terms of the Loan Agreement.

END OF CONTENT ON THIS PAGE

IN WITNESS WHEREOF, the Parties hereto after consultations with their respective attorneys have caused this Second Addendum to SLA #3 to be duly executed as of the day and year written below.

_____
Astor Asset Management 3 LTD

_____
Print Name of Signatory

_____
Title of Signatory

_____
Date

_____
Corporacion RBS SA de CV

_Ricardo Salinas Pliego_
Print Name of Signatory

_____
Title of Signatory

_6th December 2021_
Date

_____
Ricardo Benjamin Salinas Pliego

_Ricardo Salinas Pliego_
Print Name of Signatory

_____
Title of Signatory

_6th December 2021_
Date