# EXHIBIT 15

# THIRD ADDENDUM TO STOCK LOAN AGREEMENT

THIS THIRD ADDENDUM TO STOCK LOAN AGREEMENT (the "Third Addendum") is made and entered into by and between Astor Asset Management 3 Ltd, a Canadian Corporation, hereinafter referred to as the "Lender", Corporacion RBS SA de CV, hereinafter referred to as the "Borrower", and Ricardo Benjamin Salinas Pliego, hereinafter referred to as the "Guarantor".

**WHEREAS,** the Lender, Borrower, and Guarantor previously entered into multiple Stock Loan Agreements, including: (i) the First Stock Loan Agreement dated May 1, 2021 between Astor Asset Management 3 Limited, a Canadian corporation, as Lender and Corporacion RBS SA de CV as Borrower; (ii) the Second Stock Loan Agreement dated July 14, 2021 between Astor Asset Management Ltd, a USA corporation, as the Lender, and Corporacion RBS SA de CV as the Borrower, and Ricardo Benjamin Salinas Pliego as the Guarantor; and (iii) the Third Stock Loan Agreement dated July 28, 2021 between Astor Asset Management 3 LTD, a Canadian Corporation, as the Lender, and Corporacion RBS SA de CV as the Borrower, and Ricardo Benjamin Salinas Pliego as the Guarantor.

**WHEREAS,** the Parties subsequently entered into the Addendum to Stock Loan Agreement dated July 31, 2021 and the Second Addendum to Stock Loan Agreement dated December 6, 2021; each of which remains in full force and effect to date.

**WHEREAS,** the Parties now wish to enter into this Third Addendum for the purpose of lowering the Loan-To-Value, reducing the initial Margin Call threshold, and requiring the Borrower to pledge additional shares in exchange for an immediate and single loan disbursement of approximately Six Hundred Thirteen Million (613,000,000 MXN), less fees and costs as per previous disbursements and the Stock Loan Agreement.

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto covenant and agree to make the following amendments as outlined below, each amendment of which will be made as if it is included in the Third Stock Loan Agreement.

## I.    LOAN-TO-VALUE

It is hereby mutually agreed, understood, and represented that the Loan-To-Value ("LTV") for the subject Loan will be reduced to thirty-five percent (35%) effective as of the date of execution of this Third Addendum.

## II.    MARGIN CALL THRESHOLD

RS

Page 1

It is hereby mutually agreed, understood, and represented, that Section VI(2)(b) of the Third Stock Loan Agreement is hereby amended, in that the Margin Call threshold shall be reduced from seventy percent (70%) to sixty percent (60%) effective as of the date of execution of this Third Addendum. It is hereby mutually agreed, understood, and represented that the threshold for any incurable Margin Call is not amended and will remain at fifty percent (50%) as stated per the Third Stock Loan Agreement.

## III.    ADDITIONAL DEPOSIT OF SHARES AND DISBURSEMENT

It is hereby mutually agreed, understood, and represented that Lender agrees to disburse to Borrower a single disbursement of Six Hundred Thirteen Million (613,000,000 MXN) in exchange for the immediate deposit of an additional One Million Four Hundred Thirty-One Thousand Seven Hundred (1,431,700) shares of Grupo Elektra SAB DE CV (ELEKTRA:MX) to the depository broker, at Tavira Monaco SAM, account TMC-63.

## IV.    ADDENDUM TERMS

It is hereby mutually agreed, understood, and represented that this Third Addendum includes terms and conditions in addition to those contained in the above referenced Stock Loan Agreements and subsequent Addendums. Parties agree that they have read this Addendum, have had the opportunity to review it with an attorney of their respective choice, and have willingly and voluntarily agreed to all its terms. Under these circumstances, the Parties agree that the rule of construction that a contract be construed against the drafter shall not be applied in interpreting this Addendum and that in the event of any ambiguity in any of the terms of conditions of this Addendum, such ambiguity shall inure to the benefit of the Lender. The terms used in this Third Addendum shall have the same meaning as ascribed to them in the Third Stock Loan Agreement. This Third Addendum does not obligate the Lender to agree to any further extension or any other modification of the Stock Loan Agreements regardless of any circumstance which may arise throughout the course of the Loan Term.

## V.    NOTICE

Any notice required to be given under this Third Addendum shall be given in writing, and shall be effective when actually delivered, if by mail, or when actually received, if by email, unless otherwise required by law. For notice purposes, the Borrower and Guarantor agree to keep the Lender informed at all times of Borrower's and Guarantor's current contact information including, but not limited to mailing address, telephone number, and email address.

RS

Page 2

**VI.    SEVERABILITY**

Each provision, section, sentence, clause, phrase, and word of this Third Addendum is intended to be severable. If any provision, section, sentence, clause, phrase, and word hereof is held by a court with jurisdiction to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of this Third Addendum.

**VII.    HEADINGS**

The headings contained in this Third Addendum are for reference purposes only and shall not affect in any way the meaning or interpretation of this Third Addendum.

**VIII.    ERRORS & OMISSIONS**

Borrower and Guarantor expressly agree and acknowledges that they had reasonable opportunity to obtain the assistance of its own counsel to fully review and participate in the negotiation and revision of any of the terms, provisions, covenants, representations, warranties and conditions of this Third Addendum prior to its execution; and the decision of whether or not to seek advice of counsel with respect to this Third Addendum is the responsibility of the Borrower and Guarantor. Therefore, under no circumstances shall Lender be liable to Borrower or to Guarantor for any errors or omissions in this Third Addendum that may be disadvantageous to Borrower or Guarantor, or which may result in claims of actual or alleged or perceived harm to Borrower and Guarantor.

**IX.    GOVERNING LAW & DISPUTE RESOLUTION**

This Third Addendum and any claim, controversy, dispute, or cause of action (whether in contract, tort or otherwise) based upon, arising out of, or relating to this Third Addendum and the other relevant loan documents including, but not limited to the Stock Loan Agreement and each executed Addendum, shall be governed by, and construed in accordance with the laws of England and Wales. Any claim, controversy, dispute, or cause of action (whether in contract, tort or otherwise) based upon, arising out of, or relating to this Third Addendum and the other relevant loan documents including, but not limited to the Stock Loan Agreement and any and all executed Addendums, shall be resolved in accordance with the dispute resolution clause provided for in the Third Stock Loan Agreement.

**X.    PRIOR AGREEMENTS**

Each Party represents and warrants that it is not a party to or otherwise subject to or bound by any other agreement, understanding, or court order which in any manner limits or otherwise affects its ability to fully perform all obligations under this Third

Addendum and the other relevant loan documents including, but not limited to the Stock Loan Agreement and all other executed Addendums. Parties hereby mutually agree and acknowledge that all terms and conditions of the Third Stock Loan Agreement, and all other executed Addendums, remain in full force and effect except to the extent specifically modified by this Third Addendum.

XI.    **CONFIDENTIALITY**

Parties agree that the terms and conditions of this Third Addendum, and any communications, information, or documents related thereto, are to be kept in the strictest confidence between the Parties to this Third Addendum; this restriction shall continue to apply after the expiration or termination of this Third Addendum without limit of time. These obligations shall cease to apply to any knowledge or information which may properly come into the public domain (through no fault of the Parties concerned) or is required by law to be disclosed.

XII.    **REPRESENTATIONS**

Borrower and Guarantor represent and warrant that all statements and documentation provided to the Lender with respect to the Loans referenced herein are still true, accurate and complete, with no new material facts or information being omitted or misrepresented.

XIII.    **FORCE MAJEURE**

A Party shall not be considered to be in default or breach of this Third Addendum, and shall be excused from performance or liability for damages to any other Party, if and to the extent that it shall be delayed in or prevented from performing or carrying out any of the provisions of this Third Addendum, arising out of or from any act, omission, or circumstance by or in consequence of any act of God, labor disturbance, sabotage, act of public enemy, war, invasion, insurrection, riot, fire, storm, flood, ice, earthquake, explosion, epidemic, breakage or accident to equipment, or any other cause or causes beyond such Party's reasonable control. A Force Majeure event does not include an act of negligence or intentional wrongdoing by a Party. Any Party claiming a Force Majeure event shall use reasonable diligence to remove the condition that prevents performance and shall not be entitled to suspend performance of its obligations in any greater scope or for any longer duration than is required by the Force Majeure event. Each Party shall use its best efforts to mitigate the effects of such Force Majeure event, remedy its inability to perform, and resume full performance of its obligations hereunder.

RS
Page 4

**XIV.    RIGHTS OF PARTIES**

The Parties hereby fully agree and acknowledge that all rights, remedies, and privileges of the Lender hereunder are cumulative and not exclusive of any rights, remedies, or privileges which the Lender may have and may be exercised and enforced alternatively, successively, or concurrently, at the sole discretion of the Lender. If any provision hereof or if any provision contained in the above referenced Stock Loan Agreements or the application of such provision to any other person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the application of such provision to any other person or circumstance, nor the remainder of the provisions contained in the Stock Loan Agreements shall be affected thereby, and all provisions shall be fully enforced to the greatest extent permitted by law.

**XV.    NO WAIVER**

Except as expressly set forth in this Third Addendum, nothing contained in this Third Addendum, or any other communication by and between the Parties, shall be construed as a waiver by the Lender of any covenant or provision of the Stock Loan Agreements, subsequent Addendums, or any other contract or instrument by and between the Parties, or of any similar future transaction, and the failure of Lender at any time or times hereafter to require strict performance by either the Borrower or Guarantor of any provision thereof shall not waive, affect or diminish any right of the Lender to thereafter demand strict compliance therewith. Nothing contained in this Third Addendum shall directly or indirectly in any way whatsoever, whether known or unknown, either: (i) except as expressly provided herein, impair, prejudice or otherwise adversely affect the Lender's right at any time to exercise any right, any event, any cause, privilege, or remedy in connection with the Third Addendum or any other loan documents between the Parties, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, (ii) except as expressly provided herein, amend or alter any provision of the executed and existing Stock Loan Agreements and subsequent Addendums, or any other contract or loan instrument, or (iii) constitute any course of dealings or other basis for altering any obligation of any Party under this Third Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, or any right, privilege or remedy of Lender under this Third Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums. The Lender hereby continues to reserve all rights, remedies, and privileges granted to it under this Third Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums.

**XVI.    ALL TERMS ARE BINDING UPON THE PARTIES**

The Parties acknowledge that, subject to the terms of this Third Addendum, all terms and provisions contained in the above referenced Stock Loan Agreements, and all executed Addendums, remain in full force and effect and are legally binding on the Parties. Moreover, no delay, failure, or forbearance on the part of the Lender in exercising any right, remedy, or privilege under this Third Addendum shall affect any such right, remedy, or privilege, nor shall any single or partial exercise thereof or any abandonment or discontinuance of steps to enforce such a right, remedy, or privilege preclude any further exercise thereof or the exercise of any other rights, remedies, or privileges under this Third Addendum or the related Stock Loan Agreements and Addendums. Lender has not waived any right or remedy under this Third Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums. Borrower and Guarantor agree and acknowledge that the execution of this Third Addendum by the Lender is not intended nor shall it be construed as (a) an actual or implied waiver of any default, whether known or unknown, under this Third Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, or (b) an actual or implied waiver of any condition or obligation imposed on Borrower and Guarantor pursuant to this Third Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, except to the extent, if any, specified herein. The Borrower and Guarantor shall be jointly and severally liable hereunder and under each of the loan documents, including, but not limited to the Stock Loan Agreement and all subsequent Addendums, to which it is a party with respect to all obligations. The Lender hereby reserves all rights, remedies, and privileges granted to it by the Stock Loan Agreements and subsequent Addendums.

**XVII.    CONSENT**

Whenever the consent of Lender is required under this Third Addendum, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of the Lender.

**XVIII.    TIME OF ESSENCE**

The Parties hereto acknowledge and agree that time is strictly of the essence with respect to the terms, conditions and provisions hereof, and that the failure to timely perform any of the obligations hereunder shall constitute a breach of, and a default under, this Third Addendum by the Party so failing to do so.

**XIX.    ASSIGNMENT**

This Addendum, its equities, and obligations shall be freely transferrable or assignable in whole or in part as the stated in the above referenced Stock Loan Agreements. Any transfer or assignment action by any Party shall be followed up by written notice to the other Parties.

**XX.    ENTIRE AGREEMENT**

This Third Addendum incorporated along with the Third Stock Loan Agreement and the executed Addendums constitutes the entire agreement and there are no oral or other representations regarding the subject of this agreement that are binding on either Party. All changes to this Third Addendum, or the Third Stock Loan Agreement and any and all executed Addendums, must be in writing, signed by both Parties. It is understood and agreed that email correspondence shall not constitute "a writing" to this agreement unless expressly included herein.

END OF TEXT ON THIS PAGE

**IN WITNESS WHEREOF,** the Parties hereto after consultations with their respective attorneys and upon their advice, the Parties have caused this Third Addendum to the Third Stock Loan Agreement to be duly executed as of the day and year written below.

_____
Astor Asset Management 3 Ltd

_____
Print Name of Signatory

_____
Title of Signatory

_____
Date

_____
Corporacion RBS SA de CV

Ricardo Salinas Pliego
Print Name of Signatory

_____
Title of Signatory

13/06/2022
Date

_____
Ricardo Benjamin Salinas Pliego

Ricardo Salinas Pliego
Print Name of Signatory

_____
Title of Signatory

13/06/2022
Date

# EXHIBIT 16

## FOURTH ADDENDUM TO STOCK LOAN AGREEMENT

THIS FOURTH ADDENDUM TO STOCK LOAN AGREEMENT (the "Fourth Addendum") is made and entered into by and between Astor Asset Management 3 Ltd, a Canadian Corporation, hereinafter referred to as the "Lender", Corporacion RBS SA de CV, hereinafter referred to as the "Borrower", and Ricardo Benjamin Salinas Pliego, hereinafter referred to as the "Guarantor".

WHEREAS, the Lender, Borrower, and Guarantor previously entered into multiple Stock Loan Agreements ("SLA") including: (i) the First SLA dated May 1, 2021 between Astor Asset Management 3 Limited, a Canadian corporation, as Lender and Corporacion RBS SA de CV as Borrower; (ii) the Second SLA dated July 14, 2021 between Astor Asset Management Ltd, a USA corporation, as the Lender, and Corporacion RBS SA de CV as the Borrower, and Ricardo Benjamin Salinas Pliego as the Guarantor; and (iii) the Third SLA dated July 28, 2021 between Astor Asset Management 3 LTD, a Canadian Corporation, as the Lender, and Corporacion RBS SA de CV as the Borrower, and Ricardo Benjamin Salinas Pliego as the Guarantor.

WHEREAS, the Parties subsequently entered into the Addendum to Stock Loan Agreement dated July 31, 2021, the Second Addendum to Stock Loan Agreement dated December 6, 2021, and the Third Addendum to Stock Loan Agreement dated June 13, 2022; each of which remains in full force and effect to date.

WHEREAS, the Parties now wish to enter into this Fourth Addendum for the purpose of allowing a one-time exception to the SLA with respect to the distribution of dividends.

NOW, THEREFORE, in consideration of the premises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto covenant and agree to make the following amendments as outlined below, each amendment of which will be made as if it is included in the Third SLA.

I.    DIVIDEND DISTRIBUTION

It is hereby mutually agreed and accepted that the Lender shall make a one-time special exception to the SLA with respect to the distribution of dividends. As such, the Lender shall authorize to release dividends in the amount of Eight Hundred Fifty-Seven Thousand Four Hundred Eleven Dollars and Forty-Four Cents ($857,411.44 USD) held at Tavira Monaco SAM ("Depository Broker") in the account of the Borrower, granting the right to Borrower to withdraw the subject dividend in the currency of USD or to convert to any other currency. This exception shall be one-time only and any further dividends to be released shall be released in accordance with the

terms of the SLA. Parties fully acknowledge that this one-time exception shall not be repeated during the term of the Loan.

II.    ADDENDUM TERMS

It is hereby mutually agreed, understood, and represented that this Fourth Addendum includes terms and conditions in addition to those contained in the above referenced Stock Loan Agreements and subsequent Addendums. Parties agree that they have read this Addendum, have had the opportunity to review it with an attorney of their respective choice, and have willingly and voluntarily agreed to all its terms. Under these circumstances, the Parties agree that the rule of construction that a contract be construed against the drafter shall not be applied in interpreting this Addendum and that in the event of any ambiguity in any of the terms or conditions of this Addendum, such ambiguity shall inure to the benefit of the Lender. The terms used in this Fourth Addendum shall have the same meaning as ascribed to them in the Third SLA. This Fourth Addendum does not obligate the Lender to agree to any further extension or any other modification of the Stock Loan Agreements regardless of any circumstance which may arise throughout the course of the Loan Term.

III.    NOTICE

Any notice required to be given under this Fourth Addendum shall be given in writing, and shall be effective when actually delivered, if by mail, or when actually received, if by email, unless otherwise required by law. For notice purposes, the Borrower and Guarantor agree to keep the Lender informed at all times of Borrower's and Guarantor's current contact information including, but not limited to mailing address, telephone number, and email address.

IV.    SEVERABILITY

Each provision, section, sentence, clause, phrase, and word of this Fourth Addendum is intended to be severable. If any provision, section, sentence, clause, phrase, and word hereof is held by a court with jurisdiction to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of this Fourth Addendum.

V.    HEADINGS

The headings contained in this Fourth Addendum are for reference purposes only and shall not affect in any way the meaning or interpretation of this Fourth Addendum.

### VI.    ERRORS & OMISSIONS

Borrower and Guarantor expressly agree and acknowledges that they had reasonable opportunity to obtain the assistance of its own counsel to fully review and participate in the negotiation and revision of any of the terms, provisions, covenants, representations, warranties and conditions of this Fourth Addendum prior to its execution; and the decision of whether or not to seek advice of counsel with respect to this Fourth Addendum is the responsibility of the Borrower and Guarantor. Therefore, under no circumstances shall Lender be liable to Borrower or to Guarantor for any errors or omissions in this Fourth Addendum that may be disadvantageous to Borrower or Guarantor, or which may result in claims of actual or alleged or perceived harm to Borrower and Guarantor.

### VII.    GOVERNING LAW & DISPUTE RESOLUTION

This Fourth Addendum and any claim, controversy, dispute, or cause of action (whether in contract, tort or otherwise) based upon, arising out of, or relating to this Fourth Addendum and the other relevant loan documents including, but not limited to the Stock Loan Agreement and each executed Addendum, shall be governed by, and construed in accordance with the laws of England and Wales. Any claim, controversy, dispute, or cause of action (whether in contract, tort or otherwise) based upon, arising out of, or relating to this Fourth Addendum and the other relevant loan documents including, but not limited to the Stock Loan Agreement and any and all executed Addendums, shall be resolved in accordance with the dispute resolution clause provided for in the Third SLA.

### VIII.    PRIOR AGREEMENTS

Each Party represents and warrants that it is not a party to or otherwise subject to or bound by any other agreement, understanding, or court order which in any manner limits or otherwise affects its ability to fully perform all obligations under this Fourth Addendum and the other relevant loan documents including, but not limited to the Stock Loan Agreement and all other executed Addendums. Parties hereby mutually agree and acknowledge that all terms and conditions of the Third SLA, and all other executed Addendums, remain in full force and effect except to the extent specifically modified by this Fourth Addendum.

### IX.    CONFIDENTIALITY

Parties agree that the terms and conditions of this Fourth Addendum, and any communications, information, or documents related thereto, are to be kept in the strictest confidence between the Parties to this Fourth Addendum; this restriction shall continue to apply after the expiration or termination of this Fourth Addendum without limit of time. These obligations shall cease to apply to any knowledge or

information which may properly come into the public domain (through no fault of the Parties concerned) or is required by law to be disclosed.

X.    **REPRESENTATIONS**

Borrower and Guarantor represent and warrant that all statements and documentation provided to the Lender with respect to the Loans referenced herein are still true, accurate and complete, with no new material facts or information being omitted or misrepresented.

XI.    **MISCELLANEOUS**

A Party shall not be considered to be in default or breach of this Fourth Addendum, and shall be excused from performance or liability for damages to any other Party, if and to the extent that it shall be delayed in or prevented from performing or carrying out any of the provisions of this Fourth Addendum, arising out of or from any act, omission, or circumstance by or in consequence of any act of God, labor disturbance, sabotage, act of public enemy, war, invasion, insurrection, riot, fire, storm, flood, ice, earthquake, explosion, epidemic, breakage or accident to equipment, or any other cause or causes beyond such Party's reasonable control. A Force Majeure event does not include an act of negligence or intentional wrongdoing by a Party. Any Party claiming a Force Majeure event shall use reasonable diligence to remove the condition that prevents performance and shall not be entitled to suspend performance of its obligations in any greater scope or for any longer duration than is required by the Force Majeure event. Each Party shall use its best efforts to mitigate the effects of such Force Majeure event, remedy its inability to perform, and resume full performance of its obligations hereunder. The Parties hereby fully agree and acknowledge that all rights, remedies, and privileges of the Lender hereunder are cumulative and not exclusive of any rights, remedies, or privileges which the Lender may have and may be exercised and enforced alternatively, successively, or concurrently, at the sole discretion of the Lender. If any provision hereof or if any provision contained in the above referenced Stock Loan Agreements or the application of such provision to any other person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the application of such provision to any other person or circumstance, nor the remainder of the provisions contained in the Stock Loan Agreements shall be affected thereby, and all provisions shall be fully enforced to the greatest extent permitted by law. Except as expressly set forth in this Fourth Addendum, nothing contained in this Fourth Addendum, or any other communication by and between the Parties, shall be construed as a waiver by the Lender of any covenant or provision of the Stock Loan Agreements, subsequent Addendums, or any other contract or instrument by and between the Parties, or of any similar future transaction, and the failure of Lender at any time or times hereafter to require strict performance by either the Borrower of any provision thereof shall not waive, affect or diminish any right of the Lender to thereafter demand strict

compliance therewith. Nothing contained in this Fourth Addendum shall directly or indirectly in any way whatsoever either: (i) except as expressly provided herein, impair, prejudice or otherwise adversely affect the Lender's right at any time to exercise any right, privilege, or remedy in connection with the Fourth Addendum or any other loan documents between the Parties, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, (ii) except as expressly provided herein, amend or alter any provision of the executed and existing Stock Loan Agreements and subsequent Addendums, or any other contract or loan instrument, or (iii) constitute any course of dealings or other basis for altering any obligation of any Party under this Fourth Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, or any right, privilege or remedy of Lender under this Fourth Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums. The Lender hereby continues to reserve all rights, remedies, and privileges granted to it under this Fourth Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums. The Parties acknowledge that, subject to the terms of this Fourth Addendum, all terms and provisions contained in the above referenced Stock Loan Agreements, and all executed Addendums, remain in full force and effect and are legally binding on the Parties. Moreover, no delay, failure, or forbearance on the part of the Lender in exercising any right, remedy, or privilege under this Fourth Addendum shall affect any such right, remedy, or privilege, nor shall any single or partial exercise thereof or any abandonment or discontinuance of steps to enforce such a right, remedy, or privilege preclude any further exercise thereof or the exercise of any other rights, remedies, or privileges under this Fourth Addendum or the related Stock Loan Agreements and Addendums. Lender may waive any right or remedy under this Fourth Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, without notice to or consent from either the Borrower or Guarantor, and without incurring liability by doing so. Borrower and Guarantor agree and acknowledge that the execution of this Fourth Addendum by the Lender is not intended nor shall it be construed as (a) an actual or implied waiver of any default under this Fourth Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, or (b) an actual or implied waiver of any condition or obligation imposed on Borrower and Guarantor pursuant to this Fourth Addendum or any other loan documents, including, but not limited to the Stock Loan Agreements and any and all other executed Addendums, except to the extent, if any, specified herein. The Borrower and Guarantor shall be jointly and severally liable hereunder and under each of the loan documents, including, but not limited to the Stock Loan Agreement and all subsequent Addendums, to which it is a party with respect to all obligations. None of the undertakings, agreements, covenants, and representations of Borrower contained in this Addendum or the Stock Loan Agreements, and subsequent addendums, and no Event of Default by Borrower under this Fourth Addendum and no defaults by Borrower under any of the other Loan

Documents, including, but not limited to the Stock Loan Agreements and Addendums, shall be deemed to have been suspended or waived by Lender, unless such suspension or waiver is by an instrument in writing signed by an officer of Lender and directed to Borrower and Guarantor specifying such suspension or waiver. The Lender hereby reserves all rights, remedies, and privileges granted to it by the Stock Loan Agreements and subsequent Addendums. Whenever the consent of Lender is required under this Fourth Addendum, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of the Lender.

## XII.  TIME OF ESSENCE

The Parties hereto acknowledge and agree that time is strictly of the essence with respect to the terms, conditions and provisions hereof, and that the failure to timely perform any of the obligations hereunder shall constitute a breach of, and a default under, this Fourth Addendum by the Party so failing to do so.

## XIII.  ASSIGNMENT

This Addendum, its equities, and obligations shall be freely transferrable or assignable in whole or in part as the Parties may see fit or as may be in their best interest. Any transfer or assignment action by any Party shall be followed up by written notice to the other Parties.

## XIV.  ENTIRE AGREEMENT

This Fourth Addendum incorporated along with the Third SLA and the executed Addendums constitutes the entire agreement and there are no oral or other representations regarding the subject of this agreement that are binding on either Party. All changes to this Fourth Addendum, or the Third SLA and any and all executed Addendums, must be in writing, signed by both Parties. It is understood and agreed that email correspondence shall not constitute "a writing" to this agreement unless expressly included herein.

**IN WITNESS WHEREOF,** the Parties hereto after consultations with their respective attorneys have caused this Fourth Addendum to the Third SLA to be duly executed as of the day and year written below.

[REST OF PAGE LEFT INTENTIONALLY BLANK]

Astor Asset Management 3 Ltd

Mariia Mitsa
Print Name of Signatory

Managing Member
Title of Signatory

July 19 2022
Date


Corporacion RBS SA de CV

Ricardo Salinas Pliego
Print Name of Signatory


Title of Signatory

July 19, 2022
Date


Ricardo Benjamin Salinas Pliego

Ricardo Salinas Pliego
Print Name of Signatory


Title of Signatory

July 19, 2022
Date

# EXHIBIT 17

June 10, 2024

**WEISER GLOBAL CAPITAL MARKETS**

*Private and Confidential*

Re: <u>Grupo Elektra, S.A.B. de C.V.</u>
Account: 200-804764

Ladies and gentlemen,

By this mean and in view of our existing transactions, you hold (directly or indirectly through any brokers and custodians) a significant interest in the shares of Grupo Elektra SAB de CV with Ticker Symbol: ELEKTRA* ("ELEKTRA*" or the "Shares").

We hereby request that you inform us of any recent trades of ELEKTRA* shares carried out by you, your brokers, custodians and sub-custodians relating to our transactions, as well as your and their current shareholding in ELEKTRA*.

We also understand that according to the contract We have celebrated with the financial institution you represent, it is forbidden for you to carry out trades, loan of Shares or any temporal or permanent transfer of such Shares.

For all the above mentioned, we formally require you to:

1. Confirm the number of Shares held in the Contract as of the Date of this Letter and provide with proper evidence of the said position. If the Shares are held by custodians and/or sub-custodians, please provide evidence of the number of Shares held by each of them.

2. Confirm that according to the contract it is expressly forbidden for WEISER GLOBAL CAPITAL MARKETS to carry out trades, loan of Shares or any temporal or permanent transfer of the Shares (the "Restrictions"). If the Shares are held by custodians and/or sub-custodians, please inform us if the Restrictions are also applicable to them.

3. Cease and desist from carrying out any trades, specially the lending of ELEKTRA* Shares or any other temporal or permanent transfer of the Shares because of the Restrictions and because they are against the spirit of our transactions,

4. Confirm, notify and require your custodians and sub-custodians my concern / requirement in numerals 1, 2 and 3 of this letter.

5. Confirm that you, your custodians and/or sub-custodians will not conduct any trades, transfer or lending of ELEKTRA* Shares, except as permitted by our Contract, including in case of a Termination Event or an Event of Default thereunder.

Any trades or lending of ELEKTRA* Shares in violation of the foregoing, will cause us irreparable damages and we will exercise all our rights and remedies under applicable law to protect our interest and recover all possible damages.

The intention of this letter is to prevent damages that the sale, loan or transfer of the Shares could cause us.

This communication does not constitute a novation of our agreements and we reserve all our rights to enforce them.


Sincerely,


_____

RICARDO B. SALINAS PLIEGO

# EXHIBIT 18

June 10, 2024

**TAVIRA MONACO SAM**

*Private and Confidential*

Re: <u>Grupo Elektra, S.A.B. de C.V.</u>
Account: TMC63

Ladies and gentlemen,

By this mean and in view of our existing transactions, you hold (directly or indirectly through any brokers and custodians) a significant interest in the shares of Grupo Elektra SAB de CV with Ticker Symbol: ELEKTRA* ("ELEKTRA*" or the "Shares").

We hereby request that you inform us of any recent trades of ELEKTRA* shares carried out by you, your brokers, custodians and sub-custodians relating to our transactions, as well as your and their current shareholding in ELEKTRA*.

We also understand that according to the contract We have celebrated with the financial institution you represent, it is forbidden for you to carry out trades, loan of Shares or any temporal or permanent transfer of such Shares.

For all the above mentioned, we formally require you to:

1. Confirm the number of Shares held in the Contract as of the Date of this Letter and provide with proper evidence of the said position. If the Shares are held by custodians and/or sub-custodians, please provide evidence of the number of Shares held by each of them.

2. Confirm that according to the contract it is expressly forbidden for TAVIRA MONACO SAM to carry out trades, loan of Shares or any temporal or permanent transfer of the Shares (the "Restrictions"). If the Shares are held by custodians and/or sub-custodians, please inform us if the Restrictions are also applicable to them.

3. Cease and desist from carrying out any trades, specially the lending of ELEKTRA* Shares or any other temporal or permanent transfer of the Shares because of the Restrictions and because they are against the spirit of our transactions,

4. Confirm, notify and require your custodians and sub-custodians my concern / requirement in numerals 1, 2 and 3 of this letter.

5. Confirm that you, your custodians and/or sub-custodians will not conduct any trades, transfer or lending of ELEKTRA* Shares, except as permitted by our Contract, including in case of a Termination Event or an Event of Default thereunder.

Any trades or lending of ELEKTRA* Shares in violation of the foregoing, will cause us irreparable damages and we will exercise all our rights and remedies under applicable law to protect our interest and recover all possible damages.

The intention of this letter is to prevent damages that the sale, loan or transfer of the Shares could cause us.

This communication does not constitute a novation of our agreements and we reserve all our rights to enforce them.

Sincerely,

_____

RICARDO B. SALINAS PLIEGO

**June 10, 2024**

**TAVIRA MONACO SAM**

*Private and Confidential*

Re: <u>Grupo Elektra, S.A.B. de C.V.</u>
Account: **TMC64**

Ladies and gentlemen,

By this mean and in view of our existing transactions, you hold (directly or indirectly through any brokers and custodians) a significant interest in the shares of Grupo Elektra SAB de CV with Ticker Symbol: ELEKTRA* ("ELEKTRA*" or the "Shares").

We hereby request that you inform us of any recent trades of ELEKTRA* shares carried out by you, your brokers, custodians and sub-custodians relating to our transactions, as well as your and their current shareholding in ELEKTRA*.

We also understand that according to the contract We have celebrated with the financial institution you represent, it is forbidden for you to carry out trades, loan of Shares or any temporal or permanent transfer of such Shares.

For all the above mentioned, we formally require you to:

1. Confirm the number of Shares held in the Contract as of the Date of this Letter and provide with proper evidence of the said position. If the Shares are held by custodians and/or sub-custodians, please provide evidence of the number of Shares held by each of them.

2. Confirm that according to the contract it is expressly forbidden for TAVIRA MONACO SAM to carry out trades, loan of Shares or any temporal or permanent transfer of the Shares (the "Restrictions"). If the Shares are held by custodians and/or sub-custodians, please inform us if the Restrictions are also applicable to them.

3. Cease and desist from carrying out any trades, specially the lending of ELEKTRA* Shares or any other temporal or permanent transfer of the Shares because of the Restrictions and because they are against the spirit of our transactions,

4. Confirm, notify and require your custodians and sub-custodians my concern / requirement in numerals 1, 2 and 3 of this letter.

5. Confirm that you, your custodians and/or sub-custodians will not conduct any trades, transfer or lending of ELEKTRA* Shares, except as permitted by our Contract, including in case of a Termination Event or an Event of Default thereunder.

Any trades or lending of ELEKTRA* Shares in violation of the foregoing, will cause us irreparable damages and we will exercise all our rights and remedies under applicable law to protect our interest and recover all possible damages.

The intention of this letter is to prevent damages that the sale, loan or transfer of the Shares could cause us.

This communication does not constitute a novation of our agreements and we reserve all our rights to enforce them.


Sincerely,


_____

CORPORACIÓN RBS SA DE CV
RICARDO B. SALINAS PLIEGO

# EXHIBIT 19

# ASTOR ASSET MANAGEMENT 3 LIMITED

June 12, 2024

Corporacion RBS SA de CV
Ave. Ferrocarril de Rio Frio 419 A99
Cuchilla del Moral 1
Iztapalapa
09319 Ciudad de Mexico
Mexico
Tel: 0052551720[0089]
egonzalez@gruposalinas.com.mx


Ricardo Benjamin Salinas Pleigo
Cristobal Colon 79 INT C
Mexico 09360
Tel: +5215530091016
egsalceda@gruposalinas.com.mx


**RE: Weiser Global Capital Markets & Tavira Monaco SAM**

To Whom It May Concern,

We trust you are well. We send this correspondence as it has come to our attention that on June 10, 2024, you sent letters to Weiser Global Capital Markets ("Weiser") and Tavira Monaco Sam ("Tavira") (collectively, the "Custodians") requesting information related to certain shares of Grupo Elektra SAB de CV (ELEKTRA) (the "Collateral" or "Shares") which you pledged as collateral pursuant to the Stock Loan Agreement dated July 14, 2021 (the "SLA") by and between Astor Asset Management 3 Limited (the "Lender") and Corporacion RBS SA de CV ("Borrower"). While we acknowledge that you have requested information related to the Shares, you are kindly reminded that your letters to the Custodians constitute interference which is prohibited by the SLA.

The Lender continues to fully comply with the SLA. The Shares are accessible to the capital market per the express and unequivocal terms of the SLA and standards established by capital markets. Therefore, for the reasons set forth herein, we respectfully request your continued cooperation and adherence to the SLA. As such, any future requests and/or comments should be relayed directly to the Lender.

Pursuant to the SLA, and as a condition to funding, you granted the Lender an Encumbrance and Lien over the Shares. Section IV.7 states as follows:

# ASTOR ASSET MANAGEMENT 3 LIMITED

*As of the date of this Agreement, the securities constituting the Pledged Collateral are owned by Guarantor free and clear of any Liens, Encumbrance or contractual, statutory, or regulatory limitation or restriction of whatever nature; are in good standing in accordance with their country of issue; and are freely tradeable and transferable securities and Guarantor hereby grants absolute first position Security Interest as a Lien and Encumbrance rights to Lender in exchange for Borrower receiving a Loan.*

Thus, throughout the loan term, you granted the Lender a first position Security Interest in the Shares. Security Interest is defined in Section I(51) of the SLA:

*Security Interest shall mean a Lien or Encumbrance granted by Guarantor to Lender in real property such as securities as Collateral for a Loan to Borrower. The Security Interest granted to Lender prevents the Guarantor from disposing or transferring the property or securities until such time as the Loan is repaid by Borrower to Lender and all Obligations of Borrower to Lender are discharged.*

Encumbrance is defined in Section I(21) of the SLA:

*Lender's legal claim on Pledged Collateral that affects the Borrower's ability to transfer ownership to anyone or to dispose of the Pledged Collateral without Lenders prior written authorization. For purposes of this definition, Encumbrance shall mean lien, mortgage, charge, hypothecation, rehypothecation, rights, barter, pawn, trade, dispose, deal-in, pledge, re-pledge, repo, borrow or transfer of security interest in Collateral. The Pledged Collateral will be restricted to Guarantor and Encumbrance rights exclusively granted to Lender.*

Thus, the SLA is express and clear that you granted the Lender the right to exercise its Encumbrance rights over the Shares during the loan term. Indeed, this is further supported by the definition of Lien which the SLA states is "*any Encumbrance of any kind referenced herein concerning the Pledged Collateral of Guarantor. A lien is the Lender's right to retain possession of property belonging to Guarantor until a debt owed by that Borrower is fully discharged per this Agreement.*" As such, the Lender is fully authorized to exercise its Encumbrance rights until such time that your debt is fully repaid in due course in accordance with the SLA.

The Lender's rights in the Shares are further defined in Section V.4, *Dealing with Securities*, of the SLA. Specifically, Section V.4(c) states that "*the Borrower acknowledges and agrees that the Pledged Collateral will be utilized by Lender to assert its preferential Lien over it.*" Therefore, the Lender has the right to deal-in the Shares to the extent that is defined within the meaning of Encumbrance. The Lender has, <u>at all times,</u> fully complied with and adhered to the language within the SLA.

Moreover, Section X, *Required Disclosures*, states, in part, that:

# ASTOR ASSET MANAGEMENT 3 LIMITED

*During the Loan Term, all benefits and proceeds of the Pledged Collateral inure to Lender. Lender reserves the right to maintain dominion over the Collateral during the Loan Term, which affords Lender the right to deal-in, dispose, or convert over the Pledged Collateral.*

Therefore, by executing the SLA, you repeatedly re-affirmed the Lender's dominion and Encumbrance over the Collateral.

Finally, and notably, we remind you that this is a Hybrid Loan, meaning that the loan was structured as both an Investment and a Loan. Investment is defined in Section I(28) of the SLA, and states that "*this Loan may be construed as a speculative Investment. Borrower and Guarantor being considered a sophisticated professional investors, and both being aware of all risks associated with making a major Investment where the outcome is unpredictable.*"

Therefore, we respectfully request your continued cooperation and adherence to the SLA. We again remind you that interference, such as your recent request to the Custodians, constitutes a breach of the SLA as Section IV.10 states, in part, that "*During the pendency of this Loan, neither the Borrower nor the Guarantor will seek injunctive relief or interference from any court of law, regulatory body, Transfer Agent, custodian, sub-custodian, Depository Broker, central depository or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement or freeze the shares.*"

You were funded the sum 2,154,218,552.55 MXN and under no circumstance may you infringe or interfere in any way on the Collateral.

We trust this correspondence has been helpful and informative and appreciate your prompt attention thereto. We look forward to a continued successful business relationship and we hope to provide additional financing to you in the future. Should you have any questions, please do not hesitate to contact us. We reserve all of our rights.

Sincerely,

ASTOR ASSET MANAGEMENT 3 LTD

# EXHIBIT 20

| | |
|---|---|
| **From:** | Astor Operations |
| **To:** | javier.gayo@fininvesta.com; Eduardo Gonzalez Salceda Sanchez; rsalinas@gruposakinas.com.mx; Alex Torti |
| **Subject:** | ELEKTRA |
| **Date:** | 13 June 2024 13:26:21 |
| **Attachments:** | Astor - Elektra Interference Letters - June 11 2024.pdf |

Dear interested parties,

Please see attached.

Regards,
Operations

AstorAssetGroup.com



Please note that while we do our best to respond all inquiries within 24-48 hours, a reply in some instances may take longer.

This e-mail, including attachments, is intended for the person(s) or company named and may contain confidential and/or legally privileged information. Unauthorised disclosure, copying or use of this information may be unlawful and is prohibited. If you are not the intended recipient, please delete this message immediately and notify the sender.

# EXHIBIT 21

<span style="color:red">CLOSED</span>

# U.S. District Court
# Western District of Pennsylvania (Pittsburgh)
# CRIMINAL DOCKET FOR CASE #: 2:97-cr-00176-DJL-1

Case title: USA v. SKLAROV, et al                    Date Filed: 10/31/1997

                                                     Date Terminated: 01/16/1998

---

Assigned to: Judge Donald J. Lee

**Defendant (1)**

**VLADIMIR SKLAROV**                represented by    **James A. Bruton , III**
*TERMINATED: 01/16/1998*                             Williams & Connolly
                                                     725 Twelfth Street, N.W.
                                                     Washington, DC 20005
                                                     (202) 434-5000
                                                     *TERMINATED: 01/16/1998*
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     Designation: Retained

                                                     **Kevin M. Downey**
                                                     Williams & Connolly
                                                     725 Twelfth Street, N.W.
                                                     Washington, DC 20005
                                                     (202) 434-5000
                                                     *TERMINATED: 01/16/1998*
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     Designation: Retained

**Pending Counts**                                   **Disposition**

18:371 CONSPIRACY                                    12 Months and 1 Day Imprisonment. 3
(1)                                                  Years Supervised Release with conditions in
                                                     said sentence and Standard Conditions of
                                                     Release. $500,000.00 Fine. $50.00 Special
                                                     Assessment.

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                              **Disposition**

None

---

**Plaintiff**

**UNITED STATES OF AMERICA**          represented by   **Nelson P. Cohen**
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
(412) 894 7336
Email: nelson.cohen@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/1997 | 1 | INFORMATION as to VLADIMIR SKLAROV (1) count(s) 1 (plh) (Entered: 11/03/1997) |
| 10/31/1997 | 2 | Information Memorandum as to VLADIMIR SKLAROV (plh) (Entered: 11/03/1997) |
| 10/31/1997 |   | Initial appearance as to VLADIMIR SKLAROV held on 10/31/97 before Judge Donald J. Lee [Reporter: none] (Defendant informed of rights.) (plh) (Entered: 11/03/1997) |
| 10/31/1997 | 3 | WAIVER OF INDICTMENT by VLADIMIR SKLAROV (plh) (Entered: 11/03/1997) |
| 10/31/1997 | 4 | WAIVER Plea Hearing held on 10/31/97 as to VLADIMIR SKLAROV before Judge Donald J. Lee [Reporter: Virginia Pease]; Plea Agreement (plh) (Entered: 11/03/1997) |
| 10/31/1997 |   | Special Assessment paid by defendant VLADIMIR SKLAROV in the amount of $ 50.00 (plh) (Entered: 11/03/1997) |
| 10/31/1997 |   | PLEA of Guilty: VLADIMIR SKLAROV (1) count(s) 1 on 10/31/97 before Judge Donald J. Lee ( with 1) (plh) (Entered: 11/17/1997) |
| 11/03/1997 | 5 | Sentencing Hearing set for 11:00 1/16/98 for VLADIMIR SKLAROV before Judge Donald J. Lee VLADIMIR SKLAROV (1) count(s) 1 (plh) (Entered: 11/03/1997) |
| 11/17/1997 | 6 | MOTION by VLADIMIR SKLAROV for Modification of the Conditions of Release with Proposed Order. (plh) (Entered: 11/17/1997) |
| 11/18/1997 |   | ORDER upon motion granting [6-1] motion for Modification of the Conditions of Release as to VLADIMIR SKLAROV (1) as stated more fully in order. (signed by Judge Donald J. Lee on 11/17/97) CM all parties of record. (plh) (Entered: 11/18/1997) |
| 12/19/1997 | 10 | Position by USA with respect to sentencing factors as to VLADIMIR SKLAROV (crw) (Entered: 12/19/1997) |
| 12/29/1997 | 11 | OBJECTION by VLADIMIR SKLAROV to Presentence Investigation Report as to VLADIMIR SKLAROV (plh) (Entered: 12/29/1997) |

| 01/15/1998 | 12 | TENTATIVE FINDINGS as to VLADIMIR SKLAROV. (signed by Judge Donald J. Lee on 1/15/98) CM all parties of record. (plh) (Entered: 01/16/1998) |
| 01/16/1998 | 13 | Sentencing Hearing held on 1/16/98 before Judge Donald J. Lee [Reporter: Virginia Pease] re: VLADIMIR SKLAROV (1) count(s) 1 with Deft's Exhibit attached (plh) (Entered: 01/16/1998) |
| 01/16/1998 | 14 | JUDGMENT as to VLADIMIR SKLAROV (1) count(s) 1. 12 Months and 1 Day Imprisonment. 3 Years Supervised Release with conditions in said sentence and Standard Conditions of Release. $500,000.00 Fine. $50.00 Special Assessment. (signed by Judge Donald J. Lee on 1/16/98) (Copy of Statement of Reasons to Bureau of Prisons) (tt) (Entered: 01/20/1998) |
| 07/21/1998 | 15 | Satisfaction of Judgment as to Fine, Special Assessment by VLADIMIR SKLAROV (plh) (Entered: 07/21/1998) |
| 07/08/1999 | 17 | MOTION by VLADIMIR SKLAROV for Foreign Travel with Proposed Order. (ces) (Entered: 07/08/1999) |
| 07/09/1999 |  | ORDER upon motion granting [17-1] motion for Foreign Travel as to VLADIMIR SKLAROV (1); deft is authorized to travel to Paris, France and surrounding European location during the period 7/19/99 thru 8/5/99 under terms and conditions to be set by his supervising probation officer at the U.S. probation Office for the Northern District of Illinois. (signed by Donald J. Lee on 7/9/99) CM all parties of record. (plh) (Entered: 07/09/1999) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/15/2024 13:24:22 | | | |
| **PACER Login:** | nmrs0003 | **Client Code:** | 085167/01500-EV1 |
| **Description:** | Docket Report | **Search Criteria:** | 2:97-cr-00176-DJL |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |