

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW

P. John Veysey
(617) 217.4645
john.veysey@nelsonmullins.com

One Financial Center, Suite 3500
Boston, MA 02111
T: 617.217.4700  F: 617.217.4710
nelsonmullins.com

October 4, 2024

The Honorable Lewis A. Kaplan, U.S.D.J.
United States District Court – Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

**RE:**    *In Re: Pliego et al.* **Case 1:24-mc-00394-LAK**

Dear Judge Kaplan:

    This firm represents Applicants Ricardo Benjamin Salinas Pliego and Corporacion RBS S.A. C.V. (the "**RBS Parties**") in the above-referenced action. Following the Court's September 30, 2024 Order, we write to oppose any additional requests for an extension to respond to the RBS Parties' subpoenas (the "**Subpoenas**") by Jaitegh Singh, Esq., the Singh Law Firm, and Jurist IQ Corp. (collectively "**Mr. Singh**").

    As set forth in more detail in the application for discovery in aid of a foreign proceeding filed with the Court on August 23, 2024 (ECF 1), this proceeding sought the issuance of subpoenas directed to various parties, including Jaitegh Singh, Esq., the Singh Law Firm, and Jurist IQ Corp., in support of an action currently pending in the Business and Property Courts of England and Wales Commercial Court (the "**English Action**"). The English Action alleges that Vladimir ("Val") Sklarov, and others, carried out the brazen theft of more than $400,000,000 from the RBS Parties, and used Mr. Singh, through his law offices and through bank accounts in New York City, to assist in that scheme. As further described in the application, Mr. Sklarov and Mr. Singh—both of whom have been involved in proceedings in this district (including matters before Your Honor) involving similar entities—effected the schemes alleged in the English Action through the use of false names and a web of international companies and accounts. *See, e.g. Barclays PLC et. al. v. Sklarov*, No. 20-cv-8437-LAK (S.D.N.Y. Oct. 9, 2020) and *Chenming Holdings (Hong Kong) Limited v. John Does 1-10, et al.*, Docket No. 1:24-cv-00935-KPF ("**Chenming**"). The Chenming Amended Complaint is attached herein as **Exhibit 1**.

    We write further to the Court's September 30, 2024, Order (the "**Order**"), to oppose any additional requests for an extension of time to respond to the subpoenas issued by the Court. (ECF 10). Among other information, it is clear from filings in the English Action that Mr. Singh—who has had nearly a month to retain counsel and gather materials sought in the subpoenas—is aware of that dispute, and that he is already assisting Mr. Sklarov (whose history includes a felony conviction and who has been subject to at least two bench warrants) in gathering other information

Honorable Lewis A. Kaplan, U.S.D.J.
*In Re: Pliego et al.* Case 1:24-mc-00394-LAK
October 4, 2024
Page 2

related to the English Action. Mr. Singh was also served subpoenas to produce similar documents in connection with the *Chenming* action. Finally, and regardless of privilege claims Mr. Singh may raise with respect to particular documents responsive to the subpoena, is it clear that this claim of privilege will not extend to the financial documents and information that constitute the bulk of the material being sought.

For all these reasons, and particularly when considered against the emergent nature of the English Action, the RBS Parties oppose any additional extension beyond the October 10, 2024, extension granted in the Order.

### I.   Mr. Singh Does Not Need Additional Time to Respond to the Subpoenas.

Setting aside that the deadline for objections has already lapsed, Mr. Singh does not need to time to get up to speed or investigate the underlying facts: his clients have already identified him as the account holder of over $200 million of the RBS Parties' money. For example, on September 5, 2024, Mr. Sklarov filed an affidavit in the English Action, attached herein as **Exhibit 2**, that confirms Mr. Singh's knowledge of those proceedings and that that Mr. Singh and Jurist IQ, hold or have held over $200 million of the RBS Parties' assets. Ex. 2, ¶¶ 2–11.[1] On September 16, 2024, Mr. Sklarov filed a separate witness statement, attached herein as **Exhibit 3,** which explains Mr. Singh's involvement at length, knowledge of that matter, and his access to relevant information. See, e.g. Ex, ¶¶ 56, 57.[2] There is no reason Mr. Singh cannot immediately provide related information here. Again, Mr. Singh has likely already examined similar issues in the *Chenming* case, including with the same counsel he has since now retained in this matter. The Court should reject any request for further extensions based on the need to retain counsel, gather documents, or navigate privilege issues that will not apply most of the documents being sought.

### II.   Any Further Extension Risks Further Harm to the RBS Parties.

The time sensitivity of the RBS Parties' concerns speaks for itself. Other cases and filings demonstrate that Mr. Singh is a crucial source of information to address those concerns. For example, Mr. Sklarov's witness statement describes his understanding that $271,685,472 of the RBS Parties' assets were transferred to or through accounts controlled by Mr. Singh. Ex. 3, ¶¶ 42–54, 59. The Court should deny any further extensions that may prevent the RBS Parties from confirming this and other information to assist them in the English Action.

---

[1] The Affidavit also confirms that Mr. Singh, through Jurist IQ and Singh Law Firm, "do not maintain a client account for [Mr. Sklarov] personally." Ex. 1, ¶ 10, n. 1. On this admission alone, the Court should also disregard any assertion by Mr. Singh that these accounts or the other information sought in the Subpoenas are protected by any kind of privilege, at least as it relates to Mr. Sklarov. The types of information sought here are not protected under attorney client privilege or Mr. Singh's duties of confidentiality. Bank account records, related transactions, amounts held in those accounts, or underlying account information, are not privileged. See, e.g. *Selevan v. United States Sec. & Exch. Comm'n*, 482 F. Supp. 3d 90 (S.D.N.Y. 2020) (in assessing subpoenas to investigate whether attorney's accounts were being used to assist with client's misuse of funds, holding that "[c]ourts have uniformly held that bank accounts and similar financial records are not protected by attorney-client privilege"); *Libaire v. Kaplan*, 760 F. Supp. 2d 288 (E.D.N.Y. 2011) (listing cases, attorney agreements with their clients, invoices, corporate, fees paid, client identity, and related information held by an attorney are not subject to attorney client privilege).

[2] In Paragraph 57, Mr. Sklarov also indicated that Mr. Singh may be paying his own legal fees using these funds.

Honorable Lewis A. Kaplan, U.S.D.J.
*In Re: Pliego et al.* Case 1:24-mc-00394-LAK
October 4, 2024
Page 3

      The RBS Parties' concerns that Mr. Singh will use any extension to further prolong his noncompliance are not speculative. Among other allegations, the *Chenming* complaint alleges that Mr. Singh personally used delay tactics under the guise of excuses like "due diligence" to hinder those plaintiffs' inquiries. Ex. 1., ¶ 46. Other courts have admonished Mr. Singh for his repeated noncompliance with court orders. *See, e.g. Am. 2030 Cap. Ltd. v. Sunpower Grp. Ltd.*, No. 19-CV-02676-CMA-KMT, 2020 WL 2079187, at *3 (D. Colo. Apr. 30, 2020) (listing prior examples, "…[t]he Court notes that Plaintiff's Counsel, Jaitegh Singh, has a habit of failing to comply with court orders when he appears before this Court."). Other courts and filings note the same. See, e.g. *Am. 2030 Cap. Ltd. v. Doe*, No. 19-CV-03140-RM-KMT, 2020 WL 10320916, at *1 (D. Colo. Apr. 23, 2020), report and recommendation adopted, No. 1:19-CV-03140-RM-KMT, 2020 WL 10320910 (D. Colo. June 8, 2020) (describing the court's total inability to locate Mr. Singh via phone, leave voicemails, and noting that "[r]egarding Mr. Singh's explanation, a party to litigation cannot simply leave the country, ignore his legal obligations, and later use that absence as an excuse for his failure to comply with court orders"); *Rothschild & Co. Continuation Holdings A.G. v. Sklarov*, No. 1:19-CV-03561-AT, 2020 WL 1467256, at *3–4 (N.D. Ga. Feb. 24, 2020) (noting Singh's failure to file *pro hac vice* application months after telling the court he would).

      The RBS Parties share similar concerns here based on Mr. Singh's responses to date. Among other positions, Mr. Singh argues that he only learned about the subpoenas on September 17, 2024, because he is infrequently at his New York office. This is not a viable excuse. Mr. Singh holds himself out as a New York attorney and the same address sits atop his firm letterhead on the letter filed with the Court to make this argument. Again, other courts have admonished Mr. Singh for being unreachable. Moreover, Mr. Singh argued in separate correspondence that he needs an extension because he is traveling this week. Despite any travel Mr. Singh had planned, or when he read the subpoenas, he waited nearly two weeks later, on the eve of the production deadline and after any objection deadline lapsed, to raise this issue. The Court should not credit these positions to support any further extension.

Due to the immediate risk of ongoing harm, and the positions described herein, the RBS Parties ask the Court to deny any further extensions to Mr. Singh and his firms' response deadlines.

                                                 Respectfully submitted,

                                                 P. John Veysey

Cc:
Louis A. Pellegrino, Esq.
Justine N. Margolis, Esq.
Charles M. Farrell, Esq.

Enclosures